1   **COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

2   Name _SANDOVAL_      _ALFRED_      _A_

3       (Last)                    (First)                (Initial)

4   Prisoner Number _CDCR # D61000_

5   Institutional Address _P.O. BOX 7500, D2-105_

6   ==================================================================

7                   **UNITED STATES DISTRICT COURT**
8                   **NORTHERN DISTRICT OF CALIFORNIA**

9   _ALFRED ARTHUR (SANDOVAL_
    (Enter the full name of plaintiff in this action.)    **CV 08    0865**

10                      vs.                          Case No. _____
                                                     (To be provided by the Clerk of Court)
11  _JAMES TILTON, DIRECTOR OF THE CALIFORNIA_
                                                     **COMPLAINT UNDER THE**
12  _DEPARTMENT OF CORRECTIONS AND REHABILITATION;_   **CIVIL RIGHTS ACT,**
                                                     **Title 42 U.S.C § 1983**
13  _ROBERT A. HOREL, WARDEN OF PELICAN BAY_

14  _STATE PRISON; et. al._
    (Enter the full name of the defendant(s) in this action)
15                                                   E-filing            **(PR)**

16  *[All questions on this complaint form must be answered in order for your action to proceed..]*

17  I.      Exhaustion of Administrative Remedies.

18          [**Note:** You must exhaust your administrative remedies before your claim can go

19          forward.  The court will dismiss any unexhausted claims.]

20          A.      Place of present confinement   _PELICAN BAY STATE PRISON_

21          B.      Is there a grievance procedure in this institution?

22                          YES (✗)      NO ( )

23          C.      Did you present the facts in your complaint for review through the grievance

24                  procedure?

25                          YES (✗)      NO ( )

26          D.      If your answer is YES, list the appeal number and the date and result of the

27                  appeal at each level of review.  If you did not pursue a certain level of appeal,

28                  explain why.

    COMPLAINT                           - 1 -

1. Informal appeal *PBSP-07-00389 ; PBSP-07-00866 ; PBSP-07-00717*

*PBSP-07-01299 ; PBSP-07-00073 ; PBSP-07-00130 ; PBSP-07-00131 ;*

*PBSP-06-01026 : SEE ATTACHED VII EXHAUSTION OF ADMINISTRATIVE REMEDIES*

2. First formal level _____

   *SEE ATTACHMENT : VII EXHAUSTION OF ADMINISTRATIVE REMEDIES*

   _____

3. Second formal level _____

   *SEO ATTACHMENT : VII EXHAUSTION OF ADMINISTRATIVE REMEDIES*

   _____

4. Third formal level _____

   *SEE ATTACHMENT : VII EXHAUSTION OF ADMINISTRATIVE REMEDIES*

   _____

E.   Is the last level to which you appealed the highest level of appeal available to

you?

         YES ⊠      NO ( )

F.   If you did not present your claim for review through the grievance procedure,

explain why._____

                         *N /A*

_____

II.   Parties.

A.   Write your name and your present address.  Do the same for additional plaintiffs,

if any.

*ALFRED A. SANDOVAL  D-61000   P.O.BOX 7500 W2-105 CRESCENT CITY, CALIF. 95532*

_____

         *SEE ATTACHMENT : II PARTIES*

B.   Write the full name of each defendant, his or her official position, and his or her

place of employment.

_____

COMPLAINT                              - 2 -

_SEE ATTACHMENT : II PARTIES_

III.    Statement of Claim.

State here as briefly as possible the facts of your case. Be sure to describe how each defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any cases or statutes. If you have more than one claim, each claim should be set forth in a separate numbered paragraph.

_SEE ATTACHMENT : III INTRODUCTION OF FACTS_
_IV FACTUAL SUMMARY_
_V STATEMENT OF FACTS_
_VI FACTS PERTAINING TO DEFENDANTS INTENT_
_VII LEGAL CLAIMS_

IV.    Relief.

Your complaint cannot go forward unless you request specific relief. State briefly exactly what you want the court to do for you. Make no legal arguments; cite no cases or statutes.

_SEE ATTACHMENT : X PRAYER FOR RELIEF_

COMPLAINT                                    - 3 -

1

2

3

4

5   I declare under penalty of perjury that the foregoing is true and correct.

6

7   Signed this _____1ˢᵀ_____ day of _FEBRUARY____, 20 _O 8_

8

9                          _Alfred Sandoval_

10                              (Plaintiff's signature)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                        - 4 -

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALFRED ARTHUR SANDOVAL

              PLAINTIFF

VS.

JAMES TILTON, DIRECTOR OF THE CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION;
ROBERT A. HOREL, WARDEN OF PELICAN BAY
STATE PRISON; et. al.

              DEFENDANTS

NC _____

CIVIL RIGHTS COMPLAINT
PURSUANT TO 42 USC. SECTION
1983 WITH MEMORANDUM OF
LAW IN SUPPORT OF

## I. JURISDICTION

1. THIS ACTION IS BROUGHT PURSUANT TO 42 USC SECTION 1983 TO REDRESS THE DEPRIVATIONS BY DEFENDANTS ACTING UNDER COLOR OF AUTHORITY, OF RIGHTS SECURED BY THE UNITED STATES CONSTITUTION, THE CALIFORNIA CONSTITUTION AND CALIFORNIA LAW.. JURISDICTION IS BASED UPON 28 USC SECTIONS 1331 AND 1343.  THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER THE STATE CLAIMS PURSUANT TO 28 USC SECTION 1367.  PLAINTIFF SEEKS MONETARY DAMAGES PURSUANT TO 28 USC SECTION 1343 AND DECLARATORY RELIEF PURSUANT TO 28 USC SECTIONS 2201 AND 2202. THE UNLAWFUL ACTS AND PRACTICES ALLEGED OCCURED PRIMARILY WITHIN THIS JUDICIAL DISTRICT AND THE MAJORITY OF DEFENDANTS RESIDE WITHIN THIS DISTRICT 28 USC SECTION 1391(b).

## II. PARTIES

2. PLAINTIFF, ALFRED ARTHUR SANDOVAL IS AND WAS AT ALL TIMES MENTIONED HEREIN A PRISONER OF THE STATE OF CALIFORNIA IN THE CUSTODY OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR) PLAINTIFF IS CURRENTLY CONFINED AT PELICAN BAY STATE PRISON AND HOUSED IN THE SECURITY HOUSING UNIT (SHU) UNDER ADMINISTRATIVE SEGREGATION (AD. SEG.) FOR AN INDETERMINATE TERM.

3. DEFENDANT, JAMES TILTON IS THE DIRECTOR OF THE C.D.C.R. AND IS LEGALLY RESPONSIBLE FOR THE OVERALL OPERATION OF THE C.D.C.R. AND EACH INSTITUTION UNDER ITS JURISDICTION

4. DEFENDANT, ROBERT A. HOREL IS THE CURRENT WARDEN OF P.B.S.P. AND IS THE LEGAL

1. AND UNDER THEIR INDIVISUAL AND OFFICIAL CAPACITY

1 CUSTODIAN OF PLAINTIFF AND LEGALLY RESPONSIBLE FOR THE DAILY OPERATION OF P.B.S.P. AND THE

2 WELFARE OF ALL ITS PRISONERS

3 5. DEFENDANT, C. SCAVETTA IS AN ASSOCIATE WARDEN (A.W.) AT P.B.S.P. AND IN THAT

4 CAPACITY AT ALL RELEVANT TIMES MENTIONED HEREIN WAS ASSISTING THE WARDEN WITH THE DAILY

5 OPERATION OF P.B.S.P. AND OVERSAW THE OPERATIONS REGARDING THE S.H.U.

6 6. DEFENDANT, R. MARQUEZ IS A CAPTAIN (CAPT.) IN THE OFFICE OF CORRECTIONAL SECURITY

7 (O.C.S.) FORMALLY KNOWN AS THE STATE SECURITY UNIT (S.S.U.) OF THE C.D.C.R. AND IN THAT

8 CAPACITY WAS IN CHARGE OF THE SPECIAL OPERATIONS TASK FORCE[2] AT P.B.S.P. ON FEBRUARY 2,

9 2007 AND RESPONSIBLE FOR ALL SUBORDINATES UNDER HIS DIRECT COMMAND.

10 7. DEFENDANT, R. PIMENTEL IS A CAPT. ASSIGNED TO THE DIRECTORS' LEVEL OF APPEAL

11 AND IN THAT CAPACITY IS AN APPEALS EXAMINER ON BEHALF OF THE DIRECTOR.

12 8. DEFENDANT, J.F. PEDROSO IS A LIEUTENANT (LT.) ASSIGNED TO P.B.S.P. "C" FACILITY

13 AND IN THAT CAPACITY IS RESPONSIBLE FOR SUBORDINATES UNDER HIM.

14 9. DEFENDANT, R.R. KERSH IS A LT. IN THE C.D.C.R. AND IN THAT CAPACITY, UNDER

15 INFORMATION AND BELIEF, WAS RESPONSIBLE FOR SUBORDINATES UNDER HIM AND THE WELFARE

16 OF PRISONERS DURING THE FEBRUARY 2, 2007 SPECIAL OPERATION AND IS SEMI-RETIRED.

17 10. DEFENDANT, FERGUSON IS A LT. IN THE C.D.C.R. AND ASSIGNED TO "D" FACILITY AND

18 UNDER INFORMATION AND BELIEF IS SEMI-RETIRED.

19 11. DEFENDANT, VANDER HOOFVEN IS A LT. IN THE C.D.C.R. AND ASSIGNED TO "C"

20 FACILITY AND IN THAT CAPACITY IS ONE OF THE DISCIPLINARY SENIOR HEARING OFFICERS (S.H.O.)

21 12. DEFENDANT, C. HALL IS A FACILITY CAPT. ASSIGNED TO THE DIRECTORS LEVEL OF APPEAL

22 AND IN THAT CAPACITY IS AN APPEALS EXAMINER ON BEHALF OF THE DIRECTOR.

23 13. DEFENDANT D. BARNEBURG IS A SARGENT (SGT.) ASSIGNED TO THE P.B.S.P. INSTITU-

24 TIONAL GANG INVESTIGATION (I.G.I.) UNIT AND IN THAT CAPACITY, UNDER INFORMATION AND

25 BELIEF HIS PRIMARY JOB CONCERNS PRISON GANGS AND SECURITY.    AND WAS ASSIGNED

26 TO THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.    AND UNDER INFORMATION AND

27 BELIEF IS A MEMBER OR ASSOCIATE OF THE CLANDESTINE "GREEN WALL" CORRECTIONAL PRISON GANG.

28 2. ON FEBRUARY 2, 2007 STAFF FROM SPECIAL UNITS FROM VARIOUS PRISONS CONVERGED ON
P.B.S.P. TO CONDUCT PROPERTY SEARCHES AND COLLECT INTELLIGENCE ON ALLEGED PRISON GANG
MEMBERS AND ASSOCIATES IN THE "GANG" CORRIDOR, UNITS 1-4 OF "D" FACILITY SHU.

1    14. DEFENDANT, J. BEESON IS A SGT. ASSIGNED TO P.B.S.P. 1.6.1. UNIT AND IN THAT

2    CAPACITY UNDER INFORMATION AND BELIEF HIS PRIMARY JOB CONCERNS PRISON GANGS AND SEC-

3    URITY AND WAS ASSIGNED TO THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.   AND

4    UNDER INFORMATION AND BELIEF IS A MEMBER OR ASSOCIATE OF THE CLANDESTINE "GREEN WALL". CORR-

5    ECTIONAL PRISON GANG.

6    15. DEFENDANT, C. COUNTESS IS A CORRECTIONAL OFFICER (C/o) ASSIGNED TO P.B.S.P.~1.6.1.

7    UNIT AND IN THAT CAPACITY UNDER INFORMATION AND BELIEF HIS PRIMARY JOB CONCERNS PRISON

8    GANGS AND SECURITY.   AND WAS ASSIGNED TO THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK

9    FORCE.   AND UNDER INFORMATION AND BELIEF IS A MEMBER OR ASSOCIATE OF THE CLANDESTINE

10    "GREEN WALL" CORRECTIONAL PRISON GANG.

11    16. DEFENDANT, T. BUCHANAN IS A C/o ASSIGNED TO THE P.B.S.P.~1.6.1. UNIT AND IN THAT

12    CAPACITY UNDER INFORMATION AND BELIEF HIS PRIMARY JOB CONCERNS PRISON GANGS AND

13    SECURITY AND WAS ASSIGNED TO THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.   AND UNDER

14    INFORMATION AND BELIEF IS A MEMBER OR ASSOCIATE OF THE CLANDESTINE "GREEN WALL"

15    CORRECTIONAL PRISON GANG.

16    17. DEFENDANT, J. PUENTE IS A C/o ASSIGNED TO THE P.B.S.P.~1.6.1. UNIT AND IN THAT

17    CAPACITY IS UNDER INFORMATION AND BELIEF HIS PRIMARY JOB CONCERNS PRISON GANGS AND

18    UNDER INFORMATION AND BELIEF IS A MEMBER OR ASSOCIATE OF CLANDESTINE "GREEN WALL"

19    CORRECTIONAL PRISON GANG.

20    18. DEFENDANT J. REYES IS A C/o IN THE C.D.C.R AND WAS ASSIGNED TO THE FEBRUARY 2,

21    2007 SPECIAL OPERATIONS TASK FORCE.   AND UNDER INFORMATION AND BELIEF IS A MEMBER

22    OR ASSOCIATE OF THE CLANDESTINE "GREEN WALL" CLANDESTINE CORRECTIONAL PRISON GANG.

23    19. DEFENDANT, TANAYO IS A C/o IN THE CDCR AND WAS ASSIGNED TO THE FEBRUARY 2, 2007

24    SPECIAL OPERATIONS TASK FORCE AND UNDER INFORMATION AND BELIEF IS A MEMBER OR ASSOC-

25    IATE OF THE CLANDESTINE "GREEN WALL" CORRECTIONAL PRISON GANG.

26    20. DEFENDANT, BISHOP IS A C/o IN THE C.D.C.R. AND IS ASSIGNED TO THE C.C.S. AND

27    IN THAT CAPACITY WAS ASSIGNED TO THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.   AND

28    UNDER INFORMATION AND BELIEF IS A MEMBER OR ASSOCIATE OF THE CLANDESTINE "GREEN WALL"

1   CAPACITY, UNDER INFORMATION AND BELIEF, ONE OF HER DUTIES IS TO REVIEW MEDICAL APPEALS.

2

3                III. INTRODUCTION OF FACTS

4     34. THIS ACTION ARISES FROM DEFENDANTS EXCESSIVE USE OF FORCE UPON PLAINTIFF CAUSING

5   PHYSICAL INJURY AND MENTAL SUFFERING, IN RETALIATION FOR FILING GRIVIENCES ON GREEN WALL

6   I.G.I. DEFENDANTS FOR DENYING MAIL AND REFUSING TO TAKE ADDITIONAL PHOTOGRAPHS ON FEB-

7   RUARY 2, 2007.   ALSO ON MEDICAL STAFF FOR DENYING PLAINTIFF ADEQUATE MEDICAL ATTENTION

8   AND TREATMENT FOR CRONIC SINUS CONDITION AND CROHNS DISEASE, WHEN :

9      (a.) PRIOR TO FEBRUARY 2, 2007 PLAINTIFF FILED SEVERAL ADMINISTRATIVE APPEALS (602) ON

10   DEFENDANTS FOR INTERFERING WITH HIS INCOMING / OUTGOING LEGAL AND REGULAR MAIL.

11      (b.) ON FEBRUARY 2, 2007 DURING PROPERTY SEARCH AND PHOTOGRAPHING OF PRISONERS BY

12   SPECIAL UNITS OF THE C.D.C.R., GREEN WALL DEFENDANT DEMANDED EXTRA PHOTOS FROM PLAINTIFF

13   FOR HIS "PERSONAL COLLECTION / USE". PLAINTIFF REFUSED AND ON THE PRETEXT OF ESCORTING HIM

14   BACK TO HIS CELL, GREEN WALL DEFENDANTS ASSAULTED PLAINTIFF WHILE HE WAS UNDER MANACLE

15   RESTRAINTS FOR REFUSING TO ALLOW THE ATTEMPT TO TAKE ADDITIONAL PHOTOGRAPHS OF HIM.

16      (c.) DEFENDANTS ISSUED PLAINTIFF A C.D.C.R 115 RULES VIOLATION REPORT (R.V.R.) IN RETALIA-

17   TION FOR FILING A 602 ON DEFENDANTS FOR EXCESSIVE USE OF FORCE.

18      (d.) PLAINTIFF IS NOW PREOCCUPIED WITH FEAR OF WHEN AND HOW DEFENDANTS WILL "SET UP"

19   PLAINTIFF FOR THE NEXT ATTACK.

20     35. DEFENDANTS ARE DENYING PLAINTIFF ADEQUATE MEDICAL ATTENTION AND TREATMENT FOR

21   HIS CROHNS DISEASE BY :

22      (a.) DENYING HIS REQUEST FOR A SPECIAL DIET TO FIT HIS CROHNS DISEASE DUE TO HIS

23   LACTOSE INTOLERANCE

24      (b.) CONTINUING TO PRESCRIBE MEDICATIONS THAT FAIL TO ALLIVIATE PAIN FROM THE PERSIS-

25   TENT CROHNS FLARE-UPS.

26      (c.) DISCONTINUING HELPFUL MEDICATIONS AND CUTTING PERSCRIPTIONS OF MEDICATION

27   HELPFUL TO HIS PERSISTENT CROHNS FLARE-UPS.

28      (d.) FAILING TO COMPLETE A COLONOSCOPY TEST FOR AN ADEQUATE DIAGNOSIS.

1  (e.) LACK OF PROPER MEDICAL ATTENTION AFFECTING CHOLESTEROL LEVELS POTENTIALLY
2  INCREASING THE RISK OF A HEART ATTACK OR STROKE.

3  (f.) FAILED TO REMOVE POLYPS THAT CAN POTENTIALLY CREATE FUTURE COMPLICATIONS.

4  36. DEFENDANTS ARE DENYING PLAINTIFF ADEQUATE MEDICAL ATTENTION AND TREAT-
5  MENT FOR HIS CHRONIC SINUS CONDITION BY:

6  (a) FAILING TO SCRAPE OUT NASAL ROCK HOLES TO RELIEVE PAIN.

7  - (b.) FAILING TO PROVIDE A CONSULTATION WITH A SINUS SPECIALIST.

8  (c.) CONTINUING TO PLACE PLAINTIFF ON REPEATED REGIMENS OF MEDICATIONS AND NASAL
9  SPRAYS AT THIRTY (30) DAY INCREMENTS INSTEAD OF ALLOWING TO BE EXAMINED BY A NASAL SPECIALIST.

10

11  III  FACTUAL SUMMARY

12  37. IN 2000 PLAINTIFF WAS DIAGNOSED WITH HAVING CROHNS DISEASE BY SAN QUENTIN MED-
13  ICAL STAFF.  IN NOVEMBER 2001 PLAINTIFF WAS TRANSFERED TO P.B.S.P., FROM JANUARY 2002 TO
14  SEPTEMBER 2003 WHILE IN THE LOS ANGELES COUNTY JAIL ON RETRIAL, HE WAS EXAMINED AND
15  PLACED ON A SPECIAL DIET WHICH KEPT PLAINTIFF CROHNS FLARE-UP FREE.

16  38. PLAINTIFF HAS A TWENTY-SEVEN (27) YEAR DOCUMENTED MEDICAL HISTORY OF CRONIC
17  NASAL ALLERGIES WITH SINUS INFECTIONS.

18  39. IN 1998 THE CALIFORNIA SENATE CONDUCTED HEARINGS ON INTERNAL PROBLEMS IN THE
19  C.D.C.R. NAMELY, CODE OF SILENCE BY STAFF.  IN 1999 THE CALIFORNIA OFFICE OF INSPECTOR
20  GENERAL (O.I.G.) REPORTED THE EXISTENCE OF A CORRECTIONAL ORGANIZATION FORMED, CALLED THE
21  "GREEN WALL".  IN JANUARY 2004 THE CALIFORNIA SENATE SELECT COMMITTEE ON STATE CORREC-
22  TIONAL SYSTEM HEARD TESTIMONY FROM GUARDS DETAILING THE FORMATION OF A CORRECTIONAL
23  GANG-LIKE ORGANIZATION.

24  40. IN FEBRUARY 2006 P.B.S.P. CONDUCTED A SHU-WIDE PROGRAM CHANGE WHEN
25  SELECTING ALLEGED PRISON GANG MEMBERS OR ASSOCIATES FROM "C" AND "D" FACILITIES AND
26  RELOCATED IN UNITS 1-4 OF "D" FACILITY S.H.U., CREATING THE NOW COMMONLY REFERED TO "GANG"
27  CORRIDOR.  THIS WAS DONE ABSENT ANY PRE NOTIFICATION VIA INTER DEPARTMENTAL MEMO-
28  RANDUM (MEMO) TO BE POSTED IN HOUSING PODS.

6.

41. IN FEBRUARY 2006 NEW UNDERGROUND OPERATIONAL POLICIES WERE IMPLEMENTED FOR THE MANAGEMENT OF THE "GANG CORRIDOR", UNDER CONTROL OF I.G.I. UNIT REGARDING MAIL, VISITING, MEDICAL ATTENTION AND ESCORTS TO, AND IN GENERAL THE DAILY MOVEMENT OF PRISONERS.

42. ON FEBRUARY 2, 2007 WHILE UNDER MANACLE RESTRAINTS PLAINTIFF WAS ASSAULTED AND SUFFERED INJURIES BY GREEN WALL I.G.I. DEFENDANTS AND REQUIRED MEDICAL ATTENTION AND TREATMENT.

43. ON FEBRUARY 5, 2007 PLAINTIFF SUBMITTED A 602 CLAIMING SUBJECTION TO EXCESSIVE USE OF FORCE BY GREEN WALL I.G.I. DEFENDANTS CAUSING INJURY.

44. OF FEBRUARY 16, 2007 PLAINTIFF WAS ISSUED A C.D.C.R. 115 R.V.R. FOR ATTEMPTED BATTERY ON STAFF OCCURING ON FEBRUARY 2, 2007.

## II  STATEMENT OF FACTS

45. SINCE SEPTEMBER OF 2003 PLAINTIFF HAS BEEN PERMANENTLY HOUSED AT P.B.S.P. PLAINTIFFS' REGULAR AND LEGAL MAIL, INCOMING/OUTGOING HAS BEEN CONTINUOUSLY DELAYED, LOST OR DISAPPROVED AND LEGAL MAIL OPENED OUTSIDE THE PRESENCE OF PLAINTIFF BY THE GREEN WALL EMBEDDED I.G.I. UNIT,[3] PLAINTIFF HAS HAD TO FILE 602 APPEALS.    ON OCTOBER 2006 PLAINTIFF FILED A 602 FOR EMPLOYEE MISCONDUCT (FALSIFYING INFORMATION) BY SPECIAL AGENT DEVON HAWKES[4]. ON DECEMBER 4, 2006 FILED A 602 FOR EMPLOYEE MISCONDUCT ON D. HAWKES FOR FAILING TO RESPOND TO THE OCTOBER 2006 602 WITHIN TIME LIMITS.    ON DECEMBER 19, 2006 PLAINTIFF FILED A 602 ON DEFENDANT C. COUNTESS FOR DENYING MAIL.    AT SECOND LEVEL REVIEW CONDUCTED BY DEFENDANT J. BEESON PLAINTIFF REQUESTED TO BE INTERVIEWED BY UNBIAS STAFF (BEESON PARTICIPATED ON THE FEBRUARY 2, 2006 ASSAULT ON PLAINTIFF.)    SUBSEQUENTLY, DEFENDANT BEESON CANCELLED THE 602 ON THE FALSE PRETEXOSE THAT PLAINTIFF REFUSED TO COOPERATE WITH THE INTERVIEW, SEE 602 # P.B.S.P.-D07-00130 IN EXHIBIT B ON DECEMBER 27, 2006 PLAINTIFF #BAH 602'ED DEFENDANT C. COUNTESS FOR DENYING MAIL, SECOND LEVEL REVIEWER WAS DEFENDANT D. BARNEBURG AGAIN PLAINTIFF REQUESTED AN UNBIAS INTERVIEWER (BARNEBURG ALSO PARTICIPATED IN THE ASSAULT ON PLAINTIFF.)

_____

[3]. UNDER INFORMATION AND BELIEF IN DECEMBER 2006 A NEW MAIL POLICY WAS IMPLEMENTED, ALL INCOMING MAIL GOING TO UNITS 1-4 OF GANG CORRIDOR IS TO BE SENT TO I.G.I. UNIT.  PREVIOUSLY ONLY SELECTED TAGGED PRISONERS MAIL WAS SENT TO I.G.I. UNIT.
[4]. D. HAWKES WAS SUPERVISOR OF THE I.G.I. UNIT.  PLAINTIFF HAD TO FILE A SUBSEQUENT 602 ON HAWKES FOR FAILING TO RESPOND TO 602 SUBMITTED ON DECEMBER 4, 2006.

7.

1  SUBSEQUENTLY DEFENDANT BARNEBURG CANCELLED THE 602[5]. ON THE FALSE PRETENSE PLAINTIFF

2  REFUSED TO COOPERATE WITH THE INTERVIEW, SEE 602 # PBSP-OD7-0OO73 IN EXHIBIT B.

3     46. ON FEBRUARY 21,2007 A COMBINED TASK FORCE OF, UNDER INFORMATION AND BELIEF,

4  SPECIAL UNITS OF THE C.D.C.R. AND OTHER LAW ENFORCEMENT ENTITIES CONVERGED ON P.B.S.P.-S.H.U.

5  "BANG" CORRIDOR CONDUCTED PROPERTY SEARCHES, PHOTOGRAPHED, AND VIDEO TAPPED SELECTED PRISONERS

6  INCLUDING PLAINTIFF.   DEFENDANT LT. R. KERSH IN HIS CAPACITY WAS ONE OF THE SUPERVISORS

7  OVERSEEING THE OPERATION.

8     47. DEFENDANT D. BARNEBURG AND C/O JOHN DOE 1. HANDCUFFED AND ESCORTED PLAINTIFF

9  FROM HIS ASSIGNED CELL (D2-105) CONDUCTED A PAT-DOWN BODY SEARCH AND METAL DETECTOR

10  WAND AND ESCORTED HIM TO THE "C" FACILITY VISITING AREA.   ENTERING THE CORRIDOR LEADING

11  TO THE VISITING AREA DEFENDANT G. PARKER VIDEO TAPPED THE ENTRANCE OF PLAINTIFF AND

12  ESCORTING STAFF.   A DEFENDANT JOHN DOE 2. ALSO PHOTOGRAPHED PLAINTIFF UPON ENTERING.

13  DEFENDANT J. DIMMICK POSITIONED AT THE VISITING AREA DESK ADVISED PLAINTIFF'S ESCORT THAT

14  HOLDING CELL # 13 WAS OPEN, PLAINTIFF WAS PLACED IN CELL # 13, DEFENDANTS BARNEBURG AND

15  JOHN DOE 1. REMOVED HANDCUFFS CONDUCTED A THORUGH STRIP SEARCH AND LEFT.

16     48. APPROXIMATELY NINETY (90) MINUTES LATER DEFENDANTS DIMMICK, J. REYES AND JOHN DOE

17  3. RETURNED ADDRESSING PRISONER RAUL GARCIA IN CELL # 14 THAT HE WAS TO BE PHOTOGRAPHED.

18  PRISONER GARCIA ASKED "WHAT FOR" DEFENDANT REYES RESPONDED "THATS THE WAY IT IS, ALL OF YOU

19  GUYS ARE GOING TO BE PHOTOGRAPHED"   PLAINTIFF ASKED DEFENDANT REYES "IS THIS AN ORDER OR

20  ARE YOU GUYS (TASK FORCE) MAKING THIS UP AS YOU GO ALONG, BECAUSE I WAS ALREADY PHOTOGRAPHED

21  AND VIDEO TAPPED WHEN ESCORTED IN"?   DEFENDANT REYES STATED "THESE PHOTOGRAPHS ARE FOR

22  MY PERSONAL COLLECTION." PLAINTIFF STATED "IN THAT CASE, NO, LET ME SPEAK TO YOUR SUPERVISOR

23  OR THE CAPTAIN."  THE THREE DEFENDANTS LEFT WHEN PLAINTIFF AND OTHER PRISONERS REFUSED TO

24  HAVE ADDITIONAL PHOTOGRAPHS TAKEN, SEE DECLARATION OF PLAINTIFF IN EXHIBIT E.

25     49. DEFENDANTS J. REYES, PEREZ, TAMAYO, AND G. PARKER BEGAN ADVISING PRISONERS

26  IF THEY AGREED TO BE PHOTOGRAPHED THEY WOULD BE RETURNED TO THEIR CELLS AND PROPERTY

27  RETURNED.   PRISONERS WHO REFUSED WOULD REMAIN IN THE HOLDING CELLS "ALL DAY" PRISONERS

28  STILL REFUSED.   DEFENDANTS LEFT THE AREA TO CONFER WITH, UNDER INFORMATION AND BELIEF,

5. BOTH 602's WERE CANCELLED ON FEBRUARY 21, 28, 2007 RESPECTIVELY.

8.

1 SENIOR TASK FORCE OFFICERS. APPROXIMATELY FIVE (5) MINUTES LATER DEFENDANT REYES
2 RETURNED STATING "I'M GETTING YOUR PHOTOS ONE WAY OR ANOTHER" AND WALKED BACK TO THE
3 VISITING DESK AREA. PLAINTIFF NOTICED NUMEROUS C/o's ATTEMPTING TO COERCE PRISONERS INTO
4 BEING PHOTOGRAPHED BUT ALL REFUSED.

5    50. APPROXIMATELY TEN (10) MINUTES LATER DEFENDANTS REYES, DIMMICK AND JOHN
6 DOE 4. RETURNED TO PLAINTIFFS HOLDING CELL AND STATED "CUFF UP" PLAINTIFF STATED "I WAS
7 ALREADY PHOTOGRAPHED AND I'M NOT GIVING YOU MY PICTURE". DEFENDANT REYES STATED
8 "WE'RE TAKING YOU HOME" (RETURN TO HOUSING CELL), PLAINTIFF ADVISED DEFENDANT REYES OF HIS
9 MEDICAL CHRONO FOR DOUBLE HANDCUFFS FOR SHOULDER INJURY. DEFENDANT REYES ASKED JOHN
10 DOE 4. FOR HIS HANDCUFFS, HANDCUFFED PLAINTIFF AND ESCORTED HIM OUT OF THE HOLDING CELL,
11 AND INTO THE ADJACENT CORRIDOR AND NOTICED TWELVE TO FIFTEEN C/o's LINED UP ON BOTH SIDES OF
12 THE CORRIDOR WITH MORE C/o's ENTERING THE CORRIDOR AREA FROM A SIDE ENTRANCE.

13    51. PLAINTIFF WAS ORDERED TO "HOLD UP" IN THE CENTER OF THE C/o LINED CORRIDOR AND
14 LOOKING AT ALL THE C/os, PLAINTIFF STATED "DAMN THE GREEN WALL IS FULLY REPRESENTED"
15 DEFENDANT J. BEESON TOOK HOLD OF PLAINTIFFS LEFT ELBOW FORCIBLY TURNING HIM TOWARD THE RIGHT
16 CORRIDOR WALL. PLAINTIFF NOTICED TWO C/o's HOLDING HAND-HELD VIDEO CAMERAS[6] FILMING
17 HIM; AND DEFENDANT G. PARKER HOLDING A DIGITAL CAMERA. PLAINTIFF AGAIN STATED "I AM NOT
18 TAKING ANYMORE PICTURES". SUDDENLY PLAINTIFF WAS PHYSICALLY ATTACKED, DEFENDANT D. BARN-
19 EBURG APPLIED A CHOKE HOLD SLAMMING PLAINTIFF TO THE GROUND, DEFENDANTS BEESON, REYES
20 COUNTLESS, BUCHANAN, OVENTES. PEREZ, TAMAYO AND BISHOP PARTICIPATED IN THE ATTACK,
21 PULLING ON PLAINTIFFS ARMS AND LEGS, PLACING THEIR KNEES ON HIS LEGS, STOMACH AND CHEST,
22 PLAINTIFFS HEAD WAS SLAMMED DOWN ON THE CONCRETE FLOOR, BOUNCING OFF THE FLOOR
23 PLAINTIFF LOOKING TOWARDS HIS LEGS WHEN DEFENDANT COUNTLESS STRUCK HIM IN THE FACE
24 CAUSING HIS HEAD TO AGAIN BOUNCE OFF THE FLOOR, SEE PLAINTIFFS DECLARATION IN EXHIBIT E.
25    52. DEFENDANT BARNEBURG FORCEFULLY LANDED HIS KNEE ON PLAINTIFFS HEAD CAUSING
26 HIS NECK TO MAKE POPPING SOUNDS. AT THE SAME TIME DEFENDANT BUCHANAN JUMPED ON PLAINTIFFS
27 RIGHT KNEE WHICH WAS BENT AND LAYING OVER HIS LEFT LEG CAUSING A SHARP PAIN TO THE

28    6. UNDER INFORMATION AND BELIEF PLAINTIFF ASSERTS THE VIDEO CAMERA OPERATORS
WERE PERSONNEL FROM THE C.D.C.R. GANG OPERATIONS (GANG OPS)

9.

1  KNEE AND LOWER BACK.  DEFENDANT BARNEBURG REMOVED HIS KNEE FROM THE LEFT SIDE OF
2  PLAINTIFFS FOREHEAD AND WITH HIS HAND FORCED HIS HEAD DOWN AGAINST THE FLOOR.
3  THIS WAS REPLACED BY DEFENDANT JOHN DOES #4. KNEE, SMASHING, AGAIN PLAINTIFFS
4  HEAD AGAINST THE GROUND.  DEFENDANT BARNEBURG BEGAN TO RIP OFF PLAINTIFFS T-SHIRT
5  UNTIL THE FRONT WAS TORN DOWN TO THE SEAM.  HE ORDERED DEFENDANT PARKER [7]. TO "TAKE
6  THE PHOTOS" AND ORDERED DEFENDANT JOHN DOE #4. WHO'S KNEE WAS SMASHING PLAINTIFFS
7  HEAD TO THE GROUND, TO "BACK OFF" IN ORDER TO PHOTO CAPTURE PLAINTIFFS FACE.
8  PLAINTIFF SUDDENLY FELT "POPS" IN HIS NECK, LOWER BACK AS THE PRESSURE WAS RELEASED
9  OFF HIS BODY.  UNDER INFORMATION AND BELIEF PLAINTIFF ASSERTS THE PHOTOGRAPHS AND
10  VIDEO TAPES SHOW HIM GRIMANCING IN PAIN AND IDENTITY OF ATTACKERS.  SUBSEQUENTLY,
11  DEFENDANT BARNEBURG ORDERED DEFENDANT T. BUCHANAN TO GET LEG IRONS FROM THE "C"
12  FACILITY CORRIDOR CONTROL BOOTH AND WERE PLACED ON PLAINTIFF, SEE DECLARATION IN EXHIBIT E.
13       53. PLAINTIFF WAS LIFTED TO HIS FEET BY DEFENDANT BEESON, BARNEBURG AND REYES,
14  PLAINTIFF ATTEMPTED TO STAND BUT HIS KNEES BUCKLED AND WAS CAUGHT BY DEFENDANTS BEESON
15  AND BARNEBURG; HOLDING PLAINTIFF UPRIGHT UNTIL HE COULD STAND AND WALK ON HIS OWN.
16  PLAINTIFF WAS ESCORTED TO HIS HOUSING UNIT AND PLACED IN A "DRY" HOLDING CELL IN THE UNIT
17  ROTUNDA.  DEFENDANT BARNEBURG ORDERED "D" FACILITY UNIT TWO (2) SECURITY AND ESCORT DEFEND-
18  ANT K. STATION TO CALL FOR A MEDICAL TECHNICAL ASSISTANT (M.T.A.) IN ORDER TO MEDICALLY
19  CLEAR HIM BEFORE PLACING PLAINTIFF IN HIS ASSIGNED CELL.  M.T.A. C. BUCHCREEK BEGAN HER
20  REPORT AND ASKED ABOUT THE TORN T-SHIRT STILL HANGING ON PLAINTIFF AND TO BE REMOVED IN
21  ORDER TO BETTER EXAMINE HIM.  SUBSEQUENTLY, THE T-SHIRT WAS REMOVED AND THE M.T.A.
22  RESUMED HER EXAMINATION, M.T.A. RICHCREEK ASKED PLAINTIFF WHAT HAPPENED, PLAINTIFF
23  EXPLAINED HE HAD BEEN "JUMPED BY THE GREEN WALL" WHILE HANDCUFFED AND SLAMMED TO THE
24  FLOOR, JUMPED ON AND PUNCHED IN THE FACE BY DEFENDANT COUNTLESS.  AND STATED DURING THE
25  ATTACK THERE WAS A "POP" IN THE BACK OF HIS NECK AND PAIN TO HIS LOWER BACK AND RIGHT KNEE.
26       54. M.T.A. RICHCREEK STOPPED HER EXAMINATION AND ASKED DEFENDANT BARNEBURG TO
27  CALL "D" FACILITY MEDICAL CLINIC AND REQUEST A NECK BRACE AND BACK BOARD; SHE ASKED

28       7. PLAINTIFF IS UNSURE IF DEFENDANT PARKER USED A CAMERA FROM ONE OF THE PREVIOUSLY
MENTIONED JOHN DOE CAMERA OPERATOR. OR PRODUCED AN ADDITIONAL CAMERA.

1 PLAINTIFF IF HE FELT ANY PAIN.  PLAINTIFF EXPLAINED HE WAS NUMB ALL THE WAY DOWN TO HIS LEFT HAND.

2 PLAINTIFF STATED TO THE M.T.A. THAT HE WOULD BE FILING AN EXCESSIVE USE OF FORCE ON ALL THE

3 PARTICIPATING DEFENDANTS.  THIS WAS OVERHEARD BY DEFENDANTS GLESON, BARNE BURG AS WELL

4 AS OTHER DEFENDANTS.  DEFENDANT FLOWERS AND M.T.A. MARLIN ARRIVED WITH THE NECK BRACE AND

5 BACKBOARD, M.T.A. RICHRELEK PLACED THE BRACE ON PLAINTIFF, HAD HIM LAY ON THE BACK BOARD

6 THEN PLACED ON TOP OF A ROLLING TABLE AND ESCORTED TO "D" FACILITY CLINIC.

7 - 55. PLAINTIFF WAS EXAMINED BY DEFENDANT S. RISENHOOVER, VITALS WERE TAKEN, X-RAYS AND

8 CT SCANS WERE ORDERED BY DEFENDANT RISENHOOVER.  PLAINTIFF WAS TRANSPORTED TO PRISON INFIR-

9 MERY AND EXAMINED BY ON DUTY DR. WAHIDULLAH; DURING THE EXAM ANOTHER DOCTOR ARRIVED

10 AND BEGAN TO GIVE PLAINTIFF A CURSORY EXAM AND ORDERED DR. WAHIDULLAH TO REMOVE THE

11 BRACE.  HE REFUSED STATING "HE HAS A NECK INJURY WITH NUMBNESS, REMOVING THE BRACE COULD

12 PARALYZE HIM, HE NEEDS X-RAYS AND CT SCAN".  SUBSEQUENTLY PLAINTIFF WAS TRANSPORTED TO

13 SUTTER COAST HOSPITAL IN CRESCENT CITY, WAS EXAMINED BY DR. SANDY SAUNDERS WHO ORDERED

14 X-RAYS AND CT SCAN.  REVIEWING THE RESULTS PAIN MEDICATION FOR NECK AND MUSCLE STRAIN

15 WAS PRESCRIBED BY DR. SAUNDERS.  PLAINTIFF WAS RETURNED TO P.B.S.P. AND HIS ASSIGNED CELL.

16 56. ON THE EVENING OF FEBRUARY 1, 2007 PLAINTIFF WAS ASKED BY HOUSING UNIT %o A. GARCIA IF

17 WANTED TO BE VIDEO INTERVIEWED FOR HIS COMPLAINT OF EXCESSIVE USE OF FORCE.  PLAINTIFF AGREED

18 AND WAS ESCORTED BY DEFENDANT LT. PEDROSO AND A SARGENT[8] AND TWO OTHER %os TO LT. PEDROSOS

19 OFFICE.  PLAINTIFF, FEARING FOR HIS SAFETY ASKED ESCORTING STAFF IF THIS WAS ANOTHER "GREEN

20 WALL SET-UP"?  DEFENDANT LT. PEDROSO RESPONDED "NO, THIS IS AN INTERVIEW WHICH WILL BE VIDEO

21 TAPED "  ONCE AT LT. PEDROSOS OFFICE PLAINTIFF WAS ORDERED TO STRADDLE A CHAIR WHILE THE

22 SGT. SET UP THE VIDEO CAMERA.  THE INTERVIEW WAS BEGUN NOTING THE CASE NUMBER, DATE,

23 NAMES AND RANK OF %os PRESENT, FOLLOWED BY PLAINTIFF BEING ASKED TO EXPLAIN IN HIS OWN

24 WORDS WHAT HAD OCCURED EARLIER THAT DAY, SEE PLAINTIFFS DECLARATION IN EXHIBIT E.

25 57. PLAINTIFF BEGAN BY STATING HE WAS ATTACKED AFTER MAKING THE COMMENT "THE GREEN WALL

26 IS FULLY REPRESENTED"[9]  AND THE ENTIRE INCIDENT WAS FILMED BY %os PRESENT WITH CAMERAS AND

27 8. PLAINTIFF BELIEVES THIS TO BE SARGENT EGSTROM.

28 9. UNDER INFORMATION AND BELIEF THE UNDERLYING MOTIVE FOR THE ATTACK WAS IN RETALIATION FOR PLAINTIFF FILING 602 APPEALS ON GREEN WALL MEMBERS OR ASSOCIATES FROM THE I.G.I. UNIT WHO COINCIDENTUALLY PARTICIPATED IN THE ATTACK.

1 PLAINTIFF EXPLAINED HE HAD LUMPS AND CUTS ON THE BACK AND SIDE OF HIS HEAD. DEFENDANT LT.

2 PEDROSO STATED "THERES NOTHING ABOUT HEAD WOUNDS ON THE MEDICAL REPORT", PLAINTIFF RESPONDED

3 THAT WAS BECAUSE AT THE TIME OF MEDICAL EXAM HE WAS STRAPPED TO THE BACK BOARD WITH HIS HEAD

4 TAPED DOWN AND COULD NOT MOVE HIS NECK. DEFENDANT LT. PEDROSO ORDERED ONE OF THE SGTs

5 PRESENT TO CALL FOR A M.T.A. IN ORDER TO DOCUMENT PLAINTIFFS WOUNDS. THE M.T.A. ARRIVED,

6 INTRODUCED FOR THE RECORD AND PROCEEDED TO EXAMINE PLAINTIFF, NOTING THREE (3) LUMPS ON THE

7 BACK OF HIS HEAD AND LACERATIONS ON HIS HEAD, HANDS AND KNEES; THE EXAM WAS DOCUMENTED

8 ON CAMERA AND MEDICAL FORMS. ONCE THE M.T.A. FINISHED PLAINTIFF ASKED DEFENDANT LT.

9 PEDROSO IF THE VIDEO WOULD DISAPPEAR TO PROTECT THE GREEN WALL AS DOES ALL OTHER EVIDENCE

10 OF EXCESSIVE FORCE, HE RESPONDED "NO, IT'LL BE ON TAPE WHEN WE NEED IT". DEFENDANT LT.

11 PEDROSO ASKED PLAINTIFF TO WRITE DOWN WHAT HAPPENED AND WOULD RETURN ON FEBRUARY 4, 2007

12 FOR THE WRITTEN ACCOUNT OF INCIDENT. THE INTERVIEW ENDED, PLAINTIFF WAS RETURNED TO HIS CELL

13 AND ON FEBRUARY 4, 2007 THE HANDWRITTEN ACCOUNT WAS PICKED UP. SEE DECLARATION IN EXHIBIT E.

14 58. ON FEBRUARY 5, 2007 PLAINTIFF FILED A 602 APPEAL # ABSP-07-0089 CITING ABUSE

15 UNDER COLOR OF AUTHORITY AND EXCESSIVE USE OF FORCE BY GREEN WALL MEMBERS OR ASSOCIATES OF THE

16 I.G.I. INITIATED BY RETALIATION, AND EXHAUSTED ON JUNE 25, 2007. ON FEBRUARY 8, 2007

17 PLAINTIFF WAS NOTIFIED BY HOUSING UNIT C/O A. GARCIA THAT DEFENDANT LT. PEDROSO CALLED INQUIRING

18 IF PLAINTIFF WOULD BE WILLING TO BE "REINTERVIEWED" ON CAMERA BECAUSE THE FIRST TAPED INTERVIEW

19 HAD BEEN "MESSED-UP", PLAINTIFF RESPONDED "WHAT A SURPRISE" AND AGREED. PLAINTIFF WAS

20 ESCORTED TO "D" FACILITY CONFERENCE ROOM BY DEFENDANT LT. PEDROSO, A C/O SGT. AND TWO (2) C/O s

21 WHILE THE SGT. SET UP TWO (2) HAND HELD VIDEO CAMERAS ON TRIPODS. PLAINTIFF ASKED HOW THE FIRST

22 VIDEO INTERVIEW MESSED UP. DEFENDANT LT. PEDROSO RESPONDED, THEY DIDN'T ACTUALLY MESS UP

23 BUT RATHER IT WAS MADE ON A "BAD DISC" THAT WOULD ONLY FUNCTION ON CERTAIN TYPE PLAYERS AND

24 THE COURTS NEED A RECORDING THATS PLAYABLE ON ALL TYPE PLAYERS. PLAINTIFF STATED HE WAS NOT

25 SURPRISED THERE WAS A "PROBLEM" WITH THE FIRST TAPED INTERVIEW BECAUSE HE BELIEVES THE GREEN

26 WALL HAS DEEP ROOTS IN P.B.S.P. SEE DECLARATION OF PLAINTIFF IN EXHIBIT E.

27 59. ONLY THE CAMERAS WERE READY THE INTERVIEW WAS BEGUN DEFENDANT LT. PEDROSO ASKED

28 PLAINTIFF IF HE WAS IN GOOD HEALTH. PLAINTIFF STATED HE WAS UNDER MEDITATION FOR THE NECK INJURY

21. DEFENDANT, J. DIMMICK IS A C/O IN THE C.O.C.R. AND IN THAT CAPACITY IS ASSIG~
NED TO "D" FACILITY UNTIL TWO AS HOUSING STAFF.   ON FEBRUARY 2, 2007 HE WAS ASSIGNED
TO THE "C" FACILITY VISITING ROOM DESK POSITION.

22. DEFENDANT, T. CRITESER IS A C/O IN THE C.O.C.R AND IN THAT CAPACITY IS EMPLOYED
AT P.B.S.P.

23. DEFENDANT, K. STANTON IS A C/O IN THE C.O.C.R AND IN THAT CAPACITY IS EMPLOYED AT P.B.S.P.

- 24. DEFENDANT, JOHN DOE ONE IS A C/O IN THE C.O.C.R. AND UNDER INFORMATION AND
BELIEF WAS ASSIGNED TO THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.

25. DEFENDANT, JOHN DOE TWO IS A C/O IN THE C.O.C.R. AND UNDER INFORMATION AND
BELIEF WAS ASSIGNED TO THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.

26. DEFENDANT, JOHN DOE THREE IS A C/O IN THE C.O.C.R AND UNDER INFORMATION AND
BELIEF WAS ASSIGNED TO THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.

27. DEFENDANT, JOHN DOE FOUR IS A C/O IN THE C.O.C.R. AND UNDER INFORMATION AND
BELIEF WAS ASSIGNED TO THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.

28. DEFENDANT M. SAYRE IS THE CHIEF MEDICAL OFFICER (C.M.O.) OF P.B.S.P. AND IN
THAT CAPACITY IS LEGALLY RESPONSIBLE FOR THE MEDICAL CARE OF ALL ITS PRISONERS AND FOR
THE ACTIONS OF ALL SUBORDINATE MEDICAL STAFF.

29. DEFENDANT, S. ROSENHOOVER IS A FAMILY NURSE PRACTITIONER (FNP) AND A PART OF
P.B.S.P. MEDICAL STAFF.  AND IN THAT CAPACITY IS RESPONSIBLE FOR PROVIDING PRIMARY MEDICAL
ATTENTION AND CARE TO ALL PRISONERS HOUSED IN UNITS 1-4 "D" FACILITY "GANG" CORRIDOR SHU.

30. DEFENDANT, J. FLOWERS IS A REGISTERED NURSE (R.N) AND PART OF P.B.S.P.
MEDICAL STAFF.  AND IN THAT CAPACITY ASSISTS IN PROVIDING MEDICAL ATTENTION AND CARE
TO ALL PRISONERS HOUSED IN UNITS 1-4 "D" FACILITY "GANG" CORRIDOR S.H.U.

31. DEFENDANT, M. McLEAN IS A FNP ON THE P.B.S.P. MEDICAL STAFF AND IN THAT
CAPACITY HAS THE POSITION OF HEALTH CARE MANAGER (H.C.M.)

32. DEFENDANT J. KRANTZ IS A CCII AT P.B.S.P. AND IN THAT CAPACITY, UNDER INFORMA~
TION AND BELIEF. ONE OF HIS DUTIES IS TO REVIEW MEDICAL APPEALS.

33. DEFENDANT C. GOROSPE IS A STAFF SERVICES ANALYST AT P.B.S.P. AND IN THAT

4.

1  SUFFERED FROM THE ATTACK.    PLAINTIFF WAS ASKED IF HE WANTED TO PROCEED, HE STATED YES BECAUSE IF

2  HE DIDN'T, THE INCIDENT WOULD BE SWEPT UNDER THE RUG AS USUAL.    SUBSEQUENTLY, HE WAS ADVISED

3  OF BEING CHARGED WITH ATTEMPTED BATTERY ON A PEACE OFFICER[10]. PLAINTIFF ASKED NOW THAT COULD

4  WHEN IT WAS HE WHO WAS ASSAULTED WHILE UNDER MANACLE RESTRAINT. THROWN TO THE GROUND,

5  PUNCHED IN THE FACE, KNEED ON HIS HEAD WHILE NUMEROUS GREEN WALL I.G.I. JUMPED ON HIS

6  LEGS.    AND HOLDING PLAINTIFF DOWN WHILE HIS T-SHIRT IS TORN OPEN IN ORDER TO PHOTOGRAPH

7  HIM, SEE DECLARATION OF PLAINTIFF IN EXHIBIT E.

8      60. AS TO THE INJURIES SUFFERED BY PLAINTIFF AND HE HAS SUBMITTED NUMEROUS SICK CALL[11]

9  REQUESTS BETWEEN FEBRUARY AND JULY 2007 AND TAKEN TO DOCTOR'S LINE[12], AND IN THAT SPAN OF

10 TIME, DEFENDANTS DR. SAYRE, S. RISENHOOVER (FNP) AND J. FLOWERS (RN) HAVE INDIVIDUALLY AND

11 COLLECTIVELY DELAYED PROCESSING OF REQUESTS AND VISITS TO DR.'S LINE, IGNORING BASIS FOR

12 REQUESTS AND GENERALLY INDIFFERENT TO HIS INJURIES.    PLAINTIFF HAS FILED TWO 602's

13 ON DEFENDANTS INADEQUATE MEDICAL ATTENTION AS TO THE INJURIES, SEE 602s IN EXHIBIT C.

14     61. ON FEBRUARY 13, 2007 PLAINTIFF WROTE A LETTER TO THE CALIFORNIA OFFICE OF INSPECTOR.

15 GENERAL (O.I.G.) REQUESTING AN INVESTIGATION INTO THE FEBRUARY 2, 2007 ASSAULT AND EXCESS-

16 IVE USE OF FORCE BY DEFENDANT MEMBERS OR ASSOCIATES OF THE GREEN WALL AND AN ONGOING

17 COVER-UP.

18     62. ON FEBRUARY 14, 2007 DEFENDANT BEESON ATTEMPTED TO HAVE A SECOND LEVEL 602

19 INTERVIEW WITH PLAINTIFF REGARDING DISAPPROVAL OF MHL. PLAINTIFF REQUESTED TO BE INTER-

20 BY UNBIAS STAFF BECAUSE HE HAD A PENDING COMPLAINT AGAINST DEFENDANT BEESON AS A PARTICI-

21 PANT IN THE FEBRUARY 2, 2007 ASSAULT ON PLAINTIFF.    DEFENDANT BEESON BECAME IRATE AND

22 STATED "I'LL REJECT IT AND HAVE IT CANCELLED AND SAY YOU REFUSED TO COOPERATE." PLAINTIFF

23 REFUSED TO GIVE IN TO THE THREATS.    SUBSEQUENTLY THE APPEAL WAS CANCELLED ALLEGEDLY FOR

24 PLAINTIFF REFUSING TO COOPERATE, SEE 602 # PBSP-D07-00130 IN EXHIBIT B.

25     10. BECAUSE PLAINTIFF KNEW ON FEBRUARY 2, 2007 HE DID NOT ATTEMPT TO ASSAULT ANYONE; WHEN
26 DEFENDANT LT. PEORISO MADE THIS STATEMENT. PLAINTIFF BELIEVES IT WAS MADE TO COERCE HIM INTO
   RESIGNING THE 602 ALSO FOR EXCESSIVE USE OF FORCE BY GREEN WALL I.G.I. STAFF.
27     11. WHEN A PRISONER REQUESTS MEDICAL ATTENTION A 7362 FORM IS SUBMITTED FOLLOWED BY
   AN INTERVIEW CONSISTING OF AN RN COMING TO THE HOUSING UNIT REGARDING THE MEDICAL PROBLEM
   FOLLOWED BY AN APPOINTMENT TO SEE THE FACILITY FNP.
28     12. CONSISTS OF MEDICAL ATTENTION BY FACILITY FNP AT THE FACILITY CLINIC ALSO REFERED TO
   AS SICK CALL.

63. ON FEBRUARY 21, 2007 PLAINTIFF APPEARED BEFORE AN INSTITUTIONAL CLASSIFICATION COMMITTEE [13.] (I.C.C.) WHEREBY PLAINTIFF REQUESTED THAT ALL ISSUES HE RAISE, TO BE NOTED ON THE C.D.C.R. 128-G CHRONO. PLAINTIFF BROUGHT TO THE COMMITTEE'S ATTENTION THAT HE WAS SUBJECTED TO EXCESSIVE USE OF FORCE CAUSING INJURY HE SUFFERED ON FEBRUARY 2, 2007 IN RETALIATION FOR FILING 602's ON DEFENDANT I.G.I. STAFF FOR INTERFERING WITH HIS MAIL. AND EMPLOYEE MISCONDUCT COMPLAINTS FILED. AND THAT THE ASSAULT WAS SUPERFICIALLY ON THE PRETEXT THAT PLAINTIFF MADE STATEMENTS ABOUT THE GREEN WALL AND REFUSING TO TAKE ADDITIONAL PHOTOS. CAPT. KELLY STATED "THE DEPARTMENT HAS A PROCESS AND ARE INVESTIGATING AND IT TAKES TIME". PLAINTIFF ADDED HOW THE 602's ARE ROUTINELY REJECTED ESPECIALLY WHEN THEY COMPLAIN OF STAFF MISCONDUCT WHILE OTHER 602's SIMPLY DISAPPEAR. CAPT. KELLY ENDED THE HEARING STATING THERE IS AN INVESTIGATION INTO THE INCIDENT. UPON RECEIVING THE C.D.C.R. 128 G CLASSIFICATION CHRONO IT DID NOT REFERENCE WHAT HAD BEEN RAISED BY PLAINTIFF.

64. AN HOUR AFTER BEING RETURNED TO HIS ASSIGNED CELL DEFENDANT BARNEBURG ATTEMPTED TO CONDUCT A 602 SECOND LEVEL INTERVIEW. PLAINTIFF REQUESTED TO BE INTERVIEWED BY AN UNBIAS INTERVIEWER. BECAUSE OF AN ONGOING INVESTIGATION INTO DEFENDANT BARNEBURG'S PART IN THE FEBRUARY 2, 2007 EXCESSIVE USE OF FORCE ON PLAINTIFF. DEFENDANT BARNEBURG STATED HE COULD "SET ALL THAT ASIDE AND GIVE PLAINTIFF A FAIR SHAKE", PLAINTIFF RESPONDED HE DID NOT BELIEVE HIM AND THAT THE INTERVIEW WAS AN INTIMIDATION TACTIC. SUBSEQUENTLY, DEFENDANT BARNEBURG STATED "THEN I'LL JUST CANCEL THE 602", ON FEBRUARY 28, 2007 THE 602 WAS CANCELLED, SEE 602 #P.B.S.P. 007-00073 IN EXHIBIT B.

65. ON FEBRUARY 16, 2007 PLAINTIFF RECEIVED A C.D.C.R. 115 R.V.R. ACCUSING HIM OF ATTEMPTED BATTERY ON A PEACE OFFICER. PLAINTIFF REQUESTED AN INVESTIGATIVE EMPLOYEE AND STAFF ASSISTANT [14.]. THE LATTER FOR THE PURPOSE TALKING TO AND OBTAINING DECLARATORY EVIDENCE FROM FELLOW PRISONERS THAT PLAINTIFF COULD NOT OBTAIN. PLAINTIFF ALSO REQUESTED ALL PRISONER AND PRISON STAFF WITNESSES PRESENT AT THE INCIDENT. PLAINTIFF REQUESTED AND WAS GRANTED A POSTPONEMENT OF DISCIPLINARY HEARING PENDING OUTCOME OF A REFERRAL FOR PROSECUTION.

---

13. COMMITTEE CONSISTED OF CHAIRPERSON DEFENDANT C. SCANETTA, CAPT. KELLY, CCII G. D'ERRICO, AND CCI N. BARTA.
14. ON APRIL 15, 2007 PLAINTIFF RECEIVED A C.D.C.R. 128-B CHRONO STATING HIS REQUEST FOR A STAFF ASSISTANT WAS DENIED. THE CHRONO WAS SIGNED BY %o W. COLEMAN.

14.

66. ON APRIL 10, 2007 PLAINTIFF RECEIVED A PROSECUTION REJECTION NOTICE BY C/O SODERLUND AND WAS ALLOWED TO REVIEW ONE (1) PHOTO OF HIMSELF SHOWING HE WAS GRIMACING IN OBVIOUS PAIN WITH HIS T-SHIRT RIPPED OPEN. THE PHOTO SHOWED LACERATIONS AND REDDENING ON PLAINTIFF'S BODY AND FACE. PLAINTIFF ASKED ABOUT THE OTHER PHOTOS AND VIDEO EVIDENCE TAKEN AT THE SCENE, C/O SODERLUND RESPONDED "THIS IS THE ONLY ONE I HAVE BUT I'LL ASK MY SUPERIORS". ON APRIL 13, 2007 PLAINTIFF MET WITH ASSIGNED INVESTIGATIVE EMPLOYEE (I.E.) C/O T. CRITESER WHO TOLD PLAINTIFF HE WOULD NEED THE NAMES OF PRISONER WITNESSES AND THE WRITTEN LIST OF QUESTIONS THAT I.E. WOULD RETURN IN THREE (3) DAYS TO PICK UP THE LIST AND QUESTIONS, THAT HE'D NEED TO GET THEM AS SOON AS POSSIBLE BECAUSE HE HAD A SCHEDULED VACATION IN A WEEK. DEFENDANT I.E. CRITESER NEVER RETURNED AND INSTEAD ISSUED A C.D.C.R. 128 B CHRONO STATING PLAINTIFF HAD REFUSED TO PARTICIPATE. ON MAY 2, 2007 DEFENDANT K. STANTON WAS ASSIGNED AS AN I.E. BY DEFENDANT LT. VANDERHOOFVEN. ON MAY 15, 2007 PLAINTIFF WAS TO HIS DISCIPLINARY HEARING AND FOUND GUILTY BY DEFENDANT LT. VANDERHOOFVEN. ON JUNE 19, 2007 PLAINTIFF FILED A 602 ON THE FINDINGS, SEE C.D.C.R. 115 AND 602 IN EXHIBIT D

67. IN NOVEMBER 2006 PLAINTIFF WENT TO DR'S LINE FOR CRONIC ALLERGIES THAT HAD BECOME A SINUS INFECTION, HE REQUESTED TO BE EXAMINED BY A NASAL SPECIALIST. PLAINTIFF HAS A TWENTY-SEVEN (27) YEAR HISTORY OF ALLERGIES WITH SINUS INFECTIONS IN THE PAST. DEFENDANT RISENHOOVER DECIDED PLAINTIFF MUST FIRST GO THROUGH A REGIMEN OF MEDICATION AND NASAL SPRAYS PRIOR TO BEING RECOMMENDED TO SEE A SPECIALIST, PLAINTIFF AGREED TO THE PROCESS. IN DECEMBER OF 2006 PLAINTIFF RETURNED TO DR'S LINE AND DEFENDANT RISENHOOVER DECIDED TO AGAIN HAVE PLAINTIFF GO THROUGH THE SAME REGIMEN OF MEDICATIONS AND NASAL SPRAYS.

68. ON JANUARY 7, 2007 PLAINTIFF COMPLETED THE REGIMEN OF MEDICATIONS YET STILL SUFFERED EXTREME SINUS PAIN BUT WAS AGAIN TOLD BY DEFENDANT RISENHOOVER HE WOULD HAVE TO GO THROUGH THE SAME REGIMEN FOR ANOTHER THIRTY (30) DAYS. ON JANUARY 10, 2007 PLAINTIFF FILED A 602 FOR INADEQUATE MEDICAL TREATMENT AND REPEATED DENIAL OF REQUEST TO SEE SPECIALIST. ON JANUARY 16, 2007 DEFENDANT J. FLOWERS DENIED AT INFORMAL LEVEL, JANUARY 23, 2007 DEFENDANT RISENHOOVER AND DR. SAYRE, AT SECOND LEVEL 602 WAS DENIED DEFENDANTS M. McLEAN AND CCII J. KRAVITZ. IN THE COURSE OF THIS REVIEW PLAINTIFF ASSERTS HE NEVER SPOKE TO DEFENDANT

/5.

1  ROSENHOOVER THAT "THE INFECTION IS GONE" AND AT SECTION (f) OF 602 PLAINTIFF MADE NO SUCH STATE-
2  MENT TO THAT AFFECT.  THE 602 AT UNDICTOR'S LEVEL WAS REVIEWED BY DEFENDANT CAPT. HALL
3  WHO ERRONEOUSLY CONCLUDED THE SINUS CONDITION HAD BEEN RESOLVED AND ON THAT BASIS
4  DENIED THE 602, EXHAUSTING IT ON JUNE 27, 2007 SEE 602# PBSP D07-203 IN EXHIBIT C.

5        69. ON JANUARY 23, 2007 WHILE AT DR.'S LINE FOR A 602 INTERVIEW ON SINUS INFECTION
6  PLAINTIFF EXPLAINED TO DEFENDANT ROSENHOOVER THAT IN 2000 WHILE AT SAN QUENTIN HAD UNDERGONE
7  CORRECTIVE NOSE SURGERY FOR A BROKEN NOSE.  AT THAT TIME THE SURGEON HAD TO SCRAPE THE
8  SINUS CAVITY DUE TO POCK HOLES CAUSING INFECTION AND SINUS PAIN, ADVISING PLAINTIFF SOMETIME
9  IN THE FUTURE HE WOULD NEED TO HAVE MORE SCRAPING PROCEDURES.  HOWEVER, FIRST LEVEL
10 RESPONSE MAKES NO REFERENCE OF PLAINTIFF'S STATEMENT.  ON MARCH 14, 2007 AT DR'S LINE
11 FOR FOLLOW UP ON NECK INJURY AND SINUS INFECTION, DEFENDANT ROSENHOOVER STATED ANTIBIOTICS
12 SHOULD HAVE DONE THE JOB FOR THE INFECTION.  AT SECOND LEVEL RESPONSE IT IS DOCUMENTED
13 THAT PLAINTIFF MADE THE STATEMENT HIS SINUS INFECTION WAS RESOLVED THIS IS A FABRICATION
14 SUCH A STATEMENT WAS NEVER MADE BY PLAINTIFF.  TO DATE PLAINTIFF'S SINUS INFECTION PERSISTS.
15 602 WAS EXHAUSTED ON JUNE 27, 2007 SEE 602# PBSP C7-203 IN EXHIBIT C.

16       70. ON APRIL 24, 2007 AT DR.'S LINE FOR CONTINUED SINUS INFECTION PLAINTIFF WAS AGAIN
17 PRESCRIBED AMOXCICILLEN AND MUCINEX.  PLAINTIFF AGAIN REQUESTED TO SEE A SPECIALIST
18 STATING HIS SINUS PAIN IS SO SEVERE THE PRESSURE CAUSES PAIN TO HIS UPPER TEETH, HIS REQUEST WAS
19 DENIED BY DEFENDANT ROSENHOOVER.  ON MAY 1, 2007 PLAINTIFF SPOKE WITH DEFENDANT FLOWERS
20 EXPLAINING ABOUT HIS SINUS PAIN AND NECK INJURY, HE WAS PUT ON LIST FOR DR.'S LINE FOR THE
21 FOLLOWING WEEK.  ON MAY 8, 2007 AGAIN DEFENDANT ROSENHOOVER DENIED PLAINTIFF'S REQUEST
22 TO SEE A SINUS SPECIALIST.  AGAIN ON MAY 24, 2007 DURING A DR.'S LINE CHRONIC CARE
23 DEFENDANT ROSENHOOVER AGAIN DENIED A REQUEST TO SEE A NASAL SPECIALIST

24       71. ON JUNE 26, 2007 AT DR'S LINE PLAINTIFF AGAIN COMPLAINED OF SINUS PAIN AND AGAIN
25 REQUESTED TO SEE SPECIALIST, WAS INSTEAD PRESCRIBED ANTIBIOTICS AND DEFENDANT ROSENHOOVER DENIED
26 THE REQUEST.  ON JULY 12, 2007 PLAINTIFF REQUESTED MEDICAL ATTENTION FOR SEVERE SINUS PAIN
27 AND PRESSURE BEHIND HIS LEFT EYE.[15]  ON JULY 23, 2007 AT DR'S LINE AGAIN PLAINTIFF REQUESTED

28       15. WHEN THE CLINIC DID NOT RESPOND DEFENDANT DIMMICK WENT TO CLINIC AND WAS TOLD
         PLAINTIFF WAS ALREADY SCHEDULED FOR DR'S LINE AS TO SINUS INFECTION, THERE WAS NO DOCTOR ON DUTY.

16.

1  TO SEE A SINUS SPECIALIST. AGAIN DEFENDANT RISENHOOVER DENIED THE REQUEST AND INSTEAD PRES-
2  CRIBED NASAL SPRAY.    ON AUGUST 24, 2007 ATDR'S LINE FOR CHRONIC CARE DEFENDANT RISEN-
3  HOOVER EXAMINED PLAINTIFF'S SINUS, HE EXPLAINED THE PRESSURE CAUSES PAIN AND HAD BEEN
4  TOLD BY SPECIALIST AT SAN QUENTIN DUE TO ROCK HOLES PLAINTIFF'S SINUS WOULD NEED TO BE
5  SCRAPED.    AGAIN THE REQUEST FOR SPECIALIST WAS DENIED. AND ON BOTH NOVEMBER 13 AND 26,
6  2007 REQUESTS FOR NASAL SPECIALIST WERE ALSO DENIED BY DEFENDANT RISENHOOVER AND AT
7  ONE POINT SHE ARROGANTLY STATED JUST KEEP USING NASAL SPRAY. SEE DECLARATION IN EXHIBIT E.
8      72. ON OR ABOUT THANKSGIVING NIGHT OF 1997 PLAINTIFF BEGAN TO EXPERIENCE LOWER ABDOM-
9  INAL PAIN AND TAKEN TO THE SAN QUENTIN PRISON INFIRMERY, EXAMINED AND HELD OVER NIGHT FOR
10  OBSERVATION.    PLAINTIFF CONTINUED TO COMPLAIN ABOUT ABDOMINAL PAIN ON A WEEKLY BASIS AND
11  MEDICAL STAFF CONTINUED TO EXAMINE AND OBSERVE HIM.    IN MARCH OF 1998 PLAINTIFF WAS
12  TAKEN TO SICK CALL FOR LOWER ABDOMINAL PAIN AND FEVER [16] HE WAS FOUND TO HAVE A FEVER OF
13  $102°$ AND TAKEN TO PRISON INFIRMERY (HOSPITAL) FOR X-RAYS AND BLOOD TESTS. DURING THE
14  BLOOD TEST PLAINTIFF FAINTED.    PLAINTIFF AWOKE AT THE EMERGENCY CLINIC OVER HEARING
15  MEDICAL STAFF TELL ATTENDING DOCTOR HE HAD A TEMPETURE OF $105°$.  PLAINTIFF WAS ADMITTED TO
16  THE HOSPITAL FOR OBSERVATION AND TESTS AND RELEASED FIVE (5) DAYS LATER.    PLAINTIFF CONT-
17  INUED TO HAVE ABDOMINAL PAINS AND IN 2000 WAS DIAGNOSED WITH CROHN'S DISEASE, AND
18  PRESCRIBED MEDICATIONS TO CONTROL THE PAIN.

19     73. IN NOVEMBER 2001 PLAINTIFF WAS TRANSFERED TO P.B.S.P.  ON JANUARY 2, 2002 HE WAS
20  TRANSFERED TO THE LOS ANGELES COUNTY JAIL FOR RETRIAL.    WHILE THERE HE WAS EXAMINED BY A
21  GASTROENTEROLOGIST AND PRESCRIBED A SPECIAL DIET AND MEDICATIONS TO FIT PLAINTIFFS MEDICAL
22  NEEDS AND IN THE (18-20) MONTHS HE WAS ON THE SPECIAL DIET THERE WAS ONLY ONE MINOR
23  CROHNS FLARE-UP. SEE DECLARATION OF PLAINTIFF IN EXHIBIT E.

24     74. ON SEPTEMBER 11, 2003 PLAINTIFF WAS RETURNED TO P.B.S.P.-S.H.U., BRINGING WITH
25  HIM HIS MEDICAL FILE IN ORDER TO RECEIVE THE SAME NECESSARY TREATMENT AND IMMEDIATELY
26  NOTIFIED MEDICAL STAFF OF THOSE NEEDS.    ON OCTOBER 20 2003 PLAINTIFF FILED A 602 RESUES-
27  TING THE NECESSARY DIET TO CONTROL THE CROHNS DISEASE AND EASE THE PAIN.    THE 602 WAS
28     16. THE DOCTOR TOLD PLAINTIFF PRISON STAFF BELIEVED HE WAS FAKING THE ILLNESS IN ORDER TO
    GET OUT OF THE ADJUSTMENT CENTER WHERE PLAINTIFF WAS HOUSED UNDER DEATH SENTENCE.

1 BYPASSED APPEAL LEVELS TO DIRECTOR'S LEVEL AND DENIED ON APRIL 21, 2004. SEE 602 # P.B.S.P. 03 ~

2 02852 IN EXHIBIT         PLAINTIFF CONTINUED TO COMPLAIN EVERY THIRTY (30) DAYS WHEN SEEN FOR CHRONIC

3 CARE APPOINTMENTS.    ON OCTOBER 13, 2004 HE AGAIN FILED A 602 REQUESTING A SPECIAL DIET TO

4 CONTROL THE CROHNS DISEASE AND PAIN / SUFFERING FROM CROHNS.    THE 602 WAS DENIED AT

5 THIRD LEVEL ON AUGUST 9, 2005 SEE 602 # P.B.S.P. 04-03262 IN EXHIBIT C.

6        75. ON OR ABOUT NOVEMBER 21, 2005 GASTROENTEROLOGIST DR. SOBBLE (PHONETIC SPELLING)

7 PRESCRIBED PLAINTIFF A DIARY-FREE DIET AND SCHEDULED HIM FOR A COLONOSCOPY FOR "EARLY"

8 JANUARY 2006 IN ORDER TO HAVE A DIARY-FREE SYSTEM.    ON DECEMBER 19, 2005 DEFEND ~

9 ANT RISENHUOVER REAFFIRMED PLAINTIFF'S NEED FOR A DIARY-FREE DIET BEFORE THE COLONO ~

10 SCOPY AND THAT IT HAD BEEN APPROVED.    THIS DIET WAS NEVER PROVIDED TO PLAINTIFF AND AFTER

11 NUMEROUS ATTEMPTS TO OBTAIN THE DIARY-FREE DIET PLAINTIFF FILED A 602 ON JANUARY 11,

12 2006 AND WAS REJECTED AS A DUPLICATE ON MARCH 15, 2006. SEE 602 # P.B.S.P. - D06 ~00211

13 IN EXHIBIT C.

14        76. ON MAY 3, 2006 PLAINTIFF FILED A 602 FOR RETALIATION AND INDIFFERENCE TO

15 REQUESTS FOR MEDICAL TREATMENT.    ON MAY 9, 2006 PLAINTIFF WAS TAKEN OUT TO COURT FOR

16 TWENTY-EIGHT (28) DAYS, UPON RETURN TO P.B.S.P. THE TIME LIMITATIONS FOR THE 602 HAD

17 EXPIRED SEE 602 # P.B.S.P. D06-01026 IN EXHIBIT C.        ON OR ABOUT SEPTEMBER 13,

18 2006 PLAINTIFF WENT TO DR'S LINE FOR A KNEE INJURY DURING EXAMINATION HE COMPLAINED

19 TO DEFENDANT RISENHUOVER OF ABDOMINAL PAINS HE BELIEVED DUE TO A CROHNS FLARE ~

20 UP.    SHE RESPONDED "YOU'RE NOT HERE FOR THAT. SUBMIT ANOTHER SICK CALL SLIP".

21 THE NEXT MORNING WHILE WASHING UP PLAINTIFF FAINTED. HE TRIED TO CALL OUT TO HIS NIEG ~

22 HBOR JAVIER MARTINEZ IN D2-106 UPON WAKING UP HE STRUGGLED TO THE SINK TO THROW

23 COLD WATER ON HIMSELF.    PRISONER MARTINEZ WAS LET OUT OF HIS CELL TO USE HIS MEDICATION

24 AND NOTICED PLAINTIFF HOLDING HIMSELF UP AGAINST HIS CELL DOOR. MARTINEZ ASKED PLAINTIFF

25 IF HE WAS ALRIGHT, PLAINTIFF ASKED HIM TO NOTIFY FLOOR STAFF HE NEEDED MEDICAL ATTENTION.

26 PRISONER MARTINEZ NOTIFIED HOUSING CONTROL BOOTH C/O THAT PLAINTIFF WAS IN NEED OF MEDICAL

27 ATTENTION.    C/O's K. NEELY AND J. THOM SPOKE WITH MARTINEZ AS MARTINEZ EXPLAINED THAT

28 PLAINTIFF NEEDED MEDICAL ATTENTION. SEE DECLARATIONS OF J. MARTINEZ AND PLAINTIFF IN EXHIBIT E.

18.

77. C/o's NEELY AND THOM ASKED CONTROL BOTH C/o TO OPEN PLAINTIFF'S CELL, PLAINTIFF WIGGLED OVER TO THE YOU DOOR AND EXPLAINED TO STAFF WHAT HAPPENED AND THEY RESPONDED THAT THE CLINIC WOULD BE NOTIFIED AND PLAINTIFF WAS ORDERED BACK TO HIS CELL. AROUND FIVE (5) MINUTES LATER C/o's NEELY, THOM AND DEFENDANT J. FLOWERS CAME TO PLAINTIFF'S CELL. DEFENDANT FLOWERS ASKED PLAINTIFF TO CUFF UP IN ORDER TO HAVE HIS VITALS TAKEN. SUBSEQUENTLY, DEFENDANT FLOWERS STATED PLAINTIFF NEEDED TO GO TO THE CLINIC, HE WAS PLACED IN A WHEEL CHAIR AND ESCORTED TO "D" FACILITY CLINIC UNTIL HIS VITALS STABILIZED. THAT WAS THE EXTENT OF MEDICAL ATTENTION, HOWEVER, AS A RESULT OF PLAINTIFF'S FAINTING HE WAS PLACED ON "FAST TRACK" TO SEE THE GASTROENTEROLOGIST, SEE DECLARATION OF PLAINTIFF IN EXHIBIT E.

78. ON OR ABOUT OCTOBER 6, 2006 PLAINTIFF WAS TRANSPORTED TO SUTTER COAST HOSPITAL TO UNDERGO A COLONOSCOPY BY GASTROENTEROLOGIST DR. MARTINELLI. IN NOVEMBER 2006 PLAINTIFF WAS TAKEN TO P.B.S.P. SPECIALTY CLINIC TO REVIEW THE RESULTS OF THE COLONOSCOPY WITH DR. MARTINELLI. AT THE TIME PLAINTIFF EXPLAINED TO HIM THE ADVERSE REACTIONS HE EXPERIENCES FROM EATING DIARY PRODUCTS, EGGS, SPICEY AND GREASY FOODS. DR. MARTINELLI STATED THAT "THEY (P.B.S.P. MEDICAL STAFF AND ADMINISTRATION) FROWN ON ME ORDERING SPECIAL DIETS." DURING THIS CONSULTATION DR. MARTINELLI STATED TO PLAINTIFF THE REVIEW COULD NOT BE COMPLETED BECAUSE THE COLONOSCOPY REPORT WAS INCOMPLETE. IT WAS A TWO (2) PAGE REPORT ONE OF THE PAGES WAS MISSING.   NOT UNTIL JANUARY 14-15, 2008 WAS PLAINTIFF FINALLY ABLE TO, VIA AN OLSEN MEDICAL FILE REVIEW, REVIEW HIS PRISON MEDICAL FILE AND REQUEST BOTH PAGES, SEE DECLARATION OF PLAINTIFF IN EXHIBIT E.

79. ON DECEMBER 13, 2006 PLAINTIFF SUBMITTED A 602 FOR INADEQUATE MEDICAL ATTEN-TION AND TREATMENT. PLAINTIFF HAS HAD TO CONSISTENTLY SUFFER THE PAIN CAUSED BY CROHN FLARE-UPS THE PAIN IS INTENSE AND WHEN PLAINTIFF ATTEMPTS TO SEEK RELIEF FROM DEFEND-ANTS TIS AS IF HIS PLEAS FALL ON DEAF EARS.   THE 602 WAS CATOGORICALLY DENIED THROUGH THE APPEAL LEVELS AND EXHAUSTED ON JULY 3, 2007, SEE 602 # P.B.S.P. 07-00131 IN EXHIBIT C.   SUBSEQUENTLY, ON DECEMBER 4, 2007 PLAINTIFF FILED A CLAIM WITH THE CALIFORNIA VICTIMS COMPENSATION AND GOVERNMENT CLAIMS BOARD

80. ON JUNE 1, 2007 PLAINTIFF FILED A 602 ON DEFENDANT J. PLEATTE FOR INTERFERING

19.

1 WITH PLAINTIFF'S MAIL AND ISSUING A C.D.C.R. 128 B CHRONO [17.] INSTEAD OF A C.D.C.R. 1819 FORM

2 (DISAPPROVED MAIL) IN RETALIATION FOR FILING 602 ON GREEN WALL MEMBERS OR ASSOCIATES OF THE

3 I.G.I. UNIT FOR EXCESSIVE USE OF FORCE.    ON DECEMBER 8, 2007 THE 602 WAS EXHAUSTED,

4 SEE 602# P.B.S.P. -07-01299 IN EXHIBIT B.

5

6 ### VII. FACTS PERTAINING TO DEFENDANTS INTENT

7 –    81. DEFENDANTS HAVE INTENTIONALLY ASSAULTED PLAINTIFF WHILE UNDER MANACLE RESTRAINTS

8 BY USE OF FORCE CAUSING BODILY INJURY AND MENTAL SUFFERING.

9    82. THE ASSAULT WAS IN RETALIATION FOR PLAINTIFF FILING GRIEVANCES FOR EMPLOYEE

10 MISCONDUCT IN DISALLOWING MAIL UNDER PRETENSE THAT ON FEBRUARY 2, 2007 PLAINTIFF REFUSED

11 TO ALLOW ADDITIONAL PHOTO TAKING FOR DEFENDANTS PERSONAL USE.

12    83. DIRECT EVIDENCE OF DEFENDANTS INTENT OF EXCESSIVE USE OF FORCE ARE THE NUMEROUS

13 FILING OF GRIEVENCES BY PLAINTIFF PRIOR TO FEBRUARY 2, 2007.

14    84. DIRECT EVIDENCE OF DEFENDANTS INTENT IS, SUBSEQUENT TO PLAINTIFF FILING A GRIEVENCE

15 ON DEFENDANTS FOR ASSAULT ON PLAINTIFF. DEFENDANTS ISSUED A R.V.R. SEE EXHIBIT D.

16    85. DEFENDANTS HAVE BEEN DELIBERATE AND DIFFERENT TO PLAINTIFF'S RIGHT TO BE SAFE

17 FROM UNWARRANTED HARM.    EVIDENCE OF DEFENDANTS STATE OF MIND IS FOUND BY THE CHAIN

18 OF EVENTS OF FEBRUARY 2, 2007.

19    86. CIRCUMSTANTIAL EVIDENCE OF DEFENDANTS OF MIND IS PROVIDEN BY DEFENDANTS

20 SYSTEMATIC DENIAL OR OUTRIGHT CANCELATION OF GRIEVENCES FILED.

21    87. DEFENDANTS IN RETALIATION HAVE INTENTIONALLY FOUND PLAINTIFF GUILTY OF THE RULES

22 INFRACTION ABSENT PROVIDING HIM WITH A FAIR HEARING.

23    88. DIRECT EVIDENCE OF DEFENDANTS INTENT IS BY THE TIME OF R.V.R. FILING AND ITS

24 ADJUDICATION.

25    89. EVIDENCE OF DEFENDANTS STATE OF MIND IS PROVIDED BY DEFENDANTS NOT AFFORDING PLAINTIFF

26 A STAFF ASSISTANT OR THE PRESENCE OF REQUESTED WITNESSES AT THE HEARING.

27 17. UNDER INFORMATION AND BELIEF THE C.D.C.R. 128-B HAS ISSUED AND USED AS A TOOL BY
THE I.G.I. TO GENERATE FALSE DOCUMENTATION TO INDICATE GANG ACTIVITY.    AND BECAUSE THESE CHRONOS
28 REMAIN AS A PERMANENT PART OF PRISON FILE.    PRISON RULES CCR15 § 3/47 MANDATES DISAPPROVED
IS TO BE GIVEN NOTIFICATION TO PRISONER OF DISAPPROVAL AND ADVISEMENT OF APPEAL RIGHTS.

90. Defendants have intentionally chosen not to provide plaintiff with the adequate medical attention and treatment entitled him as to his Crohn's disease

91. Direct evidence of defendants' intent to not provide adequate medical treatment is the repetition of same regimens of medical treatment.

92. Defendants' have been deliberate and indifferent to plaintiffs' needs for proper treatment.   Evidence of defendants' state of mind is their failure to go beyond minimum perfunctory medical attention and treatment and the absence of any justifiable reason not to treat plaintiff adequately.

93. Circumstantial evidence of defendants' state of mind is by defendants' systematic denial of grievances filed by plaintiff. See 602s in Exhibit C.

94. Defendants have intentionally chosen not to provide plaintiff with adequate medical attention and treatment regarding plaintiffs' chronic sinus condition.

95. Direct evidence of defendants' intent to not provide adequate medical treatment for his condition is the repetition of same regimen of medical attention and treatment.

96. Defendants have been deliberate and indifferent to plaintiffs' need for proper treatment.  Evidence of defendants' state of mind is by their failure to go beyond the minimum perfunctory medical attention and the absence of any justifiable reason not to treat plaintiff adequately.

97. Circumstantial evidence of defendants' state of mind is provided by defendants' systematic denial of grievances filed by plaintiff. See 602s in Exhibit C.

//
//
//
//
//
//
//
//

21.

1  DIET FOR CROHN'S DISEASE. EXHAUSTED AUGUST 9, 2005, SEE EXHIBIT C.

2     O) INMATE CDCR 602 LOG NO. PBSP-03-02882, RE: DENIAL OF SPECIAL DIET

3  FOR CROHN'S DISEASE: EXHAUSTED APRIL 21, 2004, SEE EXHIBIT C.

4     P) MARCH 24, 2007 OFFICE OF INSPECTOR GENERAL'S REPLY TO FEBRUARY 13, 2007

5  SUBMITTED LETTER, SEE EXHIBIT D

6     Q) CALIFORNIA VICTIM'S COMPENSATION AND GOVERNMENT CLAIMS BOARD CLAIM

7  FILED DECEMBER 5, 2007, SEE EXHIBIT D

8     R) INMATE REQUEST TO R.N. LABANS (OFFBO SEPTEMBER 28, 2007. RE: DELAY OF

9  MEDICAL ATTENTION / TREATMENT, SEE EXHIBIT D

10    S) MEDICATION PRESCRIPTION TAG (OFFBO JULY 3, 2007 — SEPTEMBER 10, 2007,

11  RE: OXS SHLL CALCIUM,   SEE EXHIBIT D

12    T) HEALTH CARE REQUEST FORMS 7.362 (OFFBO AUGUST 12, 2007 AND AUGUST

13  14, 2007 RE: DENIAL OF REFILL OF OXS SHLL CALCIUM, SEE EXHIBIT D

14    U) HEALTH CARE REQUEST FORMS (OFFBO SEPTEMBER 9 AND 19, 2007 AND

15  OCTOBER 2, 2007, RE: CROHN'S DISEASE FLARE-UPS CAUSING FAINTING, SEE EXHIBIT D

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

## VII. EXHAUSTION OF ADMINISTRATIVE REMEDIES

98. PLAINTIFF HAS EXHAUSTED ADMINISTRATIVE REMEDIES AS FOLLOWS:

A) INMATE CDCR 602 LOG NO. PBSP-07-00389, RE: RETALIATORY EXCESSIVE USE OF FORCE CAUSING BODILY INJURY BY GREEN WALL I.G.I. STAFF, EXHAUSTED JUNE 25, 2007, SEE EXHIBIT A

B) INMATE CDCR 602 LOG NO PBSP-07-00866, RE: DENIAL OF MEDICAL TREATMENT RESULTING FROM EXCESSIVE USE OF FORCE, EXHAUSTED JULY 8, 2007, SEE EXHIBIT A.

C) INMATE CDCR 602 LOG NO. PBSP-07-00717, RE: DENIAL OF MEDICAL CARE EXHAUSTED SEPTEMBER 24, 2007, SEE EXHIBIT A

D) INMATE CDCR 602 LOG NOs PBSP-07-01299 (PBSP-07-01271 ATTACHED). RE: RETALIATORY ACTS, DENYING MAIL, EMPLOYEE MISCONDUCT, EXHAUSTED DECEMBER 8, 2007, SEE EXHIBIT B

E) INMATE CDCR 602 LOG NO PBSP-07-00073, RE: DENIAL OF INCOMING MAIL BY I.G.I., ARBITRARILY CANCELLED FEBRUARY 28, 2007, SEE EXHIBIT B

F) INMATE CDCR 602 LOG NO. PBSP-07-00130, RE: DENIAL OF INCOMING MAIL BY I.G.I. ARBITRARILY CANCELLED FEBRUARY 21, 2007, SEE EXHIBIT B

G) INMATE CDCR 602 LOG NO. PBSP-06-02663, RE: I.G.I. NEGLIGENT MISHANDLING OF MAIL, EXHAUSTED MARCH 21, 2007, SEE EXHIBIT B

H) INMATE CDCR 602 LOG NO. PBSP-06-02070, RE: MAIL DENIAL BY I.G.I. EXHAUSTED FEBRUARY 2, 2007, SEE EXHIBIT B

I) INMATE CDCR 602 LOG NO. PBSP-06-02263, RE: DENIAL OF INCOMING MAIL BY I.G.I. EXHAUSTED FEBRUARY 20, 2007. SEE EXHIBIT B

J) INMATE CDCR 602 LOG NO. PBSP-07-00131, RE: DENIAL OF MEDICAL ATTENTION AND TREATMENT, EXHAUSTED JULY 3, 2007, SEE EXHIBIT C

K) INMATE CDCR 602 LOG NO. PBSP-06-01026, RE: MEDICATIONS FOR CROHN'S DISEASE GRANTED AT FIRST LEVEL JUNE 29, 2006 SEE EXHIBIT C

L) INMATE CDCR 602 LOG NO. PBSP-07-203 RE: DENIAL OF ADEQUATE MEDICAL ATTENTION AND TREATMENT, EXHAUSTED JUNE 27, 2007, SEE EXHIBIT C

M) INMATE CDCR 602 LOG NO. PBSP-06-00211, RE: DENIED MEDICAL CLAIM AS A DUPLICATE JANUARY 30, 2006, SEE EXHIBIT C

N) INMATE CDCR 602 LOG NO. PBSP-04-03262, RE: DENIAL OF SPECIAL

## III. LEGAL CLAIMS

### FIRST CAUSE OF ACTION

1

2  (EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT ~ SUBJECTION TO RETALIATORY EXCESS-

3  IVE USE OF FORCE CAUSING BODILY INJURY)

4    99. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1

5  THROUGH 98.

6    100. DEFENDANTS, IN RETALIATION FOR FILING GRIEVANCES AGAINST THEM, WANTONLY APPLIED

7  EXCESSIVE USE OF FORCE UPON PLAINTIFF WHILE UNDER MANACLE RESTRAINTS CAUSING BODILY INJURY.

8    101. DEFENDANTS WANTONLY SUBJECTED PLAINTIFF TO EXCESSIVE USE OF FORCE CAUSING PLAINTIFF TO

9  NOW SUFFER MENTAL FEAR AND ANGUISH OF ANY FUTURE ATTACKS BY GREEN WALL I.G.I. DEFENDANTS.

10    102. DEFENDANTS WERE DELIBERATE AND INDIFFERENT TO PLAINTIFF'S CONSTITUTIONAL RIGHT TO BE

11  FREE FROM UNNECESSARY PHYSICAL HARM IN VIOLATION OF THE EIGHTH AMENDMENT.

12

13              SECOND CAUSE OF ACTION

14  (EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT ~ DELIBERATE INDIFFERENCE TO INADE-

15  QUATE MEDICAL TREATMENT)

16    103. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1

17  THROUGH 98.

18    104. DEFENDANTS PROVIDED PLAINTIFF WITH INADEQUATE MEDICAL TREATMENT SUBSEQUENT TO THE

19  MEDICAL DIAGNOSIS THAT PLAINTIFF SUFFERS FROM CROHNS DISEASE.

20    105. DEFENDANTS PROVIDED PLAINTIFF WITH INADEQUATE MEDICAL TREATMENT WHEN DENYING

21  PLAINTIFF A SPECIAL DIET TO ALLEVIATE PAIN SUFFERED AS A RESULT OF THE CROHNS DISEASE.

22    106. DEFENDANTS HAVE CONTINUOUSLY RESPONDED PERFUNCTORY TO PLAINTIFFS' CONSISTENT RES-

23  UESTS FOR PROPER MEDICAL TREATMENT FOR HIS CROHNS DISEASE.

24    107. DEFENDANTS HAVE CONTINUOUSLY PROVIDED PLAINTIFF WITH WITH INADEQUATE MEDICAL

25  TREATMENT BY PRESCRIBING GENERALIZED MEDICATIONS FOR HIS CROHNS DISEASE AND REDUCING THE

26  AMOUNT OF MEDICATION HELPFUL IN TREATMENT OF HIS CONDITION.

27    108. DEFENDANTS HAVE CONTINUED TO BE DELIBERATE AND INDIFFERENT TO PLAINTIFFS' MEDICAL

28  NEEDS WHEN FAILING TO PROVIDE PROPER MEDICAL TREATMENT FOR HIS CROHNS DISEASE.

1  109. DEFENDANTS HAVE AT ALL TIMES BEEN FULLY AWARE OF THE CONTINUOUS SUFFERING PLAINTIFF

2  HAS HAD TO AND CONTINUES TO ENDURE AND SHOULD HAVE BEEN AWARE OF OTHER SPECIALIZED TREATMENT

3  AVAILABLE FOR CROHNS DISEASE SUFFERS.

4  110. DEFENDANTS HAVE DENIED PLAINTIFF THE ADEQUATE MEDICAL TREATMENT ENTITLED TO HIM

5  IN VIOLATION OF THE EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT.

6  111. DEFENDANTS PROVIDED PLAINTIFF WITH INADEQUATE MEDICAL TREATMENT SUBSEQUENT TO THE

7  MEDICAL DIAGNOSIS THAT PLAINTIFF SUFFERS FROM CHRONIC SINUS CONDITION.

8  112. DEFENDANTS HAVE PROVIDED PLAINTIFF WITH INADEQUATE MEDICAL TREATMENT WHEN DENYING

9  PLAINTIFFS CONSISTENT REQUESTS TO SEE A SPECIALIST FOR HIS CHRONIC SINUS CONDITION.

10  113. DEFENDANTS HAVE CONTINUOUSLY RESPONDED PERFUNCTORY TO PLAINTIFF'S CONSISTENT REQUESTS

11  FOR PROPER MEDICAL TREATMENT FOR HIS CHRONIC SINUS CONDITION.

12  114. DEFENDANTS HAVE CONTINUOUSLY PROVIDED PLAINTIFF WITH INADEQUATE MEDICAL TREATMENT

13  CONSISTING OF REPEATITIVE REGIMENS OF NASAL SPRAYS.

14  115. DEFENDANTS HAVE PROVIDED PLAINTIFF WITH INADEQUATE MEDICAL ATTENTION WHEN REFUSING

15  PLAINTIFFS REQUESTS FOR X-RAY OF NASAL CAVITY.

16  116. DEFENDANTS HAVE CONTINUED TO BE DELIBERATE AND INDIFFERENT TO PLAINTIFFS

17  MEDICAL NEEDS WHEN FAILING TO PROVIDE PROPER MEDICAL TREATMENT FOR HIS CHRONIC SINUS CONDITION.

18  117. DEFENDANTS HAVE AT ALL TIMES BEEN AWARE OF THE CONTINUOUS SUFFERING PLAINTIFF HAS

19  HAD TO ENDURE AND SHOULD HAVE BEEN AWARE OF OTHER PROCEDURES AND TREATMENTS AT THEIR

20  DISPOSAL TO ELLIVIATE PLAINTIFFS' SUFFERING.

21  118. DEFENDANTS PROVIDED PLAINTIFF WITH INADEQUATE MEDICAL ATTENTION FOR INJURIES

22  OCCURING WHEN SUBJECTED TO EXCESSIVE USE OF FORCE BY GREEN WALL I.G.I. DEFENDANTS.

23  119. DEFENDANTS PROVIDED PLAINTIFF WITH INADEQUATE MEDICAL TREATMENT WHEN DENYING

24  PLAINTIFF PHYSICAL THERAPY FOR INJURIES OCCURING WHEN SUBJECTED TO EXCESSIVE USE OF FORCE

25  BY GREEN WALL I.G.I. DEFENDANTS

26  120. DEFENDANTS WERE DELIBERATE AND INDIFFERENT TO PLAINTIFFS PHYSICAL SUFFERING AND

27  MEDICAL NEEDS FROM INJURIES OCCURING WHEN SUBJECTED TO EXCESSIVE USE OF FORCE BY GREEN WALL

28  I.G.I. DEFENDANTS IN VIOLATION OF THE EIGHTH AMENDMENT.

## THIRD CAUSE OF ACTION

(FIRST AND FOURTEENTH AMENDMENTS ~ RIGHT TO PETITION THE GOVERNMENT FOR REDRESS OF GRIVIENCES, RIGHT TO COMMUNICATE WITH SOCIETY AND RIGHT TO EQUAL PROTECTION)

121. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 98.

122. DEFENDANTS HAVE DENIED PLAINTIFF CONTACT WITH THE GENERAL COMMUNITY NAMELY, BY DENYING MAIL CORRESPONDENCE.

- 123. DEFENDANTS HAVE DENIED PLAINTIFF MAIL CORRESPONDENCE ABSENT ANY EVIDENCE OF MISCONDUCT, NAMELY VIOLATION OF PRISON RULES.

124. DEFENDANTS HAVE DENIED PLAINTIFF AN OPPORTUNITY FOR ANY MEANINGFUL CHALLANGE TO DENIAL OF MAIL CORRESPONDENCE BY CANCELLING 602 FILED.  LIKE ANY OTHER SIMILARLY SITUATED PRISONER PLAINTIFF IS ENTITLED TO FILE GRIVIENCE ABSENT ANY BASIS FOR DISALLOWING FILING OF GRIVIENCE.  THESE ACTS BY DEFENDANTS ARE VIOLATIVE OF PLAINTIFF'S CONSTITUTIONALLY PROTECTED RIGHTS UNDER THE FIRST AND FOURTEENTH AMENDMENTS.

## FOURTH CAUSE OF ACTION

(FIRST, FIFTH AND FOURTEENTH AMENDMENTS ~ DENIAL OF LIBERTY INTEREST ABSENT THE DUE PROCESS OF LAW)

125. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 98.

126. DEFENDANTS DENYING PLAINTIFF COMMUNICATION WITH SOCIETY VIA MAIL CORRESPONDENCE FOR AN ASSERTED WRONG DOING FAILED TO ISSUE A RULES VIOLATION REPORT, (R.V.R.)

127. DEFENDANTS FAILURE TO ISSUE PLAINTIFF A R.V.R. FOR AN ASSERTED WRONG DOING DENIED PLAINTIFF AN OPPORTUNITY TO CHALLANGE THE DENIAL OF HIS LIBERTY INTEREST RIGHT TO COMMUNICATE WITH SOCIETY VIA MAIL CORRESPONDENCE.

128. DEFENDANTS' ACTS ARE NOT REASONABLY RELATED TO A LEGITIMATE PENOLOGICAL INTEREST AND DENY PLAINTIFF HIS FIRST AMENDMENT RIGHT TO COMMUNICATE AND FILE GRIVIENCES. VIOLATIVE OF HIS LIBERTY INTERESTS ABSENT DUE PROCESS UNDER THE FIRST, FIFTH AND FOURTEENTH AMENDMENTS.

26.

## FIFTH CAUSE OF ACTION

(CALIFORNIA CONSTITUTION CRUEL OR UNUSUAL PUNISHMENT — SUBJECTION TO RETALIATORY EXCESSIVE USE OF FORCE CAUSING BODILY INJURY)

129. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 98.

130. DEFENDANTS IN RETALIATION FOR FILING 602 APPEALS AGAINST THEM WANTONLY SUBJEC-TED PLAINTIFF TO EXCESSIVE USE OF FORCE WHILE UNDER MANACLE RESTRAINTS CAUSING BODILY INJURY.

- 131. DEFENDANTS WANTONLY SUBJECTED PLAINTIFF TO EXCESSIVE USE OF FORCE CAUSING PLAINTIFF TO NOW SUFFER MENTAL ANGUISH AND FEAR OF FUTURE ATTACKS BY GREEN WALL 1.6.1. DEFENDANTS.

132. DEFENDANTS WERE DELIBERATE AND INDIFFERENT TO PLAINTIFF'S RIGHT TO BE FREE FROM RETALIATORY ACTIONS AND UNNECESSARY HARM VIOLATIVE OF CALIFORNIA CODE OF REGULATIONS TITLE 15 (CCR 15) SECTIONS 3084.1, 3268(a)(3) AND ARTICLE ONE SECTION SEVENTEEN OF STATE CONSTITUTION.

## SIXTH CAUSE OF ACTION

(CALIFORNIA CONSTITUTION CRUEL OR UNUSUAL PUNISHMENT ~ DELIBERATE INDIFFERENCE TO INADE-QUATE MEDICAL TREATMENT)

133. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 98.

134. DEFENDANTS HAVE SUBJECTED PLAINTIFF TO CRUEL OR UNUSUAL PUNISHMENT WHEN INTENTIONALLY DENYING HIM ADEQUATE MEDICAL TREATMENT SPECIFICALLY FOR HIS CROHNS DISEASE, CHRONIC SINUS CONDITION AND INJURIES SUFFERED WHEN SUBJECTED TO EXCESSIVE USE OF FORCE BY THE GREEN WALL 1.6.1. DEFENDANTS.

135. DEFENDANTS HAVE BEEN WANTONLY DELIBERATE AND INDIFFERENT TO PLAINTIFF'S MEDICAL NEEDS ENTITLED TO HIM UNDER CCR 15 §§ 3350(a)(b); 3350.1(a).

136. DEFENDANTS ACTS HAVE DENIED PLAINTIFF HIS RIGHT TO BE FREE FROM CRUEL OR UNUSUAL PUNISHMENT AS GUARANTEED BY ARTICLE 1 SECTION 17 OF STATE CONSTITUTION.

//
//
//

27

## SEVENTH CAUSE OF ACTION

(CALIFORNIA CONSTITUTION INALIENABLE RIGHTS ~ RIGHT TO COMMUNICATE)

137. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 98.

138. DEFENDANTS HAVE DENIED PLAINTIFF THE RIGHT TO COMMUNICATE WITH THE GENERAL COMMUNITY WHEN DENYING MAIL CORRESPONDENCE ABSENT ANY MISCONDUCT BY PLAINTIFF OR CORRESPONDENT.

139. THESE ACTS BY DEFENDANTS IS CONTRARY TO CCR 15 §§ 3130, 3133 AND STATE PENAL CODE SECTIONS 2600, 2601 AND VIOLATIVE OF ARTICLE 1 SECTION 1 OF THE STATE CONSTITUTION.

## EIGHTH CAUSE OF ACTION

(CALIFORNIA CONSTITUTION RIGHT TO PETITION THE GOVERNMENT FOR REDRESS)

140. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 98.

141. DEFENDANTS HAVE DENIED PLAINTIFF THE RIGHT TO FILE AND HAVE ADDRESSED ADMINISTRATIVE GRIEVANCES (602s) BY THE CANCELLING OF 602s.

142. THESE ACTIONS BY DEFENDANTS ARE CONTRARY TO CCR 15 §§ 3177, 3084.1 AND VIOLATIVE OF ARTICLE 1 SECTION 3 OF THE STATE CONSTITUTION.

## NINTH CAUSE OF ACTION

(CALIFORNIA CONSTITUTION ~ STATE CREATED LIBERTY INTEREST)

143. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 98.

144. DEFENDANTS HAVE DENIED PLAINTIFF HIS STATE CREATED LIBERTY INTEREST RIGHT TO COMMUNICATE WITH THE GENERAL COMMUNITY AND BE AFFORDED THE OPPORTUNITY TO FILE GRIEVANCES.

145. THESE ACTS BY DEFENDANTS HAVE DEPRIVED PLAINTIFF HIS LIBERTY INTEREST ABSENT DUE PROCESS IN VIOLATION OF ARTICLE 1 SECTION 1, 3, 7 AND 15 OF STATE CONSTITUTION.

//

//

//

28.

## TENTH CAUSE OF ACTION

### (CALIFORNIA CONSTITUTION ~ EQUAL PROTECTION)

146. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 98.

147. DEFENDANTS HAVE DENIED PLAINTIFF COMMUNICATION WITH THE GENERAL COMMUNITY ON THE BASIS OF AN ASSERTED MISCONDUCT DEEMED BY DEFENDANTS AS PRISON GANG ACTIVITY PURSUANT TO C.C.R. 15 §§ 3000 "GANGS", 3023 "GANG ACTIVITY"

148. DEFENDANTS' DENIAL IS ABSENT ANY ISSUANCE OF A R.V.R. TO SUPPORT THEIR DENIAL PURSUANT TO C.C.R. 15 §§ 3312, 3315.

149. ABSENT ISSUANCE OF A R.V.R. DEFENDANTS HAVE NOT AFFORDED PLAINTIFF THE OPPORTUNITY TO PRESENT ANY MEANINGFUL CHALLANGE TO THE ASSERTED MISCONDUCT.

150. DEFENDANTS HAVE DENIED PLAINTIFF THE OPPORTUNITY TO FILE A GRIVIENCE FOR THE DENIAL OF MAIL.

151. DEFENDANTS' ACTS HAVE DENIED PLAINTIFF HIS RIGHT TO EQUAL PROTECTION AND DUE PROCESS IN VIOLATION OF ARTICLE 1 SECTION 7 AND 15 OF THE STATE CONSTITUTION.

## IX  CAUSATION

AS A DIRECT AND PROXIMATE RESULT OF THE AFOREMENTIONED ACTS AND OMISSIONS ON THE PART OF DEFENDANTS.  PLAINTIFF HAS SUFFERED AND CONTINUES TO SUFFER GENERAL AND SPECIFIC DAMAGES IN AN AMOUNT TO BE PROVEN AT TRIAL.  PLAINTIFF HAS NO PLAIN, ADEQUATE OR COMPLETE REMEDY AT LAW TO REDRESS THE WRONGS DISCRIBED HEREIN.  PLAINTIFF HAS BEEN AND WILL CONTINUE TO BE IRREPARABLY INJURED BY THE CONDUCT OF THE DEFENDANTS UNLESS THE COURT GRANTS :

## X. PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS FOR THE FOLLOWING RELIEF :

1.) A DECLARATORY JUDGEMENT THAT THE DEFENDANTS' ACTS AND PRACTICES DESCRIBED HEREIN VIOLATE PLAINTIFFS' FEDERAL AND STATE RIGHTS AS STATED HEREIN.

2.) A PRELIMINARY AND PERMANENT INJUNCTION WHICH PROHIBITS AND REQUIRES

1  THAT DEFENDANTS, THEIR AGENTS, EMPLOYEES /AND SUCCESSORS:  I.) NOT HARASS, RETALIATE

2  OR CONDUCT REPRISALS FOR PLAINTIFFS COURT LITIGATION;  II.) CEASE FROM DENYING PLAINTIFF

3  ADEQUATE CORRECTIVE MEDICAL TREATMENT;  III.) CEASE DENYING COMMUNICATION VIA U.S.

4  MAIL ON AN ASSERTED PRETEXT OF PENOLOGICAL SECURITY INTEREST ABSENT CREDIBLE PROOF;

5  IV.) CEASE ALLOWING THE CLANDESTINE GREEN WALL PRISON GANG TO OPERATE UNCHECKED IN ABUSING

6  THEIR AUTHORITY;  II) CEASE ALIENATION OF PLAINTIFF AND SIMILARILY SITUATED PRISONERS FROM

7  THE REST OF S.H.U. AND SUBJECTING TO MORE RESTRICTIVE PROGRAM CHANGES

8      3. COMPENSATORY DAMAGES OF $20.00 A DAY FOR DENIAL OF PLAINTIFFS CONSTITUTIONAL

9  RIGHTS FROM JANUARY 2000 TO THE PRESENT.

10     4. COMPENSATORY DAMAGES FOR PLAINTIFFS MENTAL ANGUISH AND SUFFERING AS A RESULT OF

11 BOTH INADEQUATE AND CORRECTIVE MEDICAL TREATMENT AND FOR SUBJECTION INJURIES AND MENTAL

12 ANGUISH AND SUFFERING FROM EXCESSIVE USE OF FORCE.

13     5. PUNATIVE DAMAGES OF $20,000.00 FROM EACH DEFENDANT FOUND TO HAVE DENIED PLAINTIFF

14 HIS CONSTITUTIONAL RIGHTS.

15     6. PLAINTIFFS COSTS FOR THE SUIT.

16     7. FOR COSTS AND REASONABLE ATTORNEY FEES PURSUANT TO 42 U.S.C. §1983 AND ANY OTHER

17 GROUNDS AUTHORIZED BY LAW

18     8. APPOINTMENT OF COUNSEL TO REPRESENT PLAINTIFF WHO IS NOT SCHOOLED IN THE SCIENCE OF LAW.

19     9. TRIAL BY JURY AS TO INADEQUATE AND CORRECTIVE MEDICAL TREATMENT AND SUBJECTION TO

20 INJURIES DUE TO EXCESSIVE USE OF FORCE AND DENIAL OF FEDERAL AND STATE CONSTITUTIONAL LIBERTY INTERESTS.

21

22                    XI.  VERIFICATION

23     I, ALFRED A. SANDOVAL DO STATE AND DECLARE THAT I HAVE READ THE AFOREMENTIONED AND

24 DO STATE THAT THE CONTENTS THEREIN ARE TRUE AND CORRECT.   AND THUS I DO STATE UNDER

25 THE PENALTY OF PERJURY AND THE LAWS OF THE UNITED STATES OF AMERICA.   EXECUTED THIS DAY

26 AT PELICAN BAY STATE PRISON, CRESCENT CITY, CALIFORNIA.

27 DATED  FEBRUARY  1ST      2008 /s/ Alfred Sandoval

28                              PLAINTIFF / DECLARANT

                         30.

# EXHIBIT COVER PAGE

$A$

**EXHIBIT**

Description of this Exhibit:

Number of pages to this Exhibit: ___$8$___ pages.

JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☒ United States District Court
☐ State Circuit Court
☐ United States Supreme Court
☐ Grand Jury

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:    JUN 2 5 2007

In re:    Sandoval, D-61000
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0612771        Local Log No.: PBSP 07-00389

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Pimentel, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that several Pelican Bay State Prison (PBSP) staff members used unnecessary and excessive force upon his person. The appellant asserts that he was removed from his cell and that the staff slammed him to the ground and he hit his head. The appellant requests that an investigation be completed, and that he be monetarily compensated.

**II    SECOND LEVEL'S DECISION:** The reviewer found that the appellant has not been subjected to misconduct on the part of named staff. The reviewer affirms that appropriate supervisory staff have been assigned to conduct an inquiry into this matter. Correctional Lieutenant J. Pedroso reviewed the submitted material and interviewed the involved parties. Based upon developed information, it was determined that the allegation of staff misconduct was NOT SUSTAINED. In order to determine the facts, the inquiry arising from this appeal included his interview; interview of department employees; and review of current policies, laws, and procedures. Additional research may have included interviews of other inmate's or review of the appellant's central file. The Second Level of Review (SLR) partially granted the appeal.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.    FINDINGS:** Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and evaluated by administrative staff and an inquiry has been completed at the SLR. In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. The Director's Level of Review (DLR) notes that in this case the reviewer determined that the appellant's allegations were NOT SUSTAINED. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to the appellant. In this case, the institution has reported the disposition to the appellant. Although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process. Therefore no relief is provided at the DLR.

**B.    BASIS FOR THE DECISION:**
California Penal Code Section: 832.7, 832.8
California Code of Regulations, Title 15, Section: 3000, 3001, 3005, 3268, 3391
Administrative Bulletin 98/10: PROCESSING OF INMATE/PAROLEE APPEALS, CDC FORMS 602, WHICH ALLEGE STAFF MISCONDUCT

**C.    ORDER:** No changes or modifications are required by the institution.

**INMATE/PAROLEE
APPEAL FORM**
CDC 802 (12/87)

Location: Institution/Parole Region    Log No.    Category

1. PBSP    1. D07-00389    7/5

2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| SANDOVAL, AlfreD | D#61000 | | DZ 105 |

A. Describe Problem: ABUSE UNDER Color of AuthORITY: ON FEB. 2nd 2007 VARIOUS MEMBERS of C.D.C.R's "GREEN WALL" LAUNCHED AN UNPROVOKED VIOLENT ATTACK ON ME PRODUCING PHYSICAL INJURIES due TO AN UNWARRANTED EXCESSIVE USE of FORCE MOTIVATED By RETALIATION. IT SHOULD be NOTED, AN INCIDENT REPORT will be MADE, BUT FOR THE PURPOSE of FILING 602 dead line, NAMES RELEVANT TO THE ATTACK will BE PROVIDED UPON RECEIPT of REPORT: ON 2/2/07, VARIOUS MEMBERS of IGI ' S.S.U WHO ARE MEMBERS OF THE CLANDESTINE CDCR'S GREEN WALL (G.W) FROM P.B.S.P. ¢ OTHER STATE FACILITIES CONDUCTED A PRE-PLANNED PROPERTY SEARCH of TARGETED PRISONERS. All WERE ESCORTED TO THE VISITING AREA. PHOTOS WERE TAKEN of EACH PRISONER AS WE ENTERED ¢ THEN PLACED IN HOLDING CELLS. IN THE COURSE of BEING RETURNED To my CELL, I WAS HAND CUFFED ¢ TOLD I WAS GOING BACK To my CELL. ONCE BEYOND

If you need more space, attach one additional sheet.                    CONTINUED :

B. Action Requested: UNDER THE Calif. Public RECORDS ACT § 6252 et. seq. ¢ Calif. INFORMATION PRACTICE ACT of 1977 [CIVIL Code] § 1798 et. seq, THE FOLLOWING RELEVANT documentation BE PROVIDED. 1.) INTERDEPART-MENT MEMO MANDATING "(G·W)" MEMBERS FROM OTHER INSTITUTIONS TO PARTICIPATE WITH P.B.S.P IGI "G·W" MEMBERS IN THE PROPERTY SEARCH; 2.) WHAT C.D.C.R OFFICIAL ORDERED THE ACTION; 3.) THE OUTSIDE AGENCIES

Inmate/Parolee Signature: Alfred Sandoval    Date Submitted: FEB. 5TH 2007  CONTINUED;

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

**BYPASS**

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS**



Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

FEB 08 2007    FEB 16 2007
TO CDW    2ND APPEALS

CONTINUED : 602 Log#_____     PAGE# 2

THE ENTRANCE of THE VISITING ROOM, ONE of THE ESCORTING C/O's SAID "Hold up".
I NOTICED NUMEROUS MEMBERS of THE GREEN WALL STANDING ALONG BOTH WALLS &
MORE C/O's COMING OUT of A SIDE ENTRANCE. I STATED "DAMN THE GREEN WALL
is fully REPRESENTED" BECAUSE THERE WERE C/O's FROM OTHER STATE FACILITIES.
A BALD SGT. I BELIEVED TO BE SGT. BEESON, GOT A HOLD of MY LEFT ELBOW
& HE SAID "COME ON" & PROCEEDED TO TURN ME TOWARDS THE WALL. I STATED
"I'm NOT TAKING ANY MORE PICTURES" AT WHICH TIME I WAS PHYSICALLY ATTACKED
PUNCHED & GRABBED & SLAMMED TO THE GROUND. I SAW C/O COUNTESS SLUG ME IN
THE FACE & MADE MY HEAD BOUNCE off THE CONCRETE. THE SGT. THEN PUSHED
MY HEAD BACK DOWN UNTIL ANOTHER C/O PUT HIS KNEE ON MY HEAD. THE SGT.
RIPPED off MY T-SHIRT & ORDERED "TAKE THE PICTURES". I felt A PIECE of
PAPER BE PLACED ON MY CHEST & HEARD FAINT CLICKS of A CAMARA. AFTER WHICH THE
SGT ORDERED THE C/O KNEELING ON MY HEAD TO MOVE SO THEY COULD "SEE MY FACE".
I felt A POP IN MY NECK, KNEE & SHARP PAIN IN MY LOWER BACK. AFTER LEG
IRONS WERE PLACED ON ME, I WAS RETURNED TO D-2. MEDICAL STAFF WAS
CALLED & THE M.T.A ORDERED A NECK BRACE & FLAT GURNEY. I WAS TAKEN
TO D-CLINIC, THAN THE INFIRMARY & THEN TRANSPORTED TO SUTTER COAST
HOSPITAL FOR X-RAY's & CAT SCAN(CT') FOR MY NECK & SHOULDER
INJURIES. I LATER SHOWED LT. PEDEROSO THE LUMPS & CUTS ON MY HEAD.
IT IS MY BELIEF THAT THIS ATTACK WAS PLANNED BY GREEN WALL MEMBERS of
THE P.B.S.P I.G.I IN RETALIATION FOR FILING 602 APPEALS & EMPLOYEE MIS-
CONDUCT COMPLAINTS EXPOSING THE ILLEGAL ACTS & HARASSMENT BY GREEN
WALL MEMBERS. THE ATTACK WAS COMMITTED OUT of VIEW of PRISONERS (IN
A BLIND AREA); ONCE THE ATTACK BEGAN, NO ALARMS WERE ACTIVATED AS
PER C.D.C.R POLICY.

ACTION
REQUESTED: THAT WILL BE PROVIDED WITH THE RESULTS of THE SEARCHES of 2/2/07.; IN ADDITION THAT
ALL THE C/O's INVOLVED IN THE ATTACK BE INVESTIGATED UNDER C.C.R 15 § 3391. EMPLOYEE
MISCONDUCT. AND THAT I BE COMPENSATED WITH PUNITIVE & COMPENSATORY DAMAGES
FOR MY MENTAL ANGUISH DUE TO THE SEVERE PHYSICAL INJURIES TO ME. AND FINALLY
THAT NO RETALIATION BE TAKEN AGAINST ME FOR THIS COMPLAINT.

DATED: FEB, 5TH 2007

s/ Alfred Sandoval
ALFRED SANDOVAL
D# 61000

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **JUL 0 8 2007**

In re:    Sandoval, D-61000
          Pelican Bay State Prison
          P.O. Box 7000
          Crescent City, CA 95531-7000

          IAB Case No.: 0614001          Local Log No.: PBSP 07-00866

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner C. Hall, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position on February 2, 2007, he was assaulted by correctional officers(CO). The appellant alleges during the assault, his neck was twisted and "popped"; and, he suffered from knee and back pain. The appellant claims he was transported to Sutter Coast Hospital for emergency attention and was prescribed medication for a severe neck strain. The appellant claims he now has headaches and his neck injury has been ignored by health care staff in an attempt to cover up the assault by the officers, which the appellant claims are members of the Green Wall CO Prison Gang. The appellant is requesting adequate medical attention, medications and treatment for the injuries suffered during the staff assault.

**II    SECOND LEVEL'S DECISION:** It is the institution's position the appellant was advised he was scheduled for an appointment with his primary care physician (PCP); however, contends this is staff's attempt to allow his bruises and injuries to heal. The appellant was evaluated and treated by Family Nurse Practitioner (FNP) Malo-Clines on February 2, 2007, the day of the alleged assault. On February 23, 2007, the appellant was examined by FNP Risenhoover, who observes the appellant's gait as normal and he had good muscle development, normal range-of-motion, no sciatic nerve tenderness and was able to toe/heel walk.    The appellant complained of a bruised knee; however, indicated he wanted no medication as he is an addict and on too many medications already. The appellant was directed by FNP Risenhoover to roll up a towel to support his neck while sleeping; and, encouraged the appellant to avoid strenuous exercise. On March 14, 2007, the appellant was examined by his PCP and claimed he still had knee tenderness and discomfort and had popping in his neck. The appellant informed the PCP he was using ice packs and taking medications.    Upon further examination, it was noted the appellant had good muscular development with normal gait, and a knee sleeve was not medically indicated. The appellant is receiving the appropriate care and follow-up for his injuries.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A. FINDINGS:** The appellant contends he was involved in a staff assault on February 2, 2007, that resulted in injuries to his neck, knees and back. The appellant was examined the day of the alleged assault and received the intervention deemed medically necessary by his PCP. Although the appellant claims health care staff ignored his health care needs as a cover up to the alleged assault, these allegations are subjective as he did not provide supporting documentation to substantiate his claim. The appellant failed to address the circumstances of his alleged staff assault; however, he is advised according to the California Code of Regulations, Title 15, Section (CCR) 3268, it is the policy of the CDCR to accomplish the custodial and correctional functions with minimal reliance on the use of force. In addition, any force that an objective, trained and competent correctional employee, faced with similar facts and circumstances, would consider necessary and reasonable to subdue an attacker, overcome resistance, effect custody, or gain compliance with a lawful order will be utilized.    There is no Green Wall CO Prison Gang; nor, was there a cover up by health care staff to cover up any such assault. The appellant's allegations are incorrect and inappropriate.    In addition, the appellant is reminded that CCR section 3354 establishes that only qualified medical personnel shall be permitted to diagnose illness

SANDOVAL, D-61000 ·        ·
CASE NO. 0614001
PAGE 2

and/or other conditions, and prescribe medical treatment for inmates. It is not appropriate to self-diagnose medical problems and expect a physician to implement the appellant's recommendation for a course of medical treatment. In this particular matter, the appellant's contention that he has not received adequate medical care is refuted by the medical records and professional health care staff familiar with the appellant's medical history. As a result, intervention at the Director's Level of Review is not warranted.

**B. BASIS FOR THE DECISION:**
CCR: 3043.5, 3268, 3350, 3350.1, 3352, 3354

**C. ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, PBSP
       Health Care Manager, PBSP
       Appeals Coordinator, PBSP
       Medical Appeals Analyst, PBSP

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

PELICAN BAY STATE PRISON

Location: Institution/Parole Region   Log No.   Category
PBSP   1. TA-18-2007-00319   1.
2. PBSP-D-07-02866   2. *claims he has not been provided adequate med care*

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| SANDOVAL Alfred | D#61000 | | D2 105 |

A. Describe Problem: DENIAL of MEDICAL CARE: ON FEB 2nd 2007 I WAS ASSAULTED by CORRECTIONAL OFFICERS, during THE ASSAULT my NECK WAS TWISTED & POPPED ALONG WITH SHARP BACK & KNEE PAIN. I WAS TAKEN TO SUTTER COAST HOSPITAL WHERE THE DR. ORDERED PAIN MEDICATION FOR A SEVERE NECK STRAIN. SINCE THEN I HAVE REQUESTED MEDICAL ATTENTION FOR HEADACHES & SEVERE NECK PAIN All HAVE BEEN IGNORED IN ORDER TO HELP COVER UP THE ASSAULT by STAFF, WHICH ARE All MEMBERS OF THE GREEN WALL CORRECTIONAL OFFICERS PRISON GANG.

If you need more space, attach one additional sheet.

B. Action Requested: THAT I RECEIVE ADEQUATE MEDICAL CARE & MEDICATION & TREATMENT FOR THE INJURIES SUFFERED IN THE STAFF ASSAULT.

Inmate/Parolee Signature: Alfred Sandoval    Date Submitted: 2/15/07

C. INFORMAL LEVEL (Date Received: 02/20/07 )

Staff Response: PARTIALLY GRANTED - YOU ARE SCHEDULED WITH THE CLINIC PRIMARY CARE PROVIDER IN THE NEAR FUTURE.

RECEIVED APR 26 2007 BRANCH APPEALS

Staff Signature: Flowers, R.N. / J. FLOWERS    Date Returned to Inmate: 02/20/07

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

DISSATISFIED: THE FACT THAT I'm Scheduled ONly MEANS THE BRUISES CUTS & SCRATCHES WILL HAVE HEALED leaving NO PROOF OF THE ASSAULT, I HAVE NECK PAIN, BACK PAIN WHICH WERE CAUSED by C/O's & I STILL CAN NOT GET ADEQUATE MEDICAL CARE

Signature: Alfred Sandoval    Date Submitted: 2/20/07

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

1ST
FEB 22 2007

2nd
MAR 13 2007

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: SEP 2 9 2007

In re:   Alfred Sandoval, D61000
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0701490          Local Log No.: PBSP-07-00717

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner C. Hall, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position he received inadequate health care on May 8, 2007. The appellant claims he went to sick call for a neck injury he suffered during an alleged assault by a Correctional Officer (CO). Family Nurse Practitioner Risenhoover previously recommended the appellant complete Physical Therapy (PT), which he claims was arbitrarily and capriciously rejected by the Chief Medical Officer (CMO) without reviewing his x-rays and computerized axial tomography (CAT) scans, completed at the Sutter Coast Hospital. The appellant is requesting to be seen by an orthopedic specialist, to have PT and any other treatments recommended by the specialist.

**II   SECOND LEVEL'S DECISION:** It is the institution's position the appellant was informed his x-rays and CAT scan completed at Sutter Coast Hospital were within normal limits (WNL). The findings were reviewed by Dr. Sayre, CMO, who indicated no further intervention was indicated. In March 2007, the Medical Authorization Review Committee (MAR) denied PT; however, the appellant was advised to avoid strenuous exercise and to support his neck with a rolled blanket when lying down. On June 18, 2007, the appellant's primary care physician (PCP) presented the appellant's case to the MAR. The notes indicated the appellant had a normal examination and normal CAT scan of his head and neck. There were no positive objective findings and his symptoms did not match the anatomical findings. As a result, the MAR denied the request for an orthopedic consultation and PT submitted by his PCP.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.   FINDINGS:** The appellant contends he was allegedly assaulted by a CO and claims he suffered a neck injury. The appellant completed diagnostic studies on February 2, 2007, at Sutter Coast Hospital, including radiographs and a CAT scan of the head and cervical spine, which were WNL. As a result, the MAR denied PT and an orthopedic consultation as they were deemed medically unnecessary. The appellant is reminded the California Code of Regulations, Title 15, Section (CCR) 3354 establishes that only qualified medical personnel shall be permitted to diagnose illness and/or other conditions, and prescribe medical treatment for inmates. It is not appropriate to self-diagnose medical problems and expect a physician to implement the appellant's recommendation for a course of medical treatment. In this particular matter, the appellant's contention that he has not received adequate medical care is refuted by the medical records and professional health care staff familiar with the appellant's medical history. In addition, there is no supporting documentation that supports the appellant's allegations that health care staff falsified medical information or are denying him adequate health care. After review, there is no compelling evidence that warrants intervention at the Director's Level of Review.

**B.   BASIS FOR THE DECISION:**
CCR: 3350, 3350.1, 3350.2, 3354

**C.   ORDER:** No changes or modifications are required by the Institution.

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT

**INMATE/PAROLEE APPEAL FORM**

Location: Institution/Parole Region    Log No.    Category

1. **PBSP**    1. IA-18-2007-00717    (8)/vo

2. _____    2. _____    wants to see ortho - spec

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

PT and TX as Rx by

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| SANDOVAL ALFRED | D#61000 | | D2 105 spec |

**A. Describe Problem:** INADEQUETE MEDICAL CARE. ON 5/8/07 I WENT TO SICK CALL FOR A NECK INJURY SUFFERED DURING AN ASSAULT BY C/O's. FNP S. RISENHOOVER HAS PREVIOUSLY RECOMMED THAT I GET PHYSICAL THERAPY WHICH WAS ARBITRARILY & CAPRICIOUSLY REJECTED BY THE C.M.O WITH OUT EVER REVIEWING THE NUMEROUS X-RAYS & C.T. SCANS WHICH WERE TAKEN AT SUTTER COAST HOSPITAL THEREBY VIOLATING C.C.R. 15 SEC. 3350. (a) (b), (1) (4) & (5)

If you need more space, attach one additional sheet.

**B. Action Requested:** THAT I BE SEEN BY THE ORTHO SPECIALIST, GET PHYSICAL THERAPY & ANY OTHER TREATMENT RECOMMENDED BY SPECIALIST OR MEDICATION

RECEIVED JUN 12 2007 APPEALS BRANCH

Inmate/Parolee Signature: _Alfred Sandoval_    Date Submitted: 5/15/07

**C. INFORMAL LEVEL (Date Received:** 05/17/07 )

**Staff Response:** ALL OF YOUR X-RAYS & CT OF 02/02/07 FROM SCH WERE NEGATIVE. THESE WERE REVIEWED BY THE CHIEF MEDICAL OFFICER, DR. SAYRE. THUS THE DECISION STANDS AS THERE IS NO MEDICAL INDICATION. ☞ DENIED ☜.

Staff Signature: _Flowers, R.N./J. FLOWERS_    Date Returned to Inmate: 05/17/07

**D. FORMAL LEVEL**

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

DISSATISFIED. #1 R.N FLOWERS IS THE CM O DR. SAYRE SUBORDINATE SO HE CANNOT RESPOND TO COMPLAINT. #2 THE FACT THAT DR AT SUTTER COAST HOSPITAL ORDERED PAIN MEDICATION FOR NECK INJURY, WHICH WAS RENEWED BY P.B.S.P. MEDICAL DEMONSTRATES THAT I did IN FACT SUFFER NECK INJURIES. I HAVE A CONSTANT BURNING dull ACHE IN THE NECK WHICH IS INDICATIVE OF NERVE dAMAGE &

Signature: _Alfred Sandoval_    Date Submitted: 5/18/07

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

* ALSO WHEN MY NECK POPS, I lose FEELING IN MY left HAND.

1ST MAY 21 2007    2nd JUN 26 2007

# EXHIBIT COVER PAGE

<div style="border:1px solid">B</div>

EXHIBIT

Description of this Exhibit:

Number of pages to this Exhibit: _𝒹𝒹_ pages.

JURISDICTION: (Check only one)

- ☐ Municipal Court
- ☐ Superior Court
- ☐ Appellate Court
- ☐ State Supreme Court
- ☒ United States District Court
- ☐ State Circuit Court
- ☐ United States Supreme Court
- ☐ Grand Jury

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:   **DEC 0 8** 2007

In re:   Alfred Sandoval, D61000
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0707555        Local Log No.: PBSP-07-01299

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Pimentel, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that the Pelican Bay State Prison (PBSP) Institution Gang Investigator (IGI) constitutes a "Green Wall" and that the IGI are retaliating against him by withholding his mail. The appellant contends that the IGI inappropriately confiscated his mail and have willfully delayed delivering his mail. The appellant requests that the IGI staff members be investigated and reprimanded, that all of his mail be issued to him, and that the IGI stop retaliating against him.

**II   SECOND LEVEL'S DECISION:** The Second Level of Review (SLR) noted that the appellant is a validated member of the Mexican Mafia and that the appellant was issued a CDC Form 128-B, General Chrono that detailed the mail which was withheld. The SLR noted that the appellant received a catalog which was intended for inmates in Privilege Group (PG) "A" or "B," but the appellant is in PG "D" and is not authorized to possess the catalog. The SLR noted that the appellant has not presented any evidence to support his assertion that the IGI are retaliating against him. The SLR denied the appeal.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

    **A.   FINDINGS:** The documentation and arguments are persuasive that the appellant has failed to support his appeal issues with sufficient evidence or facts to warrant a modification of the SLR. The reviewers advised the appellant that he was not authorized to possess the catalog. The California Code of Regulations, Title 15, Section (CCR) 3084.1 (a) states "Any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." The Director's Level of Review (DLR) finds that the appellant has not presented any evidence that the PBSP IGI enforcement of the mail regulations and procedures has had any adverse effect upon his confinement. Therefore no relief is provided at the DLR.

    **B.   BASIS FOR THE DECISION:**
CCR: 3000, 3001, 3044, 3084.1, 3270, 3380

    **C.   ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:   Warden, PBSP
Appeals Coordinator, PBSP



**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location:  Institution/Parole Region

1.  **PBSP**  Log No.  D-Y-07-01299  Category  3/7

PELICAN BAY STATE PRISON

2.

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| SANDOVAL, Alfred | D#61000 | | D2 105 |

A. Describe Problem: RETALIATION; Employee misconduct per CCR 15§ 3391(a)(d). Today 6-1-07, I received a 128-B chrono 'stopped mail notification' dated 5/18/07 by IGI % J Puente in retaliation for filing formal excessive force complaints against numerous members of the GREEN WALL % Prison gang, Retaliation is a well documented GREEN WALL tactic to intimidate prisoners & coerce their silence. The 128-B of 5/18/07 cites "Publication coming from 3rd party" & "Retained by ISU for investigation/potential disciplinary or court proceedings" giving the impression of some type of illegal activity where there is none. The GREEN WALL members of P.B.S.P IGI UNIT are Knowingly falsifying this information in retaliation & violation of the information practice act of 1977 § 1798. 18, 32,35, 37 As of this date, the sender has not been notified

If you need more space, attach one additional sheet.

B. Action Requested: (1) This be filed as a CITIZENS Complaint & investigated as such. (3) THAT an independent investigation be conducted by internal affairs. (3) THAT THE 128-B. chrono be removed from my C-file & THAT I GET THE MAIL. (4) THAT THE Retaliation & intimidation by GREEN WALL members cease

Inmate/Parolee Signature: Alfred Sandoval     Date Submitted: 6-1-07

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

BYPASS

Staff Signature: _____     Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: _____     Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed     CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

JUN 04 2007 -  JUN 07 2007
1 >  2ND IGI

*(handwritten top right margin):* GREEN WALL, IGI CREATING UN-REASONABLE MAIL DELAY WITHOUT PROVIDING NOTIFICATION  3/3

# INMATE/PAROLEE APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region   Log No.   Category
1. **PBSP**   D-07-01271   3/3
2. _____   2. _____

**PELICAN BAY STATE PRISON**

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Sandoval, Alfred | D#61000 | | D2 105 |

**A. Describe Problem:** Retaliation! Employee Misconduct by Green Wall members of the IGI unit: My mail Has been Routinely stolen! with held by IGI members in Retaliation for exposing the illegal acts being Committed Under Color of Authority by Green wall members, in violation of C.C.R. 15 §3391(a) + § 3084.1(d). "No Reprisal shall be taken against an inmate for filing an appeal" during a visit with my wife, she informed me that she had not Received any mail from me in 3 weeks, yet I was sent + Routinely send mail Sunday – Thursday every week except for Holidays.

*(stamp, vertical right margin):* RECEIVED ___ 2007

If you need more space, attach one additional sheet.

**B. Action Requested:** ① That the illegal acts by Green wall members of the IGI unit Cease. ② That I Receive All my mail or be properly Notified if + why the mail is disapproved

Inmate/Parolee Signature: *Alfred Sandoval*   Date Submitted: 5-31-07

**C. INFORMAL LEVEL** (Date Received: _____ )

Staff Response: _____

**BYPASS**

Staff Signature: _____   Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS**

Signature: _____   Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

JUN 0 6 2007

2ND IGI

602 Response for Log# D-07-01271
D-07-01299

(H)

DIRECTOR LEVEL REVIEW REQUEST.

REASSERTING THE DISTINCT CLAIMS RAISED IN BOTH 602 APPEALS &
IN ADDITION. 2ND LEVEL, ALTHOUGH CLAIMS TO HAVE THOROUGHLY REVIEWED
BOTH APPEALS & COMBINED BOTH DUE TO RELATING TO THE SAME ISSUE.
THE FACT OF THE MATTER IS 2ND LEVEL FAILED TO THOROUGHLY REVIEW BOTH 602's,
ALTHOUGH BOTH 602's CITE RETALIATION. THE "CORE" OF EACH 602 ARE DISTINCT
FROM ONE ANOTHER BASED ON THE FOLLOWING ① 602# D-07-01271 DISTINCTLY
CLAIMS MY MAIL BEING STOLEN AND/OR WITHHELD ② 602# D-07-1299
SPECIFICALLY GRIEVENCES "GREEN WALL" MEMBER OR ASSOCIATE % J. PUENTE
OF THE I.G.I UNIT FOR PLACING FALSE INFORMATION IN MY PRISON FILE,
VIOLATIVE OF CIVIL CODE ₹ 1798 ET. AL. " THE INFORMATION PRACTICE ACT
OF 1977"

WHATS MORE, EVEN THE RELIEF SOUGHT DIFFER FROM 602 TO 602.
CLEARLY ATTENDANT OFFICIALS ARE ROUTINELY EITHER FAILING TO FOLLOW REGULATIONS
PERTAINING TO APPEALS OR SIMPLY INVENT A BASIS FOR NOT ADDRESSING
CLAIMS.

ADDITIONAL RELIEF

THAT BOTH 602's BE ADDRESSED INDEPENDANTLY OF EACH OTHER
BASED ON THEIR "CORE" CLAIMS

NAME: SANDOVAL _____ CDC#: D61000 ___ HOUSING : D2-105 ___ CDC 128-B

On _5/18/2007_____ correspondence was stopped for the above-named inmate.  The mailing is described as follows:

☐ OUTGOING CORRESPONDENCE/ ADDRESSED TO:     ☒ INCOMING  CORRESPONDENCE / FROM:

M.E. HADLEY
1405 ABRAM LANE
EUREKA, CA. 95503

The correspondence was disapproved in accordance with Section 3136(a) as it pertains to 3006(c):
☒ It violates regulations or local procedures:
   ☐ Promotes-gang activities [Title 15, 3023 (a)]
   ☐ Unauthorized business dealings [3024 (a)]
   ☐ Unauthorized inmate to inmate correspondence [Title 15, 3139]
   ☐ Unauthorized inmate to parolee / probationer correspondence [Title 15, 3140]
   ☐ Third party correspondence [OP 205, Attachment 8, #32]
   ☐ Use of fictitious name or address [U.S.C.S. Title 18, Section 1342, OP 205]
   ☒ Other (describe): OP 205 ATTACHMENT 8 #34, PUBLICATIONS COMING FROM A THIRD PARTY.
☐ It incites physical harm to a person or group of persons
☐ It incites disruption of the order in a facility, such as riot, escape, strike, etc.
☐ It contains coded messages
☐ It contains obscene or sexually explicit material, or portrays nudity
☐ It is deemed to be a threat to legitimate penalogical interests.
☐ It contains material or literature which would pose a threat to institutional security or the safety of other persons if allowed to be possessed by inmates.
Additional Information: _____

The disposition of the letter is as follows:
☒ Retained by Investigative Services Unit for investigation / potential disciplinary or court proceedings.
☐ Returned to sender in accordance with Section 3147 (a) (5) (B) or 3147 (a) (6).
☐ Placed in Central File in accordance with Title 15, Section 3147 (a) (7).

Reporting Employee:                              Correspondence Disapproval Authorized By (Captain level or above):

J. PUENTE                                        W.V. ANTHONY
Correctional Officer                             Correctional Captain (A)
Institutional Gang Investigations                Investigative Services Unit

Correspondents are personally responsible for the content of each item of mail they send into or out of a correctional facility, Any violation of laws governing mail will be referred to postal authorities and to appropriate criminal authorities. Violations of law, the policies and regulations or of approved facility mail procedures may result in the temporary suspension or denial of correspondence between the persons involved. [Section 3132 (a)]. Inmates may appeal the stopped mail utilizing the departmental appeal process.

cc:    C-File
       AWC File
       Investigative Services Unit
       Inmate
       Sender (incoming correspondence only)

DATE:   5/18/2007          **STOPPED MAIL NOTIFICATION**          GENERAL CHRONO

| PELICAN BAY STATE PRISON |
| SECOND LEVEL REVIEW |

DATE:   **FEB 2 8 2007**

SANDOVAL, D61000
Pelican Bay State Prison
Security Housing Unit
Facility D2-105

RE:   WARDEN'S LEVEL DECISION                     APPEAL: **CANCELLED**
      APPEAL LOG NO. PBSP-D07-00073          ISSUE:   MAIL

This matter was reviewed by Robert A. Horel, Warden at Pelican Bay State Prison. Correctional
Sergeant D. Barneburg attempted to conduct the Appeal interview at the Second Level of Appeal
Review on February 21, 2007.

All submitted documentation and supporting arguments have been considered, including the
interview conducted at the Second Level of Review. Additionally, a thorough investigation has
been conducted into the claim presented by the inmate and the documentation evaluated in
accordance with PBSP'S institutional procedures and the California Department of Corrections and
Rehabilitation policies.

## ISSUES

Inmate SANDOVAL stated in Section A of this Appeal that he received a CDC 128B, Stopped
Mail Notification, from Institutional Gang Investigations Unit (IGI) citing an incoming letter was
stopped for gang activity and third party correspondence. Inmate SANDOVAL stated that IGI staff
did not articulate any facts in the mailing to justify the mail denial.

Inmate SANDOVAL requested that IGI cease issuing CDC 128Bs, notify correspondents that they
are under investigation, and to clearly articulate the gang activity in the letter.

The Informal Level and First Level of this Appeal have been bypassed.

Sergeant Barneburg attempted to interview inmate SANDOVAL at the Second Level of Review.
Inmate SANDOVAL refused to talk to Sergeant Barneburg stating that he had a current Internal
Affairs complaint against Sergeant Barneburg and that Sergeant Barneburg was a member of "The
Green Wall" and would deny the Appeal no matter what the evidence showed.

## FINDINGS

### I

The mailing in question bore the return address of *"Daniel Villar, 11742 Hallwood Drive, El
Monte, CA, 91732."* Inmate SANDOVAL requested to have the sender of any denied mailing
notified of the mail retention by IGI. This policy is already in effect, and Mr. Villar was mailed a
copy of this denial at the time it was generated.

Due to inmate SANDOVAL's refusal to be interviewed, Sergeant Barneburg could not clarify
several portions of the letter indicating gang activity and third party mail. As such, the letter will
continue to be retained by IGI pending investigation and the eventual outcome of this Appeal.

Supplement Page 2
SANDOVAL, D61000
Appeal # PBSP-D07-00073

## DETERMINATION OF ISSUE

The Second Level Reviewer could not proceed with the processing of this Appeal when an attempt was made to clarify issues with the mailing. Inmate SANDOVAL refused to be interviewed by the Second Level reviewer. Based on inmate SANDOVAL's refusal to cooperate during the Second Level interview, under the authority of the California Code of Regulations, Title 15, Section 3084.4 (d), this Appeal is being **CANCELLED** and referred to the Appeals Coordinator for disposition.

## MODIFICATION ORDER

No modification of this decision or action taken is required.

ROBERT A. HOREL
Warden

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location:  Institution/Parole Region          Log No.                    Category
1.  **PBSP**                        1. D07-00073        3/7

2. _____        2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME Sandoval, Alfred | NUMBER D#61000 | ASSIGNMENT **UNIT D-2** | UNIT/ROOM NUMBER D2 105 |

A. Describe Problem: Appealing Disapproved Correspondance + issuance of 128 B 12/12/06. On the following Basis: 1.) IGI (ountess ' Capt. Mc Guyer have failed to Reference any ARticulable Facts indicative of Promoting Gang Activity Per 3 3023 (a) or that the Author of letter is Circumventing Mail Procedures Per O.P. 205: 8 § 31 (The Address is Under Correspondents Spouses Name) 2.) By Placing letter Under Investigation Officials are effectively Placing its Author Under Investigation, A Tax Paying Citizen. The danger of this Action is not Only that the Correspondent is not Notified of this Investigation Coupled with Referencing the Basis. But Because the IGI Unit Assumes illegal Activities, the Correspondents Name will be Entered into the (WSIN) Data Base, not to mention into a (Cont.)

If you need more space, attach one additional sheet.

B. Action Requested: Cease Issuing 128 B's over CDC 1819 mail disapproval notices; in Keeping with Due Process Notify Correspondents of Being Under Investigation + the Basis For; Define what is Actually Prison Gang Activity when Relied on to Disapprove mail.

Inmate/Parolee Signature: Alfred Sandoval          Date Submitted: 12/19/06

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

**BYPASS?**

Staff Signature: _____          Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS?**

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim                    CDC Appeal Number:

DEC 2 7 2006          JAN 1 6 2007
18          2ND IGI

602 LOG #_____

CONT:

(A.)

NATION-WIDE INFORMATION CENTER. THUS SUBJECTING A CITIZEN TO AN UNFOUNDED BASIS FOR FUTURE SCRUTINY AT THE WHIM OF STATE OR FEDERAL ANGENCIES, AND ABSENT THE DUE PROCESS PROTECTIONS SUCH A CITIZEN IS ENTITLED TO. ON A LOCALIZED LEVEL THIS INVESTIGATION CAN DISCOURAGE OR COERCE OUTSIDE CORRESPONDENTS FROM WANTING TO COMMUNICATE FOR FEAR OF UNWARRANTED INVASION OF PRIVACY, AND ULTIMATELY DENYING ME MY RIGHT TO COMMUNICATE WITH THE OUTSIDE COMMUNITY TER. 3 3130; P.C. § 2601(b)(c)(d)(e). 3.) THE SOLE PURPOSE OF ISSUING THIS 128-B OVER THE STANDARD C.D.C. 1819 IS BECAUSE THE I G I UNITS INTENTIONS ARE TO GENERATE MORE DOCUMENTATION TO PLACE IN PRISON FILE IN SUPPORT OF FUTURE DETERMINATIONS OF PRISON GANG ACTIVITY IN ORDER TO RETAIN ME IN S.H.U. THESE 128 B's ARE EFFECTIVELY GENERATING INADEQUATE MISLEADING AND ULTIMATELY FALSE INFORMATION.

s/ Alfred Sandoval

NAME: SANDOVAL, ALFRED _____ CDC#: D-61000 ____ HOUSING ____ D2-105 ____ **CDC 128-B**

On __12/12/2006_____ correspondence was stopped for the above-named inmate. The mailing is described as follows:

☐ OUTGOING CORRESPONDENCE/ ADDRESSED TO:  ☒ INCOMING CORRESPONDENCE / FROM:

DANIEL VILLAR
11742 HALLWOOD DR
EL MONTE, CA, 91732

The correspondence was disapproved in accordance with Section 3136(a) as it pertains to 3006(c):
☒ It violates regulations or local procedures:
  ☒ Promotes gang activities [Title 15, 3023 (a)]
  ☐ Unauthorized business dealings [3024 (a)]
  ☐ Unauthorized inmate to inmate correspondence [Title 15, 3139]
  ☐ Unauthorized inmate to parolee / probationer correspondence [Title 15, 3140]
  ☒ Third party correspondence [OP 205, Attachment 8, #32]
  ☐ Use of fictitious name or address [U.S.C.S. Title 18, Section 1342, OP 205]
  ☒ Other (describe): OP 205 attachment 8, section 31, circumventing mail procedures

☐ It incites physical harm to a person or group of persons
☐ It incites disruption of the order in a facility, such as riot, escape, strike, etc.
☐ It contains coded messages
☐ It contains obscene or sexually explicit material, or portrays nudity
☐ It is deemed to be a threat to legitimate penalogical interests.
☐ It contains material or literature which would pose a threat to institutional security or the safety of other persons if allowed to be possessed by inmates.
Additional Information: _____
The disposition of the letter is as follows:
☒ Retained by Investigative Services Unit for investigation / potential disciplinary or court proceedings.
☐ Returned to sender in accordance with Section 3147 (a) (5) (B) or 3147 (a) (6).
☒ Placed in Central File in accordance with Title 15, Section 3147 (a) (7).

Reporting Employee:                          Correspondence Disapproval Authorized By (Captain level or above):

C. COUNTESS                                  KURT L. McGUYER
Correctional Officer                         Correctional Captain
Institutional Gang Investigations            Investigative Services Unit

Correspondents are personally responsible for the content of each item of mail they send into or out of a correctional facility, Any violation of laws governing mail will be referred to postal authorities and to appropriate criminal authorities. Violations of law, the policies and regulations or of approved facility mail procedures may result in the temporary suspension or denial of correspondence between the persons involved. [Section 3132 (a)]. Inmates may appeal the stopped mail utilizing the departmental appeal process.

cc:    C-File
       AWC File
       Investigative Services Unit
       Inmate
       Sender (incoming correspondence only)

DATE:   12/12/2006        **STOPPED MAIL NOTIFICATION**        GENERAL CHRONO

| PELICAN BAY STATE PRISON |
| --- |
| SECOND LEVEL REVIEW |

DATE: FEB 2 1 2007

SANDOVAL, D-61000
Pelican Bay State Prison
Security Housing Unit
Facility D2-105

RE:    WARDEN'S LEVEL DECISION                    APPEAL: **CANCELLED**
       APPEAL LOG NO. PBSP-D07-00130         ISSUE:    MAIL

This matter was reviewed by Robert A. Horel, Warden at Pelican Bay State Prison. J. Beeson, Correctional Sergeant, conducted the Appeal interview at the Second Level of Appeal Review on February 14, 2007.

All submitted documentation and supporting arguments have been considered, including the interview conducted at the Second Level of Review. Additionally, a thorough investigation has been conducted into the claim presented by the inmate and the documentation evaluated in accordance with PBSP'S institutional procedures and the California Department of Corrections and Rehabilitation policies.

## ISSUES

SANDOVAL states in Section A of this Appeal that he received a CDC 128B, Stopped Mail Notification, citing the mail was stopped for a plastic cover. SANDOVAL states the card was retained by the "Goon Squad C/O Countess." SANDOVAL goes on to say these types of illegal acts are common with "C/O members of the Green Wall IGI staff."

SANDOVAL requests in Section B of his Appeal: 1) that an investigation be conducted into the illegal acts of the green wall IGI staff; and 2) that he be allowed to send the card home and have it removed from his Central File.

The Informal Level and First Level of this Appeal have been bypassed.

Sergeant Beeson interviewed SANDOVAL at the Second Level of Review. SANDOVAL stated he would refuse to talk to Sergeant Beeson and had nothing further to add.

## FINDINGS

I

The California Code of Regulations (CCR), Title 15, Section 3084.4.(c) States in part: *"Appeal System Abuse. (c) Excessive verbiage. Appeals in which the grievance or problem cannot be understood or is obscured by pointless verbiage or voluminous unrelated documentation shall be rejected, except as provided in sections 3084.1(b) and 3084.3(b).* SANDOVAL's ambiguous reference to the Institutional Gang Investigations Unit (IGI) as "Goon Squad" and "Green Wall" is pointless and unrelated verbiage necessary to process this appeal. The CCR, Title 15, Section 3084.4 (d) states: *"Lack of cooperation. An appellant's refusal to be interviewed or cooperate with the reviewer shall result in cancellation of the appeal."* SANDOVAL refused to be interview by the Second Level Reviewer.

Supplement Page 2
SANDOVAL, D-61000
Appeal # PBSP-D07-00130

## DETERMINATION OF ISSUE

The Second Level Reviewer could not proceed with the processing of this appeal when an attempt was made to clarify issues surrounding the unrelated documentation provide by SANDOVAL in his written portion of this appeal, SANDOVAL refused to be interviewed. Based on SANDOVAL's refusal to cooperate during the Second Level interview and his obscure name calling hand written into this appeal, under the authority of the CCR, Title 15, Section 3084.4 (c) and (d), this appeal is being referred back to the Appeals Coordinator for disposition.

## MODIFICATION ORDER

No modification of this decision or action taken is required.

ROBERT A. HOREL
Warden

NAME: SANDOVAL, ALFRED    CDC#: D-61000    HOUSING    D2-105    CDC 128-B

On 12/15/2006    correspondence was stopped for the above-named inmate.  The mailing is described as follows:

☐ OUTGOING CORRESPONDENCE/ ADDRESSED TO:    ☒ INCOMING  CORRESPONDENCE / FROM:

M. E. HADLEY

1405 ABRAM LANE

EUREKA, CA. 95503

The correspondence was disapproved in accordance with Section 3136(a) as it pertains to 3006(c):
☒ It violates regulations or local procedures:
    ☐ Promotes gang activities [Title 15, 3023 (a)]
    ☐ Unauthorized business dealings [3024 (a)]
    ☐ Unauthorized inmate to inmate correspondence [Title 15, 3139]
    ☐ Unauthorized inmate to parolee / probationer correspondence [Title 15, 3140]
    ☐ Third party correspondence [OP 205, Attachment 8, #32]
    ☐ Use of fictitious name or address [U.S.C.S. Title 18, Section 1342, OP 205]
    ☒ Other (describe): OP 205 attachment 8, # 9 plastic card cover, # 15 plastic cover glued on

☐ It incites physical harm to a person or group of persons
☐ It incites disruption of the order in a facility, such as riot, escape, strike, etc.
☐ It contains coded messages
☐ It contains obscene or sexually explicit material, or portrays nudity
☐ It is deemed to be a threat to legitimate penalogical interests.
☐ It contains material or literature which would pose a threat to institutional security or the safety of other persons if allowed to be possessed by inmates.
Additional Information:
The disposition of the letter is as follows:
☒ Retained by Investigative Services Unit for investigation / potential disciplinary or court proceedings.
☐ Returned to sender in accordance with Section 3147 (a) (5) (B) or 3147 (a) (6).
☒ Placed in Central File in accordance with Title 15, Section 3147 (a) (7).

Reporting Employee:    Correspondence Disapproval Authorized By (Captain level or above):

C. COUNTESS
Correctional Officer
Institutional Gang Investigations

KURT L. McGUYER
Correctional Captain
Investigative Services Unit

Correspondents are personally responsible for the content of each item of mail they send into or out of a correctional facility, Any violation of laws governing mail will be referred to postal authorities and to appropriate criminal authorities. Violations of law, the policies and regulations or of approved facility mail procedures may result in the temporary suspension or denial of correspondence between the persons involved. [Section 3132 (a)]. Inmates may appeal the stopped mail utilizing the departmental appeal process.

cc:    C-File
       AWC File
       Investigative Services Unit
       Inmate
       Sender (incoming correspondence only)

DATE:    12/15/2006    **STOPPED MAIL NOTIFICATION**    GENERAL CHRONO

# PELICAN BAY S.H.U.
# UNIT D-2

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region     Log No.     Category

1. **PBSP**     1. D-07-00130     3/7

2. _____     2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

UNIT D-2

| NAME SANDOVAL ALFRED | NUMBER D#61000 | ASSIGNMENT | UNIT/ROOM NUMBER DZ 105 |

A. Describe Problem: MAIL: ON 12/19/06 I RECEIVED A MAIL disAPPROVAL 128 B CiTiNG THE CARD WAS disAPPR-
oVED FOR "PLASTIC CARD CoVER" YET THE CARD WAS RETAINED BY GOON SQUAD C/o COUNTERS FOR "INVESTIGATION"
IN ORDER TO "CREATE" INFORMATION & MAKE iT APPEAR AS IF THERE IS SoME KiND of illegAL
ACTIViTY. THIS TYPE of illegAL ACTS ARE CommoN WiTH C/o MEMBERS of THE GREEN WALL IGI
STAFF

If you need more space, attach one additional sheet.

B. Action Requested: THAT AN INVESTIGATION BE ConducTED INTO THE illegAL ACTS of THE GREEN
WALL IGI STAFF. THAT I BE ALLoWED To SeND THE CARD HoME & HAVE iT
REMoVED FRoM my C-FiLE

Inmate/Parolee Signature: Alfred Sandoval     Date Submitted: 12/27/06

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

**BYPASS**

Staff Signature: _____     Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS**

Signature: _____     Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed     CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

JAN 0 2 2007     JAN 1 9 2007     PELICAN BAY S.H.U.
18     2ND IGI     UNIT D-2



STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **MAR 2 1 2007**

In re:    Sandoval, D-61000
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0608034          Local Log No.: PBSP 06-02663

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Pimentel, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that the Pelican Bay State Prison (PBSP) Institution Gang Investigator (IGI) staff inappropriately handled his mail. The appellant contends that he was provided four photographs of his family members from another inmate in an adjacent housing unit. The appellant asserts that due to the negligent processing of his mail by the PBSP IGI his photographs were placed in another inmate's mail. The appellant requests that he be compensated for other photographs that are missing, that the IGI staff handle his mail more consciously, and that he not be retaliated against.

**II    SECOND LEVEL'S DECISION:** The reviewer found that a comprehensive and thorough review of the appellant's appeal was conducted. The Second Level of Review (SLR) interviewed the inmate that the appellant claimed received his photographs and the inmate stated that he received four photographs more than two months ago from people he did not know. The other inmate believed that the photographs belonged to the appellant as his name was written on them so he gave them to an unknown Correctional Officer to give to the appellant. The SLR interviewed all involved staff on the day the appellant contends that his mail was mishandled and none had any knowledge of the appellant's claims. The SLR found that the appellant failed to present any evidence that IGI staff inappropriately handled his mail. The SLR denied the appeal.

**III  DIRECTOR'S LEVEL DECISION:** Appeal is denied.

> **A. FINDINGS:** The documentation and arguments are persuasive that the appellant has failed to support his appeal issues with sufficient evidence or facts to warrant a modification of the SLR. The institution has presented the appellant a thorough and comprehensive review of the appellant's issue and the Director's Level of Review (DLR) finds no basis to alter said decision. The DLR notes that the appellant has presented no evidence, other than his own unsupported statements, that the PBSP IGI mishandled his mail. The appellant was unable to provide the envelope that the photographs were missing from. On duty staff attested that the appellant never informed them that he was missing photographs or that another inmate was in possession of them. California Code of Regulations, Title 15, Section (CCR) 3084.1 (a) states "Any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." The DLR finds that the appellant has not presented any evidence that the PBSP IGI processing of mail has had any adverse effect upon his confinement. Therefore no relief is provided at the DLR.

> **B. BASIS FOR THE DECISION:**
> CCR: 3000, 3001, 3084.1, 3084.2, 3130, 3380

> **C. ORDER:** No changes or modifications are required by the institution.

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region **PBSP**

1. _____
2. _____

Log No. DO6-02663 (3)  Category 1

M 15 PLACED DIS-ATTOWED
PHOTOS IN MAIL - IGI

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| SANDOVAL, Alfred | D# 61000 | | D2 105 |

A. Describe Problem: MAIL: THIS box is PURSUANT TO (C.C.R.15 § 3137, 3137(c) + DiRecTed To IGI STAFF. ON 9-22-06 Via IGI CENSORSHIP I RECEIVED A LETTER from family, said LETTER ReferenCed 9 PHOTOS of GRANDKids + children, No PHOTOs WERE Enclosed . ON 9-25-06. I/m TALENTS (D2 209) mail CONTAINED 4 of THE MISSING PHOTOS, WHERE fore HE forwarded THEM To ME VIA Housing STAFF. IGI STAFF HAS exemplified GROSS dereliction of THEIR duTies PURSUANT To C.C.R.15 § 3130.: THE PRIVACY of CORRESPONDENCE.. SHAll NOT BE INVADED EXCEPT AS NECESSARY To MAINTAIN SECURITY" IT is my belief THAT IGI STAFF + ACTION is AN ULTERIOR MOTIVE To EXASPERATE individuals Housed in THE "H.S.G" CORRiDOR. WHAT is MORE, THERE ARE (5) FiVe OTHER OutsTANDing PHOTOS THAT my family SENT WHICH ARE STill MISSING .

If you need more space, attach one additional sheet.

B. Action Requested: THAT OUTSTANDing PHOTOS BE forwarded To ME OR THAT I BE CompENSATED FOR if THEY ARE lost. (2) THAT THE I GI STAFF BE MORE CONSCIENCE + Professional IN THEIR duTies So AS To PREVENT SUCH losses OR MisplACEMENTS. (3) THAT I NET BE RETALIATED AGAINST for Filing THis APPEAL

Inmate/Parolee Signature: Alfred Sandoval    Date Submitted: 9-26-06

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

**BYPASS**

Staff Signature: _____    Date Returned to Inmate: _____

RECEIVED JAN 11 2007 APPEALS BRANCH INITIAL

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS**

Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

SEP 2 9 2008
18

1 ST/IGI

. .

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA  94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:  **FEB 0 2 2007**

In re:  Sandoval, D-61000
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA  95531-7000

IAB Case No.: 0605733          Local Log No.: PBSP  06-02070

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Pimentel, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that staff at Pelican Bay State Prison (PBSP) inappropriately confiscated his letter that he received through the mail. The appellant contends that the PBSP Institution Gang Investigator (IGI) has made false assertions that the mail contained gang related information. The appellant requests that he be allowed to return the letter, and that the IGI adhere to the rules.

**II  SECOND LEVEL'S DECISION:** The reviewer found that a comprehensive and thorough review of the appellant's appeal was conducted. The Second Level of Review (SLR) noted that the appellant is a validated member of the Mexican Mafia (EME) and that the appellant has been identified as using the mail to support the communications of the EME. The SLR noted that the appellant was issued a CDC Form 1819, Notification of Disapproval-Mail/Packages/Publications for the denied correspondence that detailed the basis for denying the letter pursuant to California Code of Regulations, Title 15, Section (CCR) 3147. The SLR found that the mail addressed to the appellant was written by an inmate at the Los Angeles County Jail and was attempting to communicate gang information with the appellant. The IGI investigated the letter and determined that the inmate that wrote the correspondence used a third party mailing address so as to avoid detection by staff. The SLR noted that the letter violated the provisions of CCR 3139 as such inmate to inmate correspondence was not approved. The SLR found that the appellant was provided sufficient information relative to the denial of the correspondence.

**III DIRECTOR'S LEVEL DECISION:** Appeal is denied.

   **A.  FINDINGS:** The documentation and presented arguments are persuasive that the appellant has failed to support his appeal issue with sufficient evidence or facts to warrant a modification of the SLR. The SLR has presented a thorough and comprehensive review of the appellant's issue. The Director's Level of Review (DLR) notes that the appellant was issued CDC Form 1819, and provided a description of the material that meets the disapproval criteria of CCR 3006 and CCR 3139. The DLR notes that the institution's IGI investigated the letter and determined that it was sent by an inmate at another correctional institution in an attempt to communicate EME gang information with the appellant. The DLR notes that the appellant is attempting to compel the PBSP IGI to return the letter to the sender; the institution is not required to do this as it was sent using a third party address. The DLR notes that the IGIs are highly trained specialists that utilize various investigative techniques to infiltrate the various methods that gang members use to communicate with one another. The DLR notes that the appellant attempts to impugn the credibility of the IGI and the performance of their mission; but the only evidence he offers are his statements. Based upon the above factors, the appellant has failed to offer any new or compelling evidence that substantiates his claim; therefore, relief at the DLR is unwarranted.

   **B.  BASIS FOR THE DECISION:**
   California Penal Code Section: 5058
   CCR: 3000, 3001, 3006, 3023, 3130, 3131, 3133, 3136, 3137, 3139, 3147, 3270, 3380

   **C.  ORDER:** No changes or modifications are required by the institution.

STATE OF CALIFORNIA    02-105
CDC 1819 (Rev. 6/98)

I6I3    DEPARTMENT OF CORRECTIONS

## NOTIFICATION OF DISAPPROVAL - MAIL/PACKAGES/PUBLICATIONS

INMATE'S NAME
SANDOVAL

CDC NUMBER
D61000

## MAIL / PACKAGES SECTION (Complete for mail or package cases only)

[X] INCOMING MAIL/PACKAGE    [ ] OUTGOING MAIL/PACKAGE

LIST ITEM(S) WHICH MEET DISAPPROVAL CRITERIA
ENVELOPE, LETTER + PICTURES

DESCRIPTION OF MATERIAL THAT MEETS DISAPPROVAL CRITERIA, INCLUDE CCR, TITLE 15 SECTION
OP 205 ATT 8 # 1 GANG RELATED MATERIAL, ASKING ABOUT MALO
#31 CIRCUMVENTING MAIL PROCEDURES, #32 THIRD PARTY MAIL
3006 (c) (6) CONTRABAND

| DISPOSITION | SENDER INFORMATION | | |
|---|---|---|---|
| [X] HELD PENDING INVESTIGATION/APPEAL | FIRST NAME BRYANT + TERRI | MI | LAST NAME |
| [•] RETURNED TO SENDER____ (At Inmate's Expense)    (Date) | ADDRESS (NUMBER AND STREET) 1420 S SEVENTH ST | | |
| [ ] DESTROYED *(INMATE HAS FIFTEEN (15) DAYS, AFTER NOTIFICATION OF DISAPPROVAL HAS BEEN FORWARDED, TO LET STAFF KNOW THE CHOICE OF DISPOSAL, OTHERWISE MATERIAL WILL BE DESTROYED). | CITY ALHAMBRA | STATE CA | ZIP CODE 91803 |
| | I ACKNOWLEDGE RECEIPT OF THIS NOTIFICATION: (INMATE'S SIGNATURE) | | DATE SIGNED |

### AUTHORITY TO DISALLOW (Must be completed in all cases)

| PRINTED NAME OF WARDEN'S DESIGNEE | SIGNATURE OF WARDEN'S DESIGNEE | DATE SIGNED 8/1/06 | DATE FORWARDED TO INMATE 8·15·06 |
|---|---|---|---|

## PUBLICATIONS SECTION (Complete for publication cases only)

TITLE OF PUBLICATION (Include issue/date)    PUBLISHER    PAGE(S) WHICH MEET DISAPPROVAL CRITERIA

DESCRIPTION OF MATERIAL THAT MEETS DISAPPROVAL CRITERIA, INCLUDE CCR, TITLE 15 SECTION

| DISPOSITION | DESIGNEE INFORMATION | | |
|---|---|---|---|
| [ ] HELD PENDING INVESTIGATION/APPEAL | FIRST NAME | MI | LAST NAME |
| [ ] DESTROYED | ADDRESS (NUMBER AND STREET) | | |
| [ ] RETURNED TO OUTSIDE DESIGNEE AT INMATE'S EXPENSE ____ (Date) | CITY | STATE | ZIP CODE |
| **(INMATE HAS FIFTEEN (15) DAYS, AFTER NOTIFICATION OF DISAPPROVAL HAS BEEN FORWARDED, TO LET STAFF KNOW THE CHOICE OF DISPOSAL, OTHERWISE MATERIAL WILL BE DESTROYED). | I ACKNOWLEDGE RECEIPT OF THIS NOTIFICATION: (INMATE'S SIGNATURE) | | DATE SIGNED |

## AUTHORITY TO DISALLOW (Must be completed in all cases)

| FACILITY CAPTAIN'S PRINTED NAME | FACILITY CAPTAIN'S SIGNATURE | DATE SIGNED | DATE FORWARDED TO INMATE |
|---|---|---|---|

DISTRIBUTION:
ORIGINAL - MAILROOM
CANARY - INMATE
PINK - SENDER / DESIGNEE

* ALL APPEALS REGARDING MAIL/PACKAGES SHALL BE REFERRED TO THE **WARDEN'S DESIGNATED STAFF**

** ALL APPEALS REGARDING PUBLICATIONS SHALL BE REFERRED TO THE **FACILITY CAPTAIN.**

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region **PBSP**

Log No. DO6-O2O7O

Category 3 7

letter discussing gang activity

2. _____   2. _____



You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| SANDOVAL, Alfred | D#61000 | | D2 105 |

A. Describe Problem: Employee misconduct: on 8-16-06 I received a CDC 1819 mail disapproval form for a letter that I had never accepted. The letter was illegally confiscated by IGI in violation of C.C.R 15 § 3147 (a) (5) (B) Incoming mail disallowed under the provisions of this article, under facilities procedures or pursuant to an appeal shall be destroyed or mailed at the inmates expense" I do not nor have I ever knowingly accepted any "Gang Related material".

_____

_____

_____

If you need more space, attach one additional sheet.

B. Action Requested: I be allowed to send the disallowed letter back (2) that the IGI & all state employees abide by all Rules & Regulations & State & Federal Laws & cease the illegal acts

Inmate/Parolee Signature: Alfred Sandoval          Date Submitted: 8-16-06

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

BYPASS

INMATE APPEALS BRANCH NOV 4 2006 RECEIVED

Staff Signature: _____          Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

_____

_____

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

AUG 24 2006

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **FEB 2 0 2007**

In re:   Sandoval, D-61000
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0606329          Local Log No.: PBSP 06-02263

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner A. A. Read. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that his mail has been routinely withheld and delayed by Pelican Bay State Prison (PBSP) employees. The appellant states that 3rd Watch staff in DZ unit picks up the mail from the Control Room, search it and then reroute it to the Institution Gang Investigator (IGI) office. It is also stated that the IGI office then searches the mail again and holds it for another 48-72 hours in violation of Operational Procedure 205. The appellant contends that an inmate shall be notified when mail will be delayed or withheld and the institution is in violation of California Code of Regulations, Title 15, Section (CCR) 3130 and 3147. The appellant requests that he be notified in writing for each piece of mail withheld and/or delayed by 3rd Watch floor staff and the IGI.

**II   SECOND LEVEL'S DECISION:** The reviewer found that the appellant's concerns have been properly addressed by involved and/or assigned PBSP staff. The reviewer states that the First Level of Review has been bypassed on this appeal. The reviewer states that the appellant is a validated member of the Mexican Mafia prison gang (EME) and is also known as "Chato" of Arizona Maravilla. A review by PBSP staff indicated that CCR 3147, which was quoted by the appellant, states this section applies to withheld or disallowed mail, in which a decision has already been made to disapprove/disallow its mailing. The institution indicates there is information in the appellant's central file (C-file) to reflect that he has participated or been the intended recipient of correspondence with other inmates. Furthermore, a certain portion of the appellant's correspondence has included Spanish, Nahuatl and coded language references. The Second Level of Review (SLR) states that the appellant's mail is under close scrutiny by investigators based upon his activities, as well as his affiliation with the EME. The appellant's influence, as a member of the gang poses a significant risk to institution security and public safety, such that his communications are closely scrutinized. The institution states that regulations permit staff five (5) business days beyond what is regular processing to understand correspondence in other languages. The normal processing time for mail depends on the volume of mail on a particular day and the number of staff to process the mail. The mailroom at PBSP reports that the normal processing time for mail is two (2) days. The SLR has concluded that a similar standard could be applied to review the appellant's correspondence, based upon the requirement of forwarding his correspondence to a staff member, who has an expertise in evaluating gang-related correspondence or interpreting gang relationships. The SLR concludes that it would be reasonable to notify the appellant about the delay in his correspondence should this period extend beyond five (5) business days past normal processing time frames, provided that disclosure does not impede a criminal investigation. The institution indicates that the appellant will be notified in writing about any delay of his correspondence that exceeds five (5) business days beyond the normal processing time except in situations that that disclosure would interfere with a criminal investigation. Based upon the aforementioned information, the Second Level of Review granted in part the appeal.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

    **A.   FINDINGS:** The documentation and presented arguments are persuasive that the appellant has failed to support his appeal issue with sufficient evidence or facts to warrant a modification of the SLR. The examiner reviewed CCR 3136, Disapproval of Inmate Mail; CCR 3138, General Mail Regulations; and

'SANDOVAL, D-61000
CASE NO. 0606329
PAGE 2

CCR 3147, Definition and Disposition of Mail, and concurs with the assessment of the institution that the appellant's appeal issues have been appropriately and properly addressed. The examiner noted that the institution specifically explained to the appellant that IGI and housing unit staff appropriately maintained control of the appellant's mail in order to carefully scrutinize each piece of mail. The examiner finds that the PBSP IGI is adhering completely to the departmental and institutional rules and regulations governing the mailroom policies. The institution also found that the appellant failed to support his claim that his rights under CDCR rules and regulations had been violated. The institution has the right to maintain its security for the safety of inmates and staff. The examiner finds that CCR 3270, Security, states in part, "The requirement of custodial security and of staff, inmate and public safety must take precedence over all other considerations in the operations of all the programs and activities of the institutions of the department." It was also noted that the appellant has documentation in his C-file that reflects his participation in gang activity and the use of correspondence between inmates is the most widely used method due to the appellant's current housing location. The examiner also finds that the appellant has failed to provide or offer any new or updated evidence to support his claim. The institution has informed the appellant that specific measures will be taken, if the appellant's mail is delayed beyond the five (5) business day time frame after the normal processing time. The appellant has been duly informed regarding his appeal issues and responding institutional staff has addressed all pertinent areas of his complaint. The examiner finds that the appellant has failed to secure any new or updated documentation and/or evidence that would substantiate his claim; therefore, justification for intervention at the Director's Level of Review has not been established.

**B. BASIS FOR THE DECISION:**
CCR: 3000, 3001, 3006, 3023, 3100, 3130, 3131, 3132, 3136, 3137, 3138, 3146, 3147, 3270, 3378
CDC Operations Manual Section: 52070.1, 52070.2, 52070.3, 52070.6.1, 52070.16, 52070.16.1, 52070.17.2, 52070.19, 52070.19.2

**C. ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, PBSP
        Appeals Coordinator, PBSP

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region  Log No. D06-0226___  Category 3 3

1. _____  1. _____ delays in
2. _____  2. _____ screening mail

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Sandoval, Alfred | D#61000 | | DZ 105 |

A. Describe Problem: MAIL: MY MAIL HAS BEEN ROUTINELY WITHHELD & DELAYED BY STATE EMPLOYEES. 3rd WATCH PICKS UP THE MAIL FROM CONTROL, SEARCHES & THEN REROUTES IT TO THE GOON SQUAD WHOM AGAIN SEARCHES IT & HOLDS IT FOR ANOTHER 48-72 HOURS IN VIOLATION OF O.P. 205" AN INMATE SHALL BE NOTIFIED WHEN MAIL WILL BE DELAYED OR WITHHELD" AND IN VIOLATION OF C.C.R 15 3130 AND 3147. (a) (5) (A) ' (B)

RECEIVED NOV 28 2006 INMATE APPEALS BRANCH

If you need more space, attach one additional sheet.

B. Action Requested: (1) THAT I BE NOTIFIED IN WRITING FOR EACH PIECE OF MAIL WITHHELD AND/OR DELAYED BY 3rd WATCH FLOOR STAFF AND I G I

Inmate/Parolee Signature: _Alfred Sandoval_    Date Submitted: 8-18-06

C. INFORMAL LEVEL (Date Received: 9-9-06 )

Staff Response: Denied. Mail may be subject to review by staff in DZ or IGI. Mail sent to IGI will not be logged. If mail is going to be delayed or disallowed, IGI would be the ones responsible for notifying you. When mail arrives to DZ, it always has been and will continue to be distributed in a timely manner.

Staff Signature: _A. Garcia_    A. Garcia DZ Floor 3/w    Date Returned to Inmate: 9-9-06

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Dissatisfied: MAIL IS ROUTINELY WITHHELD & DELAYED BY I G I & 3rd WATCH STAFF IN VIOLATION OF O.P. 205 + C.C.R. 15 SEC. 3130, 3147 (a), (5) (A) ' (B)

Signature: _Alfred Sandoval_    Date Submitted: 9-10-06

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim    CDC Appeal Number: _____

AUG 24 2006
2C
SEP 12 2006
2NDLEVEL

# EXHIBIT COVER PAGE

$\mathcal{C}$

**EXHIBIT**

Description of this Exhibit:

Number of pages to this Exhibit: _/3_ pages.

JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☒ United States District Court
☐ State Circuit Court
☐ United States Supreme Court
☐ Grand Jury

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:    JUL 0 3 2007

In re:    Sandoval, D-61000
          Pelican Bay State Prison
          P.O. Box 7000
          Crescent City, CA 95531-7000

IAB Case No.: 0614311          Local Log No.: PBSP 07-00131

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner C. Hall, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I  APPELLANT'S ARGUMENT:** It is the appellant's position he has Chron's Disease and had a flare-up that resulted in his fainting. The appellant claims he had a colonoscopy on October 6, 2006, and was followed-up by Dr. Martinelli to discuss the results. The appellant claims the report of the colonoscopy results was incomplete. The appellant was evaluated on December 8, 2006, by Family Nurse Practitioner Risenhoover, and claims he was prescribed the same medications as he was taking prior to the colonoscopy that was ineffective. The appellant indicated Chron's Disease is a disability under the Americans with Disabilities Act (ADA) and alleges Pelican Bay State Prison (PBSP) is in violation by providing substandard treatment. The appellant is requesting to be monetarily compensated for his prolonged gastric pains, to be referred to an off-site gastrointestinal (GI) specialist and to be prescribed a diet beneficial for his gastric condition.

**II  SECOND LEVEL'S DECISION:** It is the institution's position the results of the appellant's colonoscopy was unremarkable and revealed no inflammation or redness. The recommendations provided by Dr. Martinelli included the prescribing of Asacol, a regular diet, medications and activity. The appellant's Unit Health Record was reviewed and indicated the he has been evaluated on a regular basis and his symptoms appear to be under control. The appellant was advised Dr. Martinelli is a board certified internal medicine physician, who specializes in GI conditions; therefore, his request for a referral to a GI specialist was denied. There is no supporting documentation that substantiates the appellant's claim he is receiving substandard care. The appellant was also reminded the awarding of monetary compensation is beyond the scope of the appeals process and will not be addressed.

**III  DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.  FINDINGS:** The appellant contends he has Chron's Disease and is receiving substandard care that is a violation of his ADA rights. These allegations are refuted, as the appellant completed a colonoscopy on October 6, 2006, that was unremarkable and within normal limits. The appellant is receiving the intervention deemed medically necessary by Dr. Martinelli, a board certified internal medicine physician who specializes in GI conditions. As a result, a referral to a GI specialist is not medically indicated. The appellant is reminded the California Code of Regulations, Title 15, Section (CCR) 3354, establishes only qualified medical personnel shall be permitted to diagnose illness and/or other conditions, and prescribe medical treatment for inmates. It is not appropriate to self-diagnose medical problems and expect a physician to implement the appellant's recommendation for a course of medical treatment. In this particular matter, the appellant's contention that he has not received adequate medical care is refuted by the medical records and professional health care staff familiar with the appellant's medical history. He has received the treatment deemed medically necessary by his primary care physician and further intervention is unnecessary. The appellant is advised the awarding of monetary compensation is beyond the scope of the appeals process and will not be address at the Director's Level of Review.

**B.  BASIS FOR THE DECISION:**
CCR: 3041, 3350, 3350.1, 3350.2, 3354

**C.  ORDER:** No changes or modifications are required by the institution.

SANDOVAL, D-61000
CASE NO. 0614311
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, (formerly known as the State Board of Control), Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, PBSP
        Health Care Manager, PBSP
        Appeals Coordinator, PBSP
        Medical Appeals Analyst, PBSP

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category

PBSP  1A-18-2007-00131    8/10
Disagreen
TX for Chrons

You may appeal any policy, action or decision which has a significant adverse effect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

UNIT D-2

NAME: SANDOVAL, ALFRED    NUMBER: D#61000    ASSIGNMENT:    UNIT/ROOM NUMBER: D2 105

A. Describe Problem: INADEQUATE MEDICAL CARE: ON 9-FAINTED FROM A CROHNS FLARE UP. ON 10-6-06 I HAD A COLONOSCOPY. ON 11-13-06 I WAS SEEN BY DR. MARTINELLI TO GET THE RESULTS. HOWEVER HE STATED THAT THE REPORT WAS INCOMPLETE. ON 12-8-06 I WAS SEEN BY F.N.P. RISENHOOVER WHO PRESCRIBED THE SAME MEDICATIONS. THE PROBLEM IS #1. THE TEST WERE SUBSTANDARD + INADEQUATE #2. THE MEDICATIONS PRESCRIBED ARE THE SAME MEDS THAT I HAVE BEEN TAKING PRIOR TO THE TESTS, I DO NOTHING TO ELEVIATE MY CONDITION. IVE CONSISTENTLY REQUESTED PLACEMENT ON A DIET TO HELP WITH MY CONDITION BUT HAVE BEEN DENIED. I WAS FIRST DIAGNOSED WITH CROHNS IN 2000 SINCE ARRIVING AT P.B.S.P. I HAVE BEEN ON THE SAME MEDICATION, WHICH WAS REDUCED BY MEDICAL STAFF TO SAVE COST.

If you need more space, attach one additional sheet.

B. Action Requested: THAT I BE MONETARILY COMPENSATED FOR MY PROLONGED GASTROL PAINS THAT I BE GIVEN A COMPLETE ADEQUATE EXAMINATION BY AN OUTSIDE G.I. SPECIALIST AND BE PLACED ON A DIET BENEFICIAL TO MY ILLNESS

Inmate/Parolee Signature: Alfred Sandoval    Date Submitted: 12-13-06

C. INFORMAL LEVEL (Date Received: 12/13/06 )

Staff Response: DR. MARTINELLI'S CONSULT OF 10/06/06 RECOMMENDATIONS STATE "HE WILL CONTINUE ON HIS ASACOL. HE WILL RETURN TO HIS USUAL DIET AND MEDICATIONS AS OF TODAY AND ACTIVITY AS OF TOMORROW." HIS NOTE OF 11/13/06 STATES "PT. HAD UN-REMARKABLE COLONOSCOPY → VISUALLY Ø INFLAMMATION NOTED." YOU WENT TO A G.I. SPECIALIST.    DENIED

Staff Signature: R. Lowry, R.N. /J. FLOWERS    Date Returned to Inmate: 12/15/06

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

DISSATISFIED: CROHNS IS RECOGNIZED AS A disability UNDER THE A.D.A AND P.B.S.P STAFF (MEDICAL) ARE IN VIOLATION BY SUBJECTING ME TO INADEQUATE + SUB STANDARD MEDICAL CARE. REITERATE THE ACTION REQUESTED IN SEC. B

Signature: Alfred Sandoval    Date Submitted: 12-8-06

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

2nd
APR 0 3 2007

1ST
DEC 2 8 2008

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region **PBSP**

Log No. D06-01026

Category 8-16
termination of meds
for chronic condition

1.
2.

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME SANDOVAL, Alfred | NUMBER D#61000 | ASSIGNMENT | UNIT/ROOM NUMBER D2 105 |

A. Describe Problem: RETALIATION, MEDICAL INDIFFERENCE by P.B.S.P. MEDICAL STAFF: I HAVE A CHRONIC medical Condition (CHROHNS) THAT REQUIRES daily medication WHICH WAS discONTINUED By F.N.P. FOR 2 WEEKS CAUSING SEVERE abdominal PAIN, Bloody STools FOR Filing Complaints and NOTIFYING THE Prison Law office of THE INTENTIONAL Medical indifference. I Had SubmiTTed Sick Call Slips To SEE THE doctor, And OTHERS To GET medication increased & To GET medica-TION, All were Completely ignored OTHER THEN AN OCCASIONAL "you ARE Scheduled To discuss THis problem" WITH NO date, All THE Time I HAVE BEEN Suffering RESTRicTed To my Cell BECAUSE of diarrhea while STAFF IgnoRED ProceduRE.

If you need more space, attach one additional sheet.

B. Action Requested: ① THAT I RECEIVE PROPER medical TREATMENT and medication ② THAT THE RETALIATION CEASE ③ THAT AN OVERSEER BE APPOINTED ④ THAT AN INDEPENDENT INVESTIGATION BE Conducted INTO THESE illegal acTS By STATE employees

Inmate/Parolee Signature: Alfred Sandoval          Date Submitted: 5-3-06

C. INFORMAL LEVEL (Date Received: 05/05/06 )

Staff Response: ① YOU NOW HAVE THE MEDICALLY SAFE DOSAGE & HAVE BEEN INFORMED AS SUCH AT THE POD DOOR.

② ANY OTHER CONCERNS ARE AN ADMINISTRATIVE ISSUE AND BEYOND THE CLINIC.

Staff Signature: TKS., J. FLOWERS, R.N.          Date Returned to Inmate: 05/05/06

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

DISSATISFIED: THE "medically SAFE" dosage is ½ of WHAT WAS ORIGINALLY ORDERED BY A SPECIALIST & WAS CuT By FAKE NURSE PRACTIONER To REDuCE THE COST of my medication BuT THE fact THAT my medication WAS Completely CuT off FoR 2 WEEKS WITH full Knowledge of THE PAIN & SuffERING THAT would CAUSE ME is medical indifference & INCOMPETENCE By P.B.S.P medical STAFF.

Signature: Alfred Sandoval          Date Submitted: 5-8-06

Note: Property/Funds appeals must be accompanied by a completed          CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

* STAFF ComplainT FoRm ATTacHed

MAY 11 2006
1st/1st cm

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:　**JUN 2 7** 2007

In re:　Sandoval, D-61000
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

　　IAB Case No.: 0614305　　　　Local Log No.: PBSP 07-203

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner C. Hall, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I　APPELLANT'S ARGUMENT:** It is the appellant's position he was informed by Family Nurse Practitioner (FNP) Risenhoover he would be evaluated for his chronic allergies on January 8, 2007. The appellant alleges he has complained of sinus pain so severe the pressure causes his teeth to hurt. The appellant claims he has been waiting for weeks to see the sinus specialist; however, claims FNP Risenhoover informed him he would have to start with allergy medications for another 30 days, then would be referred to the specialist if justified. The appellant claims he has a documented history of allergies and is requesting to be evaluated by a sinus specialist, Ear, Nose and Throat Specialist and to receive adequate medical care.

**II　SECOND LEVEL'S DECISION:** It is the institution's position the appellant was informed he was going through the process of diagnosis and treatment and is scheduled for a follow-up appointment to review his condition. On January 23, 2007, the appellant was interviewed by FNP Risenhoover for his appeal issues and was advised of the need for appropriate sinus treatment. If his symptoms were not resolved, he would be referred to a specialist. The appellant was prescribed zithromax, humibid, deep-sea nasal spray, naphcon eye drops and an antihistamine. The appellant was also directed to avoid strenuous exercise and increase his water intake. The appellant was advised to return to the clinic in 14 days for a follow-up to his sinusitis and conjunctivitis, and to notify health care staff if his condition was not resolved. In the Second Level of Review (SLR), the appellant informed health care staff his infection was gone and his sinus condition had resolved; however, stated he would like to try a different nasal spray. As a result, the appellant's primary care physician (PCP) prescribed a new nasal spray as requested. The appellant will continue to be followed and treated by his PCP for his sinus condition.

**III　DIRECTOR'S LEVEL DECISION:** Appeal is denied.

　　**A. FINDINGS:** The appellant contends he has chronic allergies and claims he is not being adequately treated by Pelican Bay State Prison (PBSP) health care staff. These allegations are refuted, as the appellant has been treated for sinusitis and conjunctivitis with medications, including eye drops, nasal spray and antibiotics. The appellant was informed his symptoms had to be evaluated and treated prior to a referral being made to a specialist. At the SLR, the appellant informed health care staff his sinus condition had been resolved. As a result, health care staff determined a referral to a specialist was not medically indicated. The appellant is reminded the California Code of Regulations, Title 15, Section (CCR) 3354 establishes that only qualified medical personnel shall be permitted to diagnose illness and/or other conditions, and prescribe medical treatment for inmates. It is not appropriate to self-diagnose medical problems and expect a physician to implement the appellant's recommendation for a course of medical treatment. In this particular matter, the appellant's contention that he has not received adequate medical care is refuted by the medical records and professional health care staff familiar with the appellant's medical history. After review, there is no compelling evidence that warrants intervention at the Director's Level of Review.

SANDOVAL, D-61000
CASE NO. 0614305
PAGE 2

Most likely you or someone you know has allergies. The telltale itchy, puffy, watery eyes and red, stuffy nose signal changes in the seasons in homes and workplaces across the country. What these people suffer from is allergic rhinitis, or hay fever. The medical name for this condition refers to stuffy and itchy nose, the most common symptom.  It is your immune system's response to foreign material in the air you breathe. Hay fever usually refers to allergies to outdoor, airborne materials such as pollens and molds. About 15-20 percent of the population of the United States has some degree of hay fever. It is found equally in both men and women. Usually hay fever is seasonal, but it can last all year long if the allergen stays throughout the year. Spring and fall are the main hay fever seasons. Hay fever, like all allergic reactions, is caused by allergens, foreign "invaders" that enter your body by inhalation, by swallowing, or through your skin. In hay fever, the allergens are airborne substances that enter your airways (mouth, nose, throat, and lungs) via your breathing and the linings of your eyes and sometimes ears via direct contact. Most of the time it is difficult to identify a specific allergen; however, once these allergens come in contact with your airway, the white blood cells of your immune system produce antibodies to the offending substance. This overreaction to a harmless substance is often called a hypersensitivity reaction. The antibody, called immunoglobulin E, or IgE, is stored on special cells called mast cells.  When the antibody comes in contact with the corresponding antigen, they promote release of chemicals and hormones called "mediators." Histamine is an example of a mediator. It is the effects of these mediators on organs and other cells that cause the symptoms of the allergic reaction, in this case hay fever.  The most common allergens in hay fever are pollens. Pollen is small particles released by flowering plants. It is moved around by wind to other plants of the same species, which it fertilizes so that the plant can bloom again. Pollens from certain types of trees, grasses, and weeds (such as ragweed) are most likely to cause reactions. Pollens from other types of plants are less allergenic.  The time of year when a particular species of plant releases pollen, or "pollinates," depends on the local climate and what it normal for that species. Some species pollinate in the spring and others in the late summer and early fall. Generally, the farther north a plant is, the later in the season it pollinates.  Variations in temperature and rainfall from year to year affect how much pollen is in the air in any given season.  The pollen and mold counts at which people develop allergic symptoms vary quite a lot by individual.  Pollen and mold counts are not very helpful in predicting how a specific person will react.  Hay fever does not always require medical treatment.  The best treatment overall is to avoid contact with your allergen. Since this is rarely possible, you may want to take medication to reduce the symptoms.  The treatment of hay fever depends on the severity, symptoms, and consequences of the disease.  Avoid known or suspected allergens.  Gargle with warm salt water, one-to-two tablespoons of table salt in eight ounces of warm water, to soothe a mildly sore throat. Take nonprescription antihistamines to relieve symptoms of sneezing, runny nose, and itchy throat and eyes.

**B. BASIS FOR THE DECISION:**
CCR: 3350, 3350.1, 3354

**C. ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

*R. Manuel*

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, PBSP
        Health Care Manager, PBSP
        Appeals Coordinator, PBSP
        Medical Appeals Analyst, PBSP

07-203

PELICAN BAY STATE PRISON

INMATE/PAROLEE APPEAL FORM
CDC 602 (12/87)

INMATE/PAROLEE RECEIVING UNIT    Location: Institution/Parole Region (PBSP)    Log No. 1, IA-B-2007-00203    Category □ 0

UNIT D-2    wants to see Specialist for [...]

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME SANDOVAL, ALFRED    NUMBER D#61000    ASSIGNMENT    UNIT/ROOM NUMBER D2 105

A. Describe Problem: INADEQUATE MEDICAL CARE IN VIOLATION of C.C.R. 15 § 3350 (b)(1)(4) '(5). I WAS TOLD BY F.N.P. RISENHOOVER THAT I WOULD BE SEEN ON 1-8-07 BECAUSE of CHRONIC ALLERGIES. I HAVE COMPLAINED of SINUS PAIN SO SEVERE THAT THE PRESSURE CAUSE MY TEETH TO HURT FOR DAYS + WEEKS!! I REQUESTED TO SEE A SINUS SPECIALIST BUT F.N.P. RISENHOOVER STATED THAT I WOULD HAVE TO START WITH ALLERGY MEDICATIONS FOR ANOTHER 30 DAYS AT WHICH TIME SHE WOULD DECIDE WHETHER OR NOT THE EXPENSE WOULD BE JUSTIFIED. I EXPLAINED THAT I HAVE A DOCUMENTED HISTORY OF ALLERGIES DATING BACK 27 YEARS + HAVE HAD MY SINUSES SCRAPED BECAUSE of PUSS POCKETS. I AM IN PAIN BECAUSE of INADEQUATE MEDICAL CARE

If you need more space, attach one additional sheet.

B. Action Requested: THAT I BE SEEN BY A SINUS SPECIALIST, EYE EAR NOSE THROAT SPECIALIST AS SOON AS POSSIBLE + THAT I RECEIVE ADEQUATE MEDICAL CARE

Inmate/Parolee Signature: Alfred Sandoval    Date Submitted: 1-10-07

C. INFORMAL LEVEL (Date Received: 01/12/07 )

Staff Response: DENIED - YOU ARE CURRENTLY GOING THROUGH THE PROCESS OF DIAGNOSING & TREATMENT PLANS, YOU ARE SCHEDULED FOR A FOLLOW-UP VISIT.

Staff Signature: Flowers, R.N. / J. FLOWERS    Date Returned to Inmate: 01/16/07

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

DISSATISFIED: THE "DIAGNOSING & TREATMENT" HAS TURNED INTO A SINUS INFECTION BECAUSE of LACK of ADEQUATE MEDICAL CARE BY P.B.S.P MEDICAL STAFF. BECAUSE of THE SEVERE PAIN I CAN NOT SLEEP, I WAS ONLY GIVEN A 30 DAY ISSUE of MEDICATION WHICH RAN OUT ON 1-7-07

Signature: Alfred Sandoval    Date Submitted: 1-17-07

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

1st HCM
JAN 19 2007

PELICAN BAY S.H.U.
UNIT D-2

2nd
MAR 0 7 2007

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Inst./Parole Region 1. **PBSP** 2.

Log No. 1. D06-0021

Category 1. S/IO 2. NEEDS DIITER/ FREE DIET/ unsubscribed & delivered.

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME SANDOVAL, Alfred | NUMBER D#61000 | ASSIGNMENT | UNIT/ROOM NUMBER D2 105 |

A. Describe Problem: ON APPROX. 11-21-05, I WAS PRESCRIBED A DAIRY FREE DIET By DR. SOGGIA, ON 12-19-05, I WAS AGAIN PRESCRIBED A DAIRY FREE DIET By DR. RISENHOOVER, I WAS TOLD THAT I WAS TO BE PLACED ON A SPECIAL DIET BEFORE I HAD A COLONOSCOPY IN "EARLY JANUARY" HOWEVER I STILL HAVE NOT RECEIVED THE SPECIAL DIET BECAUSE THE DIETITIAN HAS NOT "Signed off" ON THE PRESCRIPTION, BECAUSE of THIS DELIBERATE INDIFFERENCE I MUST CONTINUE TO SUFFER SEVERE ABDOMINAL PAIN IN VIOLATION of C.C.R. 15 SEC. 3350.(a),(b).(1),(4) $15 $ ESTELLE V. GAMBLE 424 U.S.97 $ CITY of REVERE V. MASS. GEN. HOSPITAL 463 U.S. (1983)

If you need more space, attach one additional sheet.

B. Action Requested: ① THAT THE DELIBERATE INDIFFERENCE BY STATE EMPLOYEES CEASE ② THAT THE DIETITIAN ABIDE By THE C.M.O $ GASTROLINTESTINALISTS PRESCRIPTION $ PUT ME ON A DAIRY FREE DIET

Inmate/Parolee Signature: Alfred Sandoval          Date Submitted: JAN. 11, 06

C. INFORMAL LEVEL (Date Received: 1-13-06)
Staff Response: You have been scheduled an appt To discuss your above Request —

Staff Signature: Longnie   RN          Date Returned to Inmate: 1-13-06

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

DISSATISFIED: I HAVE BEEN MEDICALLY APPROVED FOR A SPECIAL DIET SINCE NOVEMBER '05, AND I AM STILL IN CONSTANT ABDOMINAL DISTRESS ALMOST DAILY SO MUCH SO THAT I CAN NOT LEAVE MY CELL FOR MORE THEN 30 MIN. AT TIMES BECAUSE of DIARRHEA $ ABDOMINAL CRAMPS YET THE DELIBERATE INDIFFERENCE CONTINUES IN VIOLATION of STATE $ FEDERAL LAWS

Signature: Alfred Sandoval          Date Submitted: 1-24-06
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim          CDC Appeal Number:

16

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA  94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **AUG    9 2005**

In re:    Sandoval, D-61000
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA  95531-7000

IAB Case No.: 0411461          Local Log No.: PBSP 04-03262

This matter was reviewed on behalf of the Director of the California Department of Corrections (CDC) by Appeals Examiner R. Floto. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:**  It is the appellant's position that he suffers from a medical condition, Chrohn's Disease which causes him discomfort. He maintains that he requires a special bland high fiber diet as treatment of his condition. He requests that he be provided a special diet as medical treatment of his condition.

**II    SECOND LEVEL'S ARGUMENT:**  The reviewer found that treatment of the appellant's condition is being appropriately provided. The "Heart Healthy" diet served at the institution is considered a high fiber diet with 20-35 grams of fiber each day. He was informed that he should eat fruits and vegetables and avoid foods that bother him. His current weight of 261 pounds is more than 150 percent of his ideal weight of between 150 to 182 pounds. Additionally, his cholesterol of 206 with an "LDL" of 143, which means he is at risk for heart disease. He was informed that he should lose weight for health concerns. The appellant is being provided the most appropriate therapy, the medication Mesalamine, as treatment for his condition.

**III    DIRECTOR'S LEVEL DECISION:**  Appeal is denied.

**A.   FINDINGS:**  In this particular matter, the medical records and professional staff familiar with the appellant's medical history refute the appellant's contention that he has not received adequate medical care. Medical staff conducted a review of the appellant's medical file. No modification to his current diet is warranted other than that it has been recommended that he lose weight. He has been instructed in the proper foods to select and avoid from the menu to get to his proper weight range. If he wishes he may purchase through the inmate canteen other foods he may desire. The institution shall only provide medical services for inmates, which are based on medical necessity and supported by outcome data as effective medical care. The appellant is advised that each practitioner determines, at the time of treatment, the extent of treatment for the health care problem. The appellant has not presented a compelling argument to warrant modification of the decision reached by the institution.

**B.   BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3270, 3350, 3354

**C.   ORDER:**  No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDC.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, PBSP
Health Care Manager, PBSP
Appeals Coordinator, PBSP
Medical Appeals Analyst, PBSP

**First level Response    Inmate SANDOVAL    CDC#D61000**

Patient states that he was given a bland high fiber diet when he was at the LA County Jail and wants the same here. I explained that we don't have a bland diet to give him and our heart healthy diet is considered a high fiber diet (20-35 grams fiber/day). I also explained that Food Service can't make up a special tray for him and recommended he eat high fiber food such as fruits and vegetables, beans etc. and avoid foods that bother him.

We can try Lactaid tablets for lactose intolerance. His current weight of 261# is more than 150 % of his ideal body weight for height of 5'10". (IBW = 150-182"). He says he doesn't want to lose weight or get an extra lunch. He has to trade food with other inmates now.

His cholesterol (206) and LDL (143) are borderline risk for heart disease and would probably decrease with weight loss. I told him that the medication he's taking, mesalamine, is the most appropriate therapy for his condition but may cause some dyspepsia and abdominal cramping. He was dissatisfied with our discussion and wants to go to the next level.

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region    Log No    Category
PBSP
1.                          1. D-04-03262    8/25
2.                          2.              CHROHN'S DISEASE

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| SANDOVAL ALFRED | D#61000 | | D2 224 |

A. Describe Problem: Medical Indifference; I HAVE BEEN diagnosed WITH CHROHN'S SINCE APPROX. 1999 I REQUESTED a SPECIAL DIET BECAUSE I AM LACTOSE INTOLERANT & allergic TO EGG's, I HAVE BEEN TRADING food TO STAY HEALTHy & PAIN FREE. WHEN I REQUESTED a SPECIAL DIET I WAS TOLD THAT I Had TO LOSE 70 lb's APPROX. I EXPLAINED THAT I did NOT WANT AN EXTRA lunch, I WANT food I CAN digest WITHOUT SUFFERING PAIN. BECAUSE of THE medical INDIFFERENCE & PROPER medical CARE my CHOLESTEROL level HAS Jumped TO 206 & LDL TO 143 IN approx. 6 MONTHS. WHICH WILL CAUSE A HEART ATTACK OR STROKE

If you need more space, attach one additional sheet.

B. Action Requested: ① THAT I RECEIVE PROPER medical CARE & RECEIVE A SPECIAL DIET THAT WILL CONTROL THE CHROHN'S

Inmate/Parolee Signature: Alfred Sandoval    Date Submitted: 12/13/04

C. INFORMAL LEVEL (Date Received: 12/14/04 )
Staff Response: partically Granted you have been scheduled To discuss your above Request with the clinic medical Provider.

Staff Signature: Theresa Longarini PA    Date Returned to Inmate: 12/14/04

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.
DISSATISFIED; ALTHOUGH I AM "Scheduled" TO SEE "SOME ONE, SOME TIME, SOME WHERE" I AM STILL HAVING SEVERE PAIN FROM EATING food THAT AGGREVATES THE CHROHNS DISEASE & my CHOLESTEROL is GETTING HIGHER & LDL IS ALSO WHILE THE MEDICAL INDIFFERENCE CONTINUES

Signature: Alfred Sandoval    Date Submitted: 12/23/04
Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

DEC 2 9 2004
MAR 0 8 2005

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

**APR 2 1 2004**

In re:    Sandoval, D-61000
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0307715          Local Log No.: PBSP 03-02882

This matter was reviewed on behalf of the Director of the California Department of Corrections (CDC) by Appeals Examiner D. L. Porter, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:**    It is the appellant's position that medical staff at Pelican Bay State Prison (PBSP) inappropriately refused to place him on a special diet. The appellant states that two weeks ago (October 20, 2003) he requested a special diet because he was diagnosed with Crohn's disease, which is a condition aggravated by certain foods. The appellant complains that he continues to lose weight because he cannot eat the regular diet. The appellant adds that Chief Medical Officer (CMO) Winslow has constructive knowledge of his complaint. The appellant requests on appeal to receive a special diet that will correspond with his condition to ease the pain and suffering that a regular diet causes.

**II    SECOND LEVEL'S DECISION:**    The reviewer found that on October 21, 2003, J. Hartman, Registered Dietician and Food Administrator at PBSP conducted a dietary consultation of the appellant, based on a review of the appellant's Unit Health Record (UHR). The dietician subsequently interviewed the appellant on November 5, 2003, and the appellant stated that he was diagnosed with Crohn's disease in 1997. The appellant indicated that he could not tolerate milk, spicy foods, apples and lunchmeat. The appellant also indicated that he cannot eat food from the canteen to supplement his diet. The institution takes the position that there is no special diet for inmates with Crohn's disease and the appellant can make substitutions on meal trays. The dietician advised the appellant that a low fiber diet is available for an acute stage and only for a short period of time. The dietician recommended that the appellant avoid foods that bother him and that an extra sack lunch is available, if a significant weight loss occurs. The dietician points out that the appellant's current weight is 231 pounds and his ideal weight range is 151-181 pounds. The institution maintains that the appellant's medical condition is being monitored on a regular basis and that the appellant is receiving adequate and appropriate medical care.

The institution points out that the appellant added new matter at the Second Level of Review regarding time constraints not being met and the Americans with Disabilities Act (ADA). The institution takes the position that there were no violations of the time limits, because at the Informal Level of Review, the appellant's appeal was responded to within two days, and the formal level response was due on December 12, 2003; and it was completed on November 5, 2003, and sent to the appellant on December 4, 2003. The institution also takes the position that based on the appellant's issues his appeal has been appropriately addressed, as a medical appeal and not an ADA issue. The appeal was denied at the Second Level of Review.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A. FINDINGS:** It is apparent that the institution's implementation of the CDC diet plan is consistent with policy. The appellant does not satisfy policy guidelines for issuance of a special medical food tray. A physician has determined that the heart healthy diet satisfies the appellant's dietary needs. He should maintain contact with his primary care physician to receive treatment for his Crohn's disease. In this case, the Second Level of Review adequately responds to the appellant's appeal issues. The Director's Level of Review accepts the Second Level of Review as CDC's response to this appeal. Relief at the Director's Level of Review is not warranted.

**B. BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3050, 3350, 3350.1, 3354

Medical and Procedural

STATE OF CALIFORNIA

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution  PBSP    Log No.    D93-02882    Category 8  Special Diet
1. _____    2. _____
2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| SANDOVAL, ALFRED | D#61600 | N/A | D2  224 |

A. Describe Problem: I REQUESTED A SPECIAL DIET APPROX. 2 WEEKS AGO BECAUSE I HAVE DIAGNOSED CROHNS DISEASE WHICH IS AGGREVATED BY CERTAIN FOODS. I HAVE + CONTINUE TO LOSE WEIGHT BECAUSE I CANNOT EAT THE REGULAR DIET'S. C.M.O. WINSLOW HAS CONSTRUCTIVE KNOWLEDGE of THIS COMPLAINT.
        VIOLATION of AMERICAN DISABILITIES ACT.
            ARMSTRONG V. DAVIS

If you need more space, attach one additional sheet.

B. Action Requested: THAT I RECEIVE A SPECIAL DIET THAT WILL CORRESPOND WITH THIS malady + EASE THE PAIN + SUFFERING THAT THE REGULAR DIET CAUSES.

Inmate/Parolee Signature: Alfred Sandoval    Date Submitted: 10/20/03

C. INFORMAL LEVEL (Date Received: 10-21-03 )

Staff Response: Denied. Medical diet is not indicated and not recommended at this time.

Staff Signature: Y Bruns PA    Date Returned to Inmate: 10-22-03

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response. and do
BOTH DOCTORS ASKED FOR A DIET CONSULT BECAUSE CERTAIN foods WILL AGGREVATE THIS MALADY. my MEDICAL CHART WILL NOTE THAT I HAVE NOT SEEN THE dietician. if I EAT A REGULAR DIET I WILL BE IN CONSTANT ABDOMINAL DISTRESS. if I dON'T EAT IT I WILL LOSE MORE WEIGHT. THIS dOES CONSTITUTE MEDICAL INDIFFERENCE + INTENTIONAL INFLICTION of EMOTIONAL DISTRESS

Signature: Alfred Sandoval    Date Submitted: 10/23/03

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

DEPARTMENT OF CORRECTIONS

3RD

2ND

OCT 28 2003    DEC 10 2003

# EXHIBIT COVER PAGE

EXHIBIT

Description of this Exhibit:

Number of pages to this Exhibit: __//__ pages.

JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☒ United States District Court
☐ State Circuit Court
☐ United States Supreme Court
☐ Grand Jury

:proved for
c with
Jicial
uncii forms

*Matthew L. Cate, Inspector General*



*Office of the Inspector General*

March 29, 2007

Alfred Sandoval, D-61000
Pelican Bay State Prison
P. O. Box 7000
Crescent City, CA 95531-7000

Dear Mr. Sandoval:

The Office of the Inspector General has received your correspondence. In your letter, you
alleged that correctional officers used excessive force against you on February 2, 2007.

We contacted Pelican Bay State Prison's Appeals Coordinator and verified that your appeal was
accepted on February 16, 2007. According to appeal records, the second level response is due on
April 2, 2007; therefore, no intervention is warranted by our office at this time.

While we conducted a limited inquiry of your concerns, it is not possible for us to fully research
and respond separately to each complaint. Therefore, we attempt to focus our audit and
investigative resources on issues where the greatest needs exist. We believe that in this way we
can provide the greatest benefit to you and others who have been affected. If we conduct an
audit or investigation of the issues you raise, you may be contacted later.

The Office of the Inspector General considers this matter closed. Thank you for bringing your
concerns to our attention.

Sincerely,

INEZ AZCONA
Deputy Inspector General

IA:vh:07-0000872-01



STATE OF CALIFORNIA
ARNOLD SCHWARZENEGGER, Governor

GOVERNMENT CLAIMS PROGRAM
400 R Street, 5th Floor ♦ Sacramento, California 95811
Mailing Address: P.O. Box 3035 ♦ Sacramento, California 95812
Toll Free Telephone Number 1-800-955-0045 ♦ Fax Number: (916) 491-6443
Internet: www.vcgcb.ca.gov

ROSARIO MARIN
Secretary
State and Consumer Services Agency
Chairperson
JOHN CHIANG
State Controller
Board Member
MICHAEL A. RAMOS
San Bernardino County District Attorney
Board Member
KAREN McGAGIN
Executive Officer

Alfred Sandoval D61000
P.O. Box 7500
Crescent City, CA  95332

December 28, 2007

RE:  Claim G571836 for Alfred Sandoval, D61000

Dear Alfred Sandoval,

The Victim Compensation and Government Claims Board (VCGCB) received your claim on December 06, 2007.

Your claim is being accepted only to the extent it asserts allegations that arise from facts or events that occurred during the six months prior to the date it was presented.

Based on its review of your claim, Board staff believes that the court system is the appropriate means for resolution of these claims, because the issues presented are complex and outside the scope of analysis and interpretation typically undertaken by the Board. The claim has been placed on the consent agenda.  The VCGCB will act on your claim at the February 21, 2008 hearing. You do not need to appear at this hearing. The VCGCB's rejection of your claim will allow you to initiate litigation should you wish to pursue this matter further.

If you have questions about this matter, please mention letter reference 99 and claim number G571836 when you call or write your claim technician/analyst at (800) 955-0045.

Sincerely,

Government Claims Program
Victim Compensation and Government Claims Board

cc:  B-23 Corrections and Rehabilitation, Attn: Donna Corbin

     Ltr 99 Complex Issue Reject

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

804 SENT TO RECORDS ON 02-05-07

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| D-61000 | SANDOVAL | | PBSP | D02-105L | C07-02-0001 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS ATTEMPTED BATTERY ON A PEACE OFFICER | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3005(c) | | C VISITING | 02-02-07 | 1010 HRS |

**CIRCUMSTANCES**

On Friday, February 2, 2008, at approximately 1010 hours, while I was assigned as Institutional Gang Investigations Sergeant #4, I was assisting with escorting inmates from the C Facility Visiting Cells back to their assigned cells. I observed Correctional Officer J. Reyes escorting validated member of the Mexican Mafia prison gang Alfred "Chato" SANDOVAL, D-61000, D02-105L, out of the visiting area, towards Facility C Corridor Control. Correctional Sergeant J. Beeson ordered inmate SANDOVAL to stop, as Investigative Services Unit (ISU) staff intended to take his photograph for investigative purposes. Inmate SANDOVAL stated that nobody was going to take his picture. Sergeant Beeson took control of inmate SANDOVAL's left arm with his right hand, and inmate SANDOVAL stated "Get your fucking hands off me," and pulled away from Sergeant Beeson's grasp. Sergeant Beeson grasped inmate SANDOVAL's left arm with his right hand and Officer Reyes and Sergeant Beeson both ordered inmate SANDOVAL to face the wall adjacent to where inmate SANDOVAL was standing. CONT ON PART C

| REPORTING EMPLOYEE (Typed Name and Signature) D. BARNEBURG, CORRECTIONAL SERGEANT | DATE 2/14/2007 | ASSIGNMENT IGI #4 | RDO'S 2/W  S/S/H |
|---|---|---|---|

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING DATE N/A LOC. |
|---|---|---|

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☐ SERIOUS | | | | ☐ HO   ☐ SHO   ☐ SC   ☐ FC |

**COPIES GIVEN INMATE BEFORE HEARING**

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE 2-15-07 | TIME 1545 | TITLE OF SUPPLEMENT 1) 837  A, B, C  2) 724 |
|---|---|---|---|---|
| ☒ INCIDENT REPORT LOG NUMBER: PBSP ISU-07-02-008 | BY: (STAFF'S SIGNATURE) | DATE 2-15-07 | TIME 1545 | BY: (STAFF'S SIGNATURE) | DATE 02-15-07 | TIME 1545 |

**HEARING**

The issuing officer used simple English and short sentences to ensure the inmate understood what was issued to him as well as the circumstances of the offense

SIGNATURE OF ISSUING OFFICER

REFERRED TO  ☐ CLASSIFICATION   ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE ► | DATE | TIME |
|---|---|---|---|

| REVIEWED BY: (SIGNATURE) ► | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|

| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ► | DATE | TIME |
|---|---|---|---|

CDC 115 (7/88)

STATE OF CALIFORNIA · DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE___OF___

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| D-61006 | SANDOVAL | C07-02-0001 | VSP | 02-02-07 |

☐ SUPPLEMENTAL ☐ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☐ HEARING ☐ IE REPORT ☐ OTHER_____

As Sergeant Beeson and Officer Reyes attempted to escort inmate SANDOVAL toward the wall inmate SANDOVAL planted his feet and arced back, resisting against the escorting staff. Sergeant Beeson was positioned to the left of inmate SANDOVAL holding SANDOVAL's left arm, as Officer Reyes attempted to direct inmate SANDOVAL toward the ground in an attempt to cease his resistance to the escort. Inmate SANDOVAL continued to resist by twisting his upper body and remaining on his feet. As I stood behind inmate SANDOVAL, I grasped inmate SANDOVAL's left shoulder with my left hand and wrapped my right hand around inmate SANDOVAL's torso. Using our combined physical strength and body weight, Sergeant Beeson, Officer Reyes, and I directed inmate SANDOVAL to the ground. Once on the ground, lying on his back, inmate SANDOVAL continued to resist by struggling against Sergeant Beeson and I by attempting to sit up. I placed my right hand on SANDOVAL's left shoulder to stop his attempts to sit up. Inmate SANDOVAL quickly turned his head and gnashed his teeth toward my right forearm attempting to bite me. Correctional Officer C. Countess used his right hand, pushing SANDOVAL's forehead toward the ground, stopping his attempted assault on me. I observed Correctional Officer T. Buchanan holding inmate SANDOVAL's feet to ensure that he could not attempt to kick. Inmate SANDOVAL ceased his resistive efforts. Correctional Officer G. Parker took one photograph of inmate SANDOVAL as he lay on the ground. Officer Countess responded to Facility D Corridor Control where he retrieved a set of leg restraints. Officer Countess secured inmate SANDOVAL in the leg restraints. Sergeant Beeson and I assisted inmate SANDOVAL to his feet. I lifted inmate SANDOVAL's right bicep as Sergeant Beeson lifted his left bicep. With minimal assistance, inmate SANDOVAL stood up. Sergeant Beeson and I escorted inmate SANDOVAL to Facility D2 where we secured him in the dry holding cell located in the rotunda. During the escort, inmate SANDOVAL was quiet and compliant with orders. Inmate SANDOVAL walked with a steady gait with no assistance from Sergeant Beeson and me. Inmate SANDOVAL received a medical evaluation from Medical Technical Assistant (MTA) C. Richcreek. I removed inmate SANDOVAL's handcuffs and secured him in waist restraints to assist MTA Richcreek with the medical evaluation. At the completion of the medical evaluation, Sergeant J. Beeson and I assisted MTA Richcreek in placing inmate SANDOVAL on a backboard which Sergeant Beeson, Officer Countess and I then assisted MTA Richcreek in placing on a gurney. Sergeant Beeson and I escorted inmate SANDOVAL on the gurney to the Facility D Medical Clinic for further treatment. I notified Facility D Lieutenant J.F. Pedroso of my involvement in this incident.

This inmate is not EOP or Crisis Bed. Following current guidelines for Mental Health Assessments the circumstances of this offense have been carefully evaluated. The Reviewing supervisor has concluded that a Mental Health Assessment is not required.

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| D. BANNBERG, CORRECTIONAL SERGEANT | 2/14/7067 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| | 02-13-07 | 1945 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA
GA-22 (9/92)

# INMATE REQUEST FOR INTERVIEW

DEPARTMENT OF CORRECTIONS

| DATE | TO | | FROM (LAST NAME) | CDC NUMBER |
|------|-----|---|------------------|------------|
| 10-28-07 | R.N. LaBANS | | SANDOVAL | D# 61000 |

| HOUSING | BED NUMBER | WORK ASSIGNMENT | JOB NUMBER | |
|---------|-----------|-----------------|-----------|---|
| D2 | 105 | UNIT D-2 | FROM  N/A | TO |

| OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.) SECURITY HOUSING UNIT | ASSIGNMENT HOURS | |
|---|---|---|
| PELICAN BAY STATE PRISON | FROM | TO |

## Clearly state your reason for requesting this interview.

You will be called in for interview in the near future if the matter cannot be handled by correspondence.

I WAS SEEN By FNP RISENHOOVER Approx. 10 days Ago AT WHICH TIME I HAD REITERATED MY REQUEST foR LACTOSE MEDICATION AS I AM AllERGIC TO EGG's & DAIRY Products & I AM A VEGETARIAN. I HAVE NOT HEARD NOTHING SINCE THEN! So do I SUBMIT ANOTHER SICK-CALL FORM oR 602?

Do NOT write below this line. If more space is required, write on back.

| INTERVIEWED BY | DATE |
|---|---|
| YOUR  CASE  WAS  REVIEWED  BY  THE  MAR | 11/02/07 |

DISPOSITION

COMMITTEE  ON  10/30/07 .  YOU  ARE  SCHEDULED  ALONG  W/

YOUR  7362  FOR  THIS.

Labans, R.N.

PELICAN BAY STATE PRISON 5905 LAKE EARL DR. CRESCENT CITY, CA 95532 (707)465-1000
CAUTION: FEDERAL LAW PROHIBITS THE TRANSFER OF THIS DRUG TO ANY PERSON
OTHER THAN THE PATIENT FOR WHOM IT WAS PRESCRIBED.

---------------------------------------------------------------

SANDOVAL, ALFRED          CDC Number: D61000          D2 L105-L
Prescriber: SUE RISENHOOVER, FNP   RX#: 122087          RPH: pbnlg
NDC: 00904548080      Dispensed: 07/23/07    mfg: MAJOR PHARM.

OYS SHLL CALCIUM 500MG TAB W/D    DOSES: 60 X 1TABL
TAKE 1 TABLET BY MOUTH THREE TIMES DAILY

Order Start date: 07/23/2007  Order Stop date: 10/21/2007
Refill Start date:  8-12

# HEALTH CARE SERVICES REQUEST FORM (PBSP 7362)

## PART I: TO BE COMPLETED BY THE PATIENT

If you believe this to be an urgent/emergent health care need, contact the correctional officer on duty

REQUEST FOR:   MEDICAL ☐   PSYCHIATRY ☐   MENTAL HEALTH ☐   DENTAL ☐   PHARMACY ☒

NAME: Sanchoval    CDC #: D# 61000    HOUSING: D2 105

PHARMACY REFILL #    *Pharmacy, place labels on back of form*

THE REASON YOU WANT HEALTH CARE. (DESCRIBE YOUR HEALTH PROBLEM AND HOW LONG YOU HAVE HAD THE PROBLEM)

Refill of

OYS SHLL CALciuM 500 MG Rx.# 122087

PATIENT'S SIGNATURE: Alfred Sanchoval    DATE: 8-12-07

## PART II: TO BE COMPLETED BY THE TRIAGE RN/RDA/MTA

| Date & Time Received: | | Received by: | |
|---|---|---|---|
| Reviewed by RN/RDA, Date: | Time: | Signature: | Triage Designation: |

S:

O:    T:    P:    R: 

PBSP PHARMACY INFORMATION
MEDICATION REFILL REQUEST
GRANTED DUE TO THE FOLLOWING CIRCUMSTANCES:
NO CURRENT ORDER:
NO REFILL DUE UNTIL___/___/___
AUTO REFILL MEDS DUE___/___/___
PLEASE REQUEST MEDICAL SERVICES TO
RENEW OR ORDER MEDS IF NEEDED
OTHER:
PROCESSED BY: ___ DATE: ___/___/___

A:

P:

Signature/Date/Time:

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (immediately) | URGENT ☐ (within 24 hours) | ROUTINE ☐ (within 14 calendar days) |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |

| Print/Stamp Name | Signature/Title | Date & Time Completed |
|---|---|---|

## COPAYMENT INFORMATION – TO BE FILLED OUT BY DEPARTMENTAL STAFF

1. ☐ Visit was for an emergency
2. ☐ Visit was for diagnosis or treatment of a communicable disease condition (See Title 17, Chapter 4, Subchapter 1, Section 2500 CCR)
3. ☐ Visit was for mental health services
4. ☐ Visit was a follow-up requested by the clinician.
5. ☐ Visit was for State mandated evaluation or treatment (e.g., Annual TB tests)
6. ☐ Visit was for reception screening and evaluation only
7. ☐ Visit is NOT exempt from co-payment. Send PINK copy to Inmate Trust Office.

**DISTRIBUTION:**
ORIGINAL-Unit Health Record    YELLOW - Pharmacy    PINK - Inmate Trust    GOLDENROD – Inmate/Patient
PBSP 7362 (Rev. 7/03)

| Name: | CDC#: | Housing: | Institution: |
|---|---|---|---|

UNIT D-2
SECURITY HOUSING UNIT
PELICAN BAY STATE PRISON

# HEALTH CARE SERVICES REQUEST FORM (PBSP 7362)

| **PART I: TO BE COMPLETED BY THE PATIENT** |
|---|

If you believe this to be an urgent/emergent health care need, contact the correctional officer on duty

REQUEST FOR:  MEDICAL ☒  PSYCHIATRY ☐  MENTAL HEALTH ☐  DENTAL ☐  PHARMACY ☐

NAME: Sandoval     CDC #: D#61000     HOUSING: D2 105

PHARMACY REFILL # Rx# 127087     *Pharmacy, place labels on back of form*

THE REASON YOU WANT HEALTH CARE. (DESCRIBE YOUR HEALTH PROBLEM AND HOW LONG YOU HAVE HAD THE PROBLEM)

I Submitted A P.B.S.P 7362 foRM To GET A mEdicATion Refill of Oys sHll Calcium THAT was RENEWEd on 7-23-07 FoR CROHNS. How-EVER THE foRM was RETURNED As "No CURRENT ORdER" THis Type of medical malpRACTiCE is Causing UNNECESSARy PAin #ANGUISH.//

PATIENT'S SIGNATURE: Alfred Sandoval     DATE: 8-14-07

**PART II: TO BE COMPLETED BY THE TRIAGE RN/RDA/MTA**

Date & Time Received: 08/15/07 @ 0710     Received by: Blaum

Reviewed by RN/RDA, Date: 08/15/07 Time: 0715   Signature: Blaum   Triage Designation:

S:

O:   T:   P:   R:   BP:   WEIGHT:

THE COMPUTER SHOWS YOU WERE GIVEN 270 TABLETS ON 07/23/07.

Blaumz, R.H.

A:

P:

Signature/Date/Time:

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (immediately) | URGENT ☐ (within 24 hours) | ROUTINE ☐ (within 14 calendar days) |
|---|---|---|---|

REFERRED TO PCP:     DATE OF APPOINTMENT:

Print/Stamp Name     Signature/Title     Date & Time Completed

**COPAYMENT INFORMATION – TO BE FILLED OUT BY DEPARTMENTAL STAFF**
1. ☐ Visit was for an emergency
2. ☐ Visit was for diagnosis or treatment of a communicable disease condition (See Title 17, Chapter 4, Subchapter 1, Section 2500 CCR)
3. ☐ Visit was for mental health services
4. ☐ Visit was a follow-up requested by the clinician.
5. ☐ Visit was for State mandated evaluation or treatment (e.g., Annual TB tests)
6. ☐ Visit was for reception screening and evaluation only
7. ☐ Visit is NOT exempt from co-payment. Send PINK copy to Inmate Trust Office.

**DISTRIBUTION:**
ORIGINAL-Unit Health Record   YELLOW - Pharmacy   PINK - Inmate Trust   GOLDENROD – Inmate/Patient
PBSP 7362 (Rev. 7/03)

PELICAN BAY STATE PRISON SECURITY HOUSING UNIT D-2

| Name: | CDC#: | Housing: | Institution: |
|---|---|---|---|

# HEALTH CARE SERVICES REQUEST FORM (PBSP 7362)

| PART I: TO BE COMPLETED BY THE PATIENT |
|---|

If you believe this to be an urgent/emergent health care need, contact the correctional officer on duty

REQUEST FOR:   MEDICAL ☒   PSYCHIATRY ☐   MENTAL HEALTH ☐   DENTAL ☐   PHARMACY ☐

NAME: _SANDOVAL_          CDC #: _D# 61000_          HOUSING: _D2 105_

PHARMACY REFILL # _____          *Pharmacy, place labels on back of form*

THE REASON YOU WANT HEALTH CARE. (DESCRIBE YOUR HEALTH PROBLEM AND HOW LONG YOU HAVE HAD THE PROBLEM)

_CROHNS FLARE UP AGAIN. LOWER Abdominal pain_
_DIARRHA, mucusy Stools_

PATIENT'S SIGNATURE: _Jose Sandoval_      DATE: _9-9-07_

| PART II: TO BE COMPLETED BY THE TRIAGE RN/RDA/MTA |
|---|

Date & Time Received: _09/11/07  0915_          Received by: _K Garcia_

Reviewed by RN/RDA, Date: _09_   Time: _1135_   Signature: _____   Triage Designation: _E_

S: _Fair with, S/P, Surgerie deardup. ... c Crohns  ① AM._

O:   T: ____   P: ____   R: ____   BP: ____   WEIGHT: _25?._

_Abdomen  V. soft._

A: ____

P: ____

Signature/Date/Time: _K Garcia   09/11/07 @ 1259_

APPOINTMENT SCHEDULED AS:   EMERGENCY ☐ (immediately)   URGENT ☐ (within 24 hours)   ROUTINE ☒ (within 14 calendar days)

REFERRED TO PCP: _No_          DATE OF APPOINTMENT: ____

_J. Flores_          _Garcia, R.N._          _09/11/07 @ 1730_
Print/Stamp Name          Signature/Title          Date & Time Completed

## COPAYMENT INFORMATION – TO BE FILLED OUT BY DEPARTMENTAL STAFF

1. ☐ Visit was for an emergency
2. ☐ Visit was for diagnosis or treatment of a communicable disease condition (See Title 17, Chapter 4, Subchapter 1, Section 2500 CCR)
3. ☐ Visit was for mental health services
4. ☑ Visit was a follow-up requested by the clinician.
5. ☐ Visit was for State mandated evaluation or treatment (e.g., Annual TB tests)
6. ☐ Visit was for reception screening and evaluation only
7. ☐ Visit is NOT exempt from co-payment. Send PINK copy to Inmate Trust Office.

DISTRIBUTION:
ORIGINAL–Unit Health Record     YELLOW - Pharmacy     PINK - Inmate Trust     GOLDENROD – Inmate/Patient
PBSP 7362 (Rev. 7/03)

| Name: | CDC#: | Housing: | Institution: |
|---|---|---|---|

# HEALTH CARE SERVICES REQUEST FORM (PBSP 7362)

| **PART I: TO BE COMPLETED BY THE PATIENT** |
|---|
| If you believe this to be an urgent/emergent health care need, contact the correctional officer on duty |

REQUEST FOR:    MEDICAL ☒    PSYCHIATRY ☐    MENTAL HEALTH ☐    DENTAL ☐    PHARMACY ☐

NAME: Sandoval    CDC #: D"61000    HOUSING: D2  105

PHARMACY REFILL #                                    *Pharmacy, place labels on back of form*

THE REASON YOU WANT HEALTH CARE. (DESCRIBE YOUR HEALTH PROBLEM AND HOW LONG YOU HAVE HAD THE PROBLEM)

CROHNS FLARE UP  LOWER AbdominAL PAIN  DIARRHEA  Bloddy
Stools

PATIENT'S SIGNATURE: X/19c/    DATE: 9 19 07

## PART II: TO BE COMPLETED BY THE TRIAGE RN/RDA/MTA

Date & Time Received: 9/20/07 @ 8795    Received by: ✕ 𝒮

Reviewed by RN/RDA, Date: 9/07 Time: 6 9·9    Signature: ✕ 𝒮 ...    Triage Designation: L

**S:**

| **O:** | **T:** | **P:** | **R:** | **BP:** | **WEIGHT:** |
|---|---|---|---|---|---|

**A:**

**P:**

Signature/Date/Time: ✕ 𝒮 ..... 09/20/07 @ 1205

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (immediately) | URGENT ☐ (within 24 hours) | ROUTINE ☐ (within 14 calendar days) |
|---|---|---|---|
| REFERRED TO PCP:  No | | DATE OF APPOINTMENT: | |

J. Flowers    ✕ 𝒮 ... L.H.    09/20/07 6 120 5
Print/Stamp Name          Signature/Title                    Date & Time Completed

## COPAYMENT INFORMATION – TO BE FILLED OUT BY DEPARTMENTAL STAFF

1. ☐ Visit was for an emergency
2. ☐ Visit was for diagnosis or treatment of a communicable disease condition (See Title 17, Chapter 4, Subchapter 1, Section 2500 CCR)
3. ☐ Visit was for mental health services
4. ☑ Visit was a follow-up requested by the clinician.
5. ☐ Visit was for State mandated evaluation or treatment (e.g., Annual TB tests)
6. ☐ Visit was for reception screening and evaluation only
7. ☐ Visit is NOT exempt from co-payment. Send PINK copy to Inmate Trust Office.

**DISTRIBUTION:**
ORIGINAL-Unit Health Record    YELLOW - Pharmacy    PINK - Inmate Trust    GOLDENROD – Inmate/Patient
PBSP 7362 (Rev. 7/03)

| Name: | CDC#: | Housing: | Institution: |
|---|---|---|---|

# HEALTH CARE SERVICES REQUEST FORM (PBSP 7362)

| PART I: TO BE COMPLETED BY THE PATIENT |
|---|

If you believe this to be an urgent/emergent health care need, contact the correctional officer on duty

REQUEST FOR:    MEDICAL ☒    PSYCHIATRY ☐    MENTAL HEALTH ☐    DENTAL ☐    PHARMACY ☐

NAME: Saldivar C          CDC #: 161000          HOUSING: D2 105

PHARMACY REFILL #                              *Pharmacy, place labels on back of form*

THE REASON YOU WANT HEALTH CARE. (DESCRIBE YOUR HEALTH PROBLEM AND HOW LONG YOU HAVE HAD THE PROBLEM)

I FAinTed from a CROHNS FLARE up
REQUESTed MEdical To TAKE VITALs & WAS deNed
cHills, SHAKES.

PATIENT'S SIGNATURE: A. Saldivar          DATE: 10-2-07

| PART II: TO BE COMPLETED BY THE TRIAGE RN/RDA/MTA |
|---|

Date & Time Received: 10/02/07 @ 1120          Received by: R Darr

Reviewed by RN/RDA, Date: 10/02/07 Time: 1155    Signature: R Darr    Triage Designation: E

S:

| O: | T: | P: | R: | BP: | WEIGHT: |
|---|---|---|---|---|---|

A:

P:

Signature/Date/Time: R    10/02/07  1:20

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (immediately) | URGENT ☐ (within 24 hours) | ROUTINE ☐ (within 14 calendar days) |
|---|---|---|---|
| REFERRED TO PCP: No | | DATE OF APPOINTMENT: | |

J. Flores          R. Darr R.N.          10/02/07 @ 1235
Print/Stamp Name          Signature/Title          Date & Time Completed

## COPAYMENT INFORMATION – TO BE FILLED OUT BY DEPARTMENTAL STAFF

1. ☐ Visit was for an emergency
2. ☐ Visit was for diagnosis or treatment of a communicable disease condition (See Title 17, Chapter 4, Subchapter 1, Section 2500 CCR)
3. ☐ Visit was for mental health services
4. ☑ Visit was a follow-up requested by the clinician.
5. ☐ Visit was for State mandated evaluation or treatment (e.g., Annual TB tests)
6. ☐ Visit was for reception screening and evaluation only
7. ☐ Visit is NOT exempt from co-payment. Send PINK copy to Inmate Trust Office.

DISTRIBUTION:
ORIGINAL-Unit Health Record          YELLOW - Pharmacy          PINK - Inmate Trust          GOLDENROD – Inmate/Patient
PBSP 7362 (Rev. 7/03)

| Name: | CDC#: | Housing: | Institution: |
|---|---|---|---|

# EXHIBIT COVER PAGE $E$

EXHIBIT

Description of this Exhibit:

Number of pages to this Exhibit: ___/O___ pages.

JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☒ United States District Court
☐ State Circuit Court
☐ United States Supreme Court
☐ Grand Jury

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALFRED ARTHUR SANDOVAL                    NO. _____

                    PLAINTIFF

        VS.                               DECLARATION OF FELLOW PRISONER
                                          IN SUPPORT OF PLAINTIFFS COMPLAINT
JAMES TILTON, DIRECTOR OF THE CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
ROBERT A. HOREL, WARDEN OF PELICAN BAY
STATE PRISON; et. al.

                    DEFENDANTS

I, JAVIER MARTINEZ NO. T-62995, DO HEREBY STATE THE FOLLOWING:

1.) THAT I AM A PRISONER CONFINED AT PELICAN BAY STATE PRISON (P.B.S.P.) AND
CURRENTLY HOUSED IN CELL #D2-106 IN UNIT 2 OF "D" FACILITY SECURITY HOUSING UNIT (SHU)

2.) THAT AS A RESULT OF S.H.U. WIDE HOUSING PROGRAM CHANGES INITIATED IN
EARLY 2006. IN FEBRUARY OF 2006 I WAS MOVED FROM CELL C2-120 "C" FACILITY
S.H.U. TO MY CURRENT HOUSING

3.) I, WAS ONE OF HUNDREDS OF S.H.U. PRISONERS SINGLED OUT FROM P.B.S.P.-S.H.U.
UNITS AND REHOUSED IN UNITS 1-4 OF "D" FACILITY AND OFFICIALS THUS CREATING WHAT
IS NOW KNOWN AS THE "GANG" CORRIDOR.

4.) AS A RESULT OF THE S.H.U.-WIDE CHANGE IN HOUSING PROGRAM, NEW POLICIES
WERE CREATED FOR THE MANAGEMENT OF THE GANG CORRIDOR. THESE NEW
POLICIES ARE CONTROLLED BY THE I.G.I. UNIT. AND UNDER INFORMATION AND BELIEF
I.G.I. PERSONELL ARE MEMBERS OR ASSOCIATES OF THE CLANDESTINE "GREEN WALL"
CORRECTIONAL PRISON GANG.

5.) THE NEW POLICIES NOW IN USE FOR THE GANG CORRIDOR ARE VISTING,
MAIL, MEDICAL VISITS, AND THE GENERAL MOVEMENT OF GANG CORRIDOR
PRISONERS TO APPOINTMENTS.

6.) I PERSONALLY AM AWARE THAT ON OR ABOUT SEPTEMBER 14, 2006 PRISONER SANDOVAL WAS IN NEED OF MEDICAL ATTENTION. ON THE MORNING OF, CONTROL BOOTH STAFF LET ME OUT OF MY CELL IN ORDER TO USE MY NASAL SPRAY AT THE POD DOOR. WHEN GOING BY SANDOVAL'S CELL, I GREETED HIM AS I DO EVERY DAY.

AS I GREETED HIM I NOTICED SANDOVAL WAS HOLDING HIMSELF UP AGAINST THE CELL DOOR. I ASKED HIM IF HE WAS ALRIGHT, HE LOOKED PALE, HE STATED HE HAD FAINTED AND NEEDED MEDICAL ATTENTION AND ASKED ME TO NOTIFY STAFF.

7.) HOUSING STAFF K. NEELY AND D. THOM CAME TO THE POD DOOR I LET THEM KNOW SANDOVAL HAD FAINTED AND NEEDED MEDICAL ATTENTION. I RETURNED BACK TO MY CELL. CONTROL BOOTH STAFF OPENED SANDOVAL'S CELL I WITNESSED HIM STAGGER TO THE POD DOOR AND WAS TAKEN TO THE "D" FACILITY MEDICAL CLINIC.

8.) UPON HIS RETURN TO HIS ASSIGNED CELL I ASKED SANDOVAL WHAT HAD HAPPENED. WHAT THEY (MEDICAL STAFF) DID FOR HIM. SANDOVAL STATED TO ME HE WAS PLACED IN A WHEEL CHAIR TAKEN TO THE MEDICAL CLINIC AND KEPT THERE UNTIL HIS VITALS STABILIZED AND THAT WAS IT.

9.) I HAVE BEEN AWARE OF SANDOVAL'S SINUS AND CROHN'S DISEASE PROBLEMS SINCE MOVING IN NEXT DOOR TO HIM. HE HAS HAD TO EAT FOODS THAT DISAGREE WITH HIM AND SUFFERS THROUGH INTESTINAL PAINS AS A RESULT OF. SANDOVAL HAS MADE NUMEROUS ATTEMPTS TO GET PROPER MEDICAL TREATMENT AS WELL AS TO BE PUT ON A SPECIAL DIET BUT TO NO AVAIL.


VERIFICATION

I HAVE READ THE AFOREMENTIONED AND STATE THEM TO BE TRUE AND CORRECT. AND THIS I DECLARE UNDER THE PENALTY OF PERJURY AND THE LAWS OF THESE UNITED STATES. EXECUTED AT. P. B. S.P. CRECENT CITY. CALIF.

DATED _1-30-08_ _____ 2008 /s/ _Javier Martinez_

DECLARANT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALFRED ARTHUR SANDOVAL
                    PLAINTIFF

            VS.

JAMES TILTON DIRECTOR OF THE CALIFORNIA DEPARTMENT
OF CORRECTIONS AND REHABILITATIONS
ROBERT A. HOREL, WARDEN OF PELICAN BAY STATE
PRISON ET.AL.

NO. _____

DECLARATION OF PLAINTIFF IN
SUPPORT OF 42 USC § 1983

I, ALFRED A. SANDOVAL, DO HEREBY STATE THE FOLLOWING

1.) THAT I AM A PRISONER CONFINED AT PELICAN BAY STATE PRISON (PBSP) AND HAVE BEEN CONFINED THERE IN SINCE SEPTEMBER 11, 2003 AND CURRENTLY HOUSED IN D2-105 IN UNIT 2 OF "D" FACILITY SECURITY HOUSING UNIT (SHU)

2.) THAT AS A RESULT OF SHU-WIDE HOUSING PROGRAM CHANGES INITIATED IN EARLY 2006, HUNDREDS OF SHU PRISONERS WERE SINGLED OUT FROM PBSP-SHU UNITS AND REHOUSED UNDER THE NEWLY CREATED "GANG" CORRIDOR THAT CONSISTS OF UNITS 1-4 OF "D" FACILITY SHU

3.) AS A RESULT OF THE CREATION OF THE GANG CORRIDOR NEW POLICIES WERE ESTABLISHED FOR THE MANAGEMENT OF THE CORRIDOR AND IS UNDER THE CONTROL OF THE I.G.I. UNIT. THE NEW POLICIES IN USE CONSIST OF: VISITING, MEDICAL VISITS, MAIL CENSORSHIP AND THE MOVEMENT IN GENERAL OF GANG CORRIDOR PRISONERS TO PREVENT CONTACT WITH OTHER SHU PRISONERS.

4.) UNDER INFORMATION AND BELIEF THERE EXISTS WITHIN THE C.D.C.R. A CLANDESTINE CORRECTIONAL OFFICERS PRISON GANG KNOWN AS THE GREEN WALL. IN 1998 THE STATE SENATE CONDUCTED HEARINGS ON THE INTERNAL PROBLEMS IN THE C.D.C.R NAMELY CODE OF SILENCE. IN 1999 THE OFFICE OF INSPECTOR GENERAL REFUTED THE EXISTENCE OF A CORRECTIONAL OFFICERS ORGANIZATION CALLED THE "GREEN WALL" AND IN JANUARY 2004 THE CALIFORNIA SENATE SELECT COMMITTEE ON STATE CORRECTIONAL SYSTEM HEARD TESTIMONY FROM GUARDS DETAILING THE FORMATION OF A CORRECTIONAL OFFICERS GANG-LIKE ORGANIZATION, AND IT IS MY BELIEF THAT

1.

1   THIS GREEN WALL IS EMBEDDED AT PELICAN BAY STATE PRISON WITH MEMBERS IN THE IGI
2   UNIT.

3   5.) IN 2000 I WAS DIAGNOSED AT SAN QUENTIN WITH HAVING CROHNS DISEASE.
4   I WAS TRANSFERED TO P.B.S.P. IN NOVEMBER 2001 AND SUBSEQUENTLY TRANSFERED TO
5   THE LOS ANGELES COUNTY JAIL IN JANUARY 2002 FOR RETRIAL. WHILE THERE FOR APPROXIM-
6   ATELY 18-20 MONTHS I WAS PLACED ON A SPECIAL DIET AND MEDICATIONS TAILORED FOR
7   MY CROHNS FLARE-UPS.

8   6.) IN ADDITION TO MY CROHNS DISEASE I HAVE A 27 YEAR DOCUMENTED HISTORY
9   OF CHRONIC SINUS ALLERGIES AND INFECTIONS. IN 2000 WHILE AT SAN QUENTIN DURING
10  CORRECTIVE NOSE SURGERY I ALSO HAD MY NASAL CAVITY SCRAPED. THE OPERATING SURGEON
11  TOLD ME HE HAD TO SCRAPE THE CAVITY DUE TO HAVING FOUND ROCK HOLES. AND THAT I
12  WOULD, IN THE FUTURE, NEED TO HAVE MORE SCRAPINGS FOR INFECTIONS.

13  7.) MY REGULAR MAIL AND LEGAL MAIL, INCOMING AND OUTGOING, HAS BEEN CONTINUOSLY
14  DELAYED, LOST OR DISAPPROVED. LEGAL MAIL HAS BEEN OPENED OUTSIDE OF MY PRESENCE. THESE INTERFERENCES
15  WITH THE MAIL IS BY THE GREEN WALL EMBEDDED IGI UNIT. WHEN MAIL, VIA PRISON REGULATIONS IS
16  DEEMED "DISAPPROVED" REGULATIONS CALL FOR THE ISSUANCE OF A. C.D.C.R. 1819 FORM. THAT NOTIFIES
17  THE PRISONER ① THE CONTENTS OF WHATS DISAPPROVED ② THE NAME OF CORRESPONDANT, AND
18  ③ APPEAL RIGHTS. HOWEVER, WHEN GREEN WALL IGI STAFF DISAPPROVE MAIL THEY WILL ISSUE A
19  CDCR 128 B CHRONO ASSERTING PRISON GANG ACTIVITY AS THE BASIS FOR DISALLOWING MAIL
20  WHEN TIME AND AGAIN THE MAIL IN QUESTION HAS NOTHING TO DO WITH GANG ACTIVITY. WHEN A
21  CDCR 128 B CHRONO IS ISSUED TO ME, THE SAME IS SENT TO MY CORRESPONDANT. BUT THE IGI
22  STAFF NEITHER ADVISE OR PROVIDE MY CORRESPONDANT THAT THEY HAVE A RIGHT TO APPEAL THE
23  DISAPPROVAL NOR THE FORMS FOR INITIATING AN APPEAL. UNDER INFORMATION AND BELIEF THE
24  I.G.I ISSUES THE C.D.C.R 128 B CHRONO(S) OVER THE C.D.C.R 1819 DISAPPROVAL FORM(S) BECAUSE
25  THE ASSERTIONS THEY REFERENCE (GANG ACTIVITY) REMAINS AS A PERMANANT PART OF MY PRISON
26  FILE. THIS IS TANTAMOUNT TO GENERATING FALSE INFORMATION TO BE USED AT A FUTURE TIME TO
27  JUSTIFY CONTINUED PLACEMENT IN SHU UNDER ADMINISTRATIVE SEGREGATION. I ALSO BELIEVE THE
28  IGI STAFF VIA THE C.D.C.R. 128 B CHRONO(S) ARE ATTEMPTING TO DISCOURAGE MY CORRESPONDANTS

2.

1   From Communicating with me by Threating them with Violations of the Law.

2   8.) I have had to file Numerous 602 Appeals Concerning the Green wall IGI staff
3   Abuse of Authority in Regards to my mail. Often when I file a 602 the Appropriate Appeal
4   Process is not followed, The Appeal will be By Passed to the Next Levels without
5   Affording me the Opportunity to have the claims addressed. I have had 602s Rejected
6   when they are Appealing the Contents of a C.D.C.R 128 B chrono under Violations of
7   the Information Practices Act For False Documentation. The Rejections are Based on
8   the error that 128 B chrono's are not Appealable. whats more 602s Filed on IGI
9   I have had Cancelled based on False Reasons.

10   9) On February 2, 2007 A Task Force of Special C.D.C.R Units Converged on P.B.S.P
11   And Conducted Property Searches, Photographed And video Taped myself As well as other Selected
12   Prisoners. I was escorted to the Visiting Room Holding Cells By SGT. D. Barnebury and C/o
13   John Doe  c/o Parker Video Taped me being escorted into the Visiting Area And Another
14   C/o John Doe Photographed me Upon Entering And being Placed in Cell #13. Some 40
15   minutes later  C/o J. Dimmick. Reyes And a C/o John Doe Attempted to Take Additional
16   Photographs from Prisoners, I asked C/o Reyes if that was an order Handed down or were
17   they Just making things up As they went Along Because I Had Already Had my Photo Taken.
18   C/o Reyes Responded the Photo's were for His Personal Collection. I Refused to Comply
19   Because the Additional Photo's were for C/o Reyes Personal Use. C/o Reyes, Perez.
20   Thmayo And Parker Tried to Coerce Prisoner's into Agreeing to More Photos By
21   Telling them they And their Property would be Returned To their Cells. And
22   those who Refused would Remain in the Holding Cells All day. Nearly All the Prisoners
23   And myself Refused.

24   10.) About Ten minutes later C/o Reyes, Dimmick And a C/o John Doe Ordered
25   me to "cuff up" I Protested that I would not Take More Photos. C/o Reyes Stated
26   we're Taking you Home. I was escorted out of the Holding Cell And out of the
27   Visiting Area into the Adjacent Corridor Entrance. There were More Then (15)
28   C/o's on Both Sides of the Corridor. I was Ordered to "Hold up" I Stated "DAMN

3.

1 THE GREEN WALL IS fully REPRESENTED" AT THAT MOMENT SGT. BEESON Took my left
2 Elbow AND forcefully TURNED ME Towards THE RIGHT WALL. I SAW Two C/o's W TH HAND
3 HELD Video CAMERAS filming THE EVENT AND C/o PARKER WAS Holding A DIGITAL CAMERA.
4 I AGAIN STATED "I AM NOT TAKING ANYMORE PICTURES" THAT WAS WHEN I WAS Physically
5 ATTACKED WHICH STARTED WITH SGT. D.BARNEBURG APPlying A CHOKE Hold AND slamming ME
6 DOWN ON THE CONCRETE floor, I WAS HANDcuffed AND Could NOT SUPPORT my fall C/o's
7 BEESON REYES, COUNTESS, BUCHANAN, PUENTE, PEREZ, TAMAYO AND BISHOp PARTICIpATED IN THE
8 ATTACK. THEy WERE Pulling ON my ARMS, legs AND PlacING THEIR KNEES ON my legs,
9 STOMACH AND CHEST AT ONE POINT my HEAD SlammED down ON THE CONCRETE AND
10 BOUNCINg off THE Floor. I GlancED down TOWArds my Legs WHEN C/o COUNTESS STRUCK
11 ME IN THE FACE CAusING my HEAD To AgAIN BOUNCE off THE floor.

12    11.) SGT. BARNEBURG Forcefully lANDED His KNEE ON my HEAD CAUSINg my NECK To MAKE A
13 PoPPINg SOUND. AT THE SAME TIME C/o BUCHANAN JUMPED on my RIGHT KNEE WHICH WAS
14 BENT AND lAyINg over my Left leg CAusINg A shARP PAIN To my KNEE AND lower BACK.
15 SGT. D BARNEBURG REplACED His KNEE from THE left side of my fOREHEAD WITH His HAND forcing
16 my HEAD AgAINST THE FLOOR. SGT. BARNEBURG's HAND WAS REplACED WITH A KNEE of A C/o
17 JOHN DOE WHIle SGT. BARNEBURG RIppED OPEN my T-SHIRT down To THE WAIST AND ORDERED
18 C/o PARKER To TAke PHOTO's AND ORdERED THE C/o JOHN DOE To BACK His KNEE off THE side
19 of my FOREHEAD So THE CAMARA WOuld CAPTURE my FACE. I BELIEVE THE Video TAPINg
20 AND CAMARA PHOTO's CApTUREd ME GRIMANCINg IN PAIN. SEVERAL of THE ATTACKINg
21 I.G.I STAFF. I HAVE filED 602's ON ClAIMINg As GREEN WAll MEMBERS oR ASSOCIATES
22 THEy HAVE INTERfERED WITH my mAIL, HAVE FAlSIFIED STATEMENTS To SuppoRT THEIR
23 ACTIONS AND HAVE INTERfEREd WITH my APPEAl RIGHTS.

24    12.) I WAs lifTEd To my feet By C/o SGT's BEESON AND BARNEBURG, my legs BUCKlED
25 AT FIRST. I WAS THEN TAKEN To my HousINg UNIT AND PlacEd IN A HoldINg cell So THAT AN
26 M.T.A. Could CHECk ME medicAlly. M.T.A C. RICHCKEEK AskEd ME ABouT THE TORN T-SHIRT
27 AND I Told HER "SGT. D. BARNEBURG RIppEd iT off" AND THEN SHE AskEd WHAT HAppEN
28 AND I Told HER THAT "I WAS JumpEd By THE GREEN WAll WHILE I WAS HANDcufFEd AND

4.

1  SLAMMED TO THE GROUND, JUMPED ON AND PUNCHED IN THE FACE." THE MTA REQUESTED A
2  NECK BRACE AND BACK BOARD AND THAT I BE TAKEN TO THE FACILITY CLINIC. I WAS EXAMINED
3  BY FNP RISENHOOVER AND ORDERED TO THE PRISON INFIRMARY WHERE DR. WAHIDULLAH
4  ORDERED I BE TAKEN TO SUTTER COAST HOSPITAL WHERE DR. S. SAUNDERS EXAMINED
5  ME, TOOK X-RAYS AND C.T. SCAN AND PRESCRIBED MEDICATION FOR NECK AND MUSCLE
6  STRAINS AND WAS RETURNED TO MY ASSIGNED CELL.

7        13.) ON THE EVENING OF FEBRUARY 2, 2007, LT. PEDROSO ASKED IF I WANTED TO
8  PARTICIPATE IN A VIDEO INTERVIEW FOR MY COMPLAINT OF EXCESSIVE USE OF FORCE. I AGREED.
9  LT. PEDROSO, A SGT. AND TWO C/O's ESCORTED ME TO HIS OFFICE IN C-FACILITY. I WAS
10  IN FEAR OF BEING SET UP FOR MORE ASSAULTS SO I ASKED IF THIS WAS ANOTHER SET-UP
11  BY THE GREEN WALL. THE LT. RESPONDED "NO, THIS IS AN INTERVIEW WHICH WILL BE VIDEO
12  TAPED". I EXPLAINED WHAT HAPPENED FOR THE CAMERA AND NOTED THE INJURIES ON MY
13  HEAD AND THE LT. DIDN'T KNOW ABOUT THOSE INJURIES AND I TOLD HIM THATS BECAUSE I
14  WAS ON THE BACK BOARD WITH MY HEAD TAPED DOWN. AN MTA WAS CALLED AND
15  SHE DOCUMENTED THE INJURIES, (LUMPS AND LACERATIONS) TO MY HEAD AND BODY. I
16  ASKED THE LT. IF THE VIDEO WOULD DISAPPEAR TO PROTECT THE GREEN WALL LIKE ALL
17  EVIDENCE IN THE PAST HAS, HE SAID "NO, IT'LL BE ON TAPE WHEN WE NEED IT" THE
18  INTERVIEW WAS ENDED AND I WENT BACK TO MY CELL.

19        14.) ON FEBRUARY 5, 2007 I FILED A 602 FOR SUBJECTION TO EXCESSIVE USE OF
20  FORCE BY THE GREEN WALL OF THE IGI UNIT IN RETALIATION FOR FILING 602? IT IS MY
21  BELIEF THAT I WAS ASSAULTED FOR FILING NUMEROUS 602'S ON IGI NOT BECAUSE
22  I REFUSED TO TAKE MORE PHOTOS. I BELIEVE THIS BECAUSE I WAS SINGLED OUT FROM
23  ALL OTHER PRISONERS AND THE GREEN WALL IGI STAFF THAT ATTACKED ME, I
24  HAVE FILED 602'S ON THEM

25        15.) ON FEBRUARY 8, 2007 I WAS ASKED IF I WANTED TO REDO THE VIDEO INTERVIEW
26  BECAUSE THE FIRST TAPE-DISK HAD GOTTEN "MESSED-UP". ACTUALLY THE FIRST TAPED INTERVIEW
27  WAS ON A DISK THAT DOESN'T PLAY ON ALL DISK PLAYERS. AT THE SECOND INTERVIEW I AGAIN
28  EXPLAINED THE ASSAULT AND MY INJURIES, SUBSEQUENTLY, THE LT. ADVISED ME I WAS TO BE

1  CHARGED WITH ATTEMPTED BATTERY ON A PEACE OFFICER I TRIED TO EXPLAIN HOW COULD
2  THAT BE WHEN IT WAS ME WHO WAS ASSAULTED WHILE I WAS HANDCUFFED. I STATED THAT
3  I WAS NOT SURPRISED THAT THE FIRST TAPED INTERVIEW HAD "MESSED UP" CAUSE THE GREEN
4  WALL HAS DEEP ROOTS AT PELICAN BAY PRISON. I WAS RETURNED BACK TO MY CELL AND ON
5  FEBRUARY 16, 2007 I WAS ISSUED A CDCR 115 RULE VIOLATION REPORT IT IS MY BELIEF
6  THAT THIS RVR WAS IN RETALIATION FOR THE 602 I FILED ON THE EXCESSIVE USE OF FORCE
7  AND ALSO A COUNTER MOVE TO MY COMPLAINT IN ORDER TO JUSTIFY THEIR ACTIONS

8       16.) AFTER FEBRUARY 2, 2007 I SUBMITTED NUMEROUS SICK CALL REQUEST FORMS
9  ASKING FOR MEDICAL ATTENTION AND PHYSICAL THERAPY FOR THE INJURIES ALL WERE
10  DENIED BY FNP S. RISENHOOVER AND THE "BOARD"

11       17.) ON FEBRUARY 21, 2007 I WENT BEFORE THE INSTITUTIONAL CLASSIFICATION COMMITTEE
12  (I C C) FOR MY ANNUAL REVIEW AND I REQUESTED THAT MY ISSUES BE NOTED ON THE 128
13  CHRONO. I EXPLAINED THAT I HAD BEEN ATTACKED BY GREEN WALL MEMBERS AND SUFFERED
14  INJURIES AND BELIEVED THE INCIDENT WOULD BE COVERED UP BY THE ADMINISTRATION OF
15  P.B.S.P. CAPT. C KELLY STATED " THE DEPARTMENT HAS A PROCESS AND ARE INVESTIGATING. IT TAKES
16  TIME" I EXPLAINED THAT THE 602 APPEAL SYSTEM DOES NOT WORK BECAUSE I HAD FILED A
17  602 ON SPECIAL AGENT DEVAN HAWKES THE LEADER OF THE I G I UNIT FOR FABRICATING
18  INFORMATION TO KEEP ME IN THE SHU. BUT THE 602 WAS NEVER EVEN ACKNOWLEDGED WHICH
19  IS ROUTINE AT P.B.S.P

20       18.) IN NOVEMBER 2006 I WENT TO DOCTOR LINE FOR CHRONIC ALLERGIES THAT HAD
21  BECOME A SINUS INFECTION. I REQUESTED TO BE EXAMINED BY A EYE, EAR, NOSE AND THROAT
22  SPECIALIST THE FNP SUE RISENHOOVER STATED THAT I WOULD FIRST HAD TO GO THROUGH A (30)
23  THIRTY DAY REGIMEN OF MEDICATIONS AND NASAL SPRAYS BEFORE SHE WOULD RECOMMEND
24  A SPECIAL CONSULT TO THE "BOARD".

25       19.) ON JANUARY 7 2007 I WAS TAKEN AGAIN TO DOCTOR'S LINE BECAUSE I HAD
26  COMPLETED THE REGIMEN OF MEDICATIONS AND NASAL SPRAYS AND STILL HAD SINUS PAIN
27  THE FNP. S. RISENHOOVER ORDER ME TO DO ANOTHER (30) THIRTY DAY REGIMEN OF THE SAME
28  MEDICATIONS AND NASAL SPRAYS. ON FEBRUARY 10, 2007 I FILED A 602 FOR INADEQUATE

6.

1    medical care and denial of requests to see specialist.

2    20.) On March 5, 2007 I spoke to RN J. Flowers and complained of the

3 neck pain and soreness and of the sinus pain. On March 14, 2007 I went to Doctors

4 line for "Follow up" on the neck injury and sinus infection. The FNP S. Risenhoover

5 stated "the antibiotics should've done the job for the infection". On April 24, 2007

6 at Doctors line for continued sinus infection. The FNP. S. Risenhoover prescribed

7 more Amoxicillen and Mucinex. I again requested to see a specialist because

8 the sinus pain was so severe that the pressure caused my teeth to hurt. The F.N.P

9 Sue Risenhoover Denied the Request.

10    21) On May 1, 2007 I spoke with RN J. Flowers explaining I had sinus pain

11 and the neck injury was so bad that I could not sleep. On May 8, 2007 I went to

12 Doctors line and again requested to see a specialist for the sinus infections and

13 get Physical Therapy for my neck. And again FNP Sue Risenhoover Denied my request

14 on May 29, 2007 while at Doctors line for chronic care I again complained of

15 the sinus pain and requested to see a specialist and again FNP Sue Risenhoover

16 Denied it. She explained that the "Board" had also Denied Physical Therapy for

17 the neck injury

18    22.) On June 26, 2007 I went to Doctors line for the sinus pain and again

19 requested to see a specialist and again was Denied by FNP Sue Risenhoover.

20    23.) On July 12, 2007 I requested medical attention for severe sinus pain

21 and pressure behind the left eye I was told to submit a sick call form. On July

22 23, 2007 I went to Doctors line for sinus pain and again requested to see

23 a specialist FNP Sue Risenhoover Denied it. On August 24, 2007 at

24 Doctors line for chronic care FNP Sue Risenhoover examined my sinus I explained

25 about the pressure so severe my teeth hurt and again requested to see a

26 specialist which was Denied. On August 31, 2007 at Doctors line FNP Sue

27 Risenhoover again Denied my request to see specialist and again on November

28 13 and 26 FNP Risenhoover Denied my requests to see a sinus specialist

1          VERIFICATION

2      I HAVE READ THE AFOREMENTIONED AND STATE THEM TO BE TRUE

3  AND CORRECT AND THIS I DECLARE UNDER THE PENALTY OF PERJURY

4  AND THE LAWS OF THESE UNITED STATES

5      EXECUTED AT PELICAN BAY STATE PRISON CRESCENT CITY CALIFORNIA

6  DATED 1-30-08                    s/ Vinod Sandoval

7                                      DECLARANT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              8.

NAME: _AlFRED Sandoval_

CDC NO: _D"61000_ HOUSING: _D2 105_

PELICAN BAY STATE PRISON
P.O. BOX 7500
CRESCENT CITY, CA 95532

# CONFIDENTIAL LEGAL MAIL

PELICAN BAY STATE PRISON
5905 Lake Earl Dr
Crescent City CA 95532





UNITED STATES POSTAGE
PITNEY BOWES
02 1M
0004217566        $ 04.90⁰
                  FEB 04 2008
MAILED FROM ZIP CODE 95531

# RECEIVED

FEB - 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

U.S. Northern Dist. of Ca.
U.S. Courthouse
450 Golden Gate Ave.
San Francisco, Ca. 94102-3483