IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALFRED ARTHUR SANDOVAL,

PLAINTIFF

VS.

JAMES TILTON, DIRECTOR OF THE CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION;
ROBERT A. HOREL, WARDEN OF PELICAN BAY
STATE PRISON; et. al.

DEFENDANTS

NO. C 08-0865 JSW (PR)

FIRST AMENDED COMPLAINT PER
RULE 15 (a) OF THE FEDERAL
RULES OF CIVIL PROCEDURE

**RECEIVED**

JUL 3 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## I. JURISDICTION

1. THIS ACTION IS BROUGHT PURSUANT TO 42 USC SECTION 1983 TO REDRESS THE DEPRIVATIONS BY DEFENDANTS ACTING UNDER COLOR OF AUTHORITY AND UNDER OFFICIAL AND INDIVIDUAL CAPACITY OF RIGHTS SECURED BY THE UNITED STATES CONSTITUTION, CALIFORNIA CONSTITUTION AND LAW.   JURISDICTION IS BASED UPON 28 USC SECTIONS 1331 AND 1343.   THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER THE STATE CLAIMS PURSUANT TO 28 USC SECTION 1367.   PLAINTIFF SEEKS MONETARY DAMAGES PURSUANT TO 28 USC SECTION 1343 AND DECLARATORY RELIEF PURSUANT TO 28 USC SECTIONS 2201 AND 2202. THE UNLAWFUL ACTS AND PRACTICES ALLEGED OCCURED PRIMARILY WITHIN THIS JUDICIAL DISTRICT AND THE MAJORITY OF DEFENDANTS RESIDE WITHIN THIS DISTRICT, 28 USC SECTION 1391 (b).

## II. PARTIES

2. PLAINTIFF, ALFRED ARTHUR SANDOVAL IS AT ALL TIMES MENTIONED HEREIN A PRISONER OF THE STATE OF CALIFORNIA AND IN THE CUSTODY OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR).   AND CURRENTLY CONFINED AT PELICAN BAY STATE PRISON (PBSP) AND HOUSED IN A SECURITY HOUSING UNIT (SHU) UNDER ADMINISTRATIVE SEGREGATION (AD. SEG.)

3. DEFENDANT, JAMES TILTON IS THE DIRECTOR OF THE CDCR AND LEGALLY RESPONSIBLE FOR THE OVERALL OPERATION OF THE CDCR AND EACH INSTITUTION UNDER ITS JURISDICTION.

4. DEFENDANT, ROBERT A. HOREL IS THE WARDEN OF PBSP AND IS THE LEGAL CUSTODIAN OF PLAINTIFF AND LEGALLY RESPONSIBLE FOR THE DAILY OPERATION OF PBSP AND WELFARE OF ITS PRISONERS.

1. 5. DEFENDANT, C. SCAVETTA IS AN ASSOCIATE WARDEN (A.W.) AT PBSP AND IN THAT CAPACITY AT ALL

2. RELEVANT TIMES MENTIONED HEREIN WAS ACTING AS SUBORDINATE TO THE WARDEN, AND OVERSAW THE

3. OPERATIONS REGARDING THE S.H.U.

4. 6. DEFENDANT, R. MARQUEZ IS A CAPTAIN (CAPT.), UNDER INFORMATION AND BELIEF, IN THE OFFICE

5. OF CORRECTIONAL SECURITY (O.C.S.), FORMALLY THE STATE SECURITY UNIT (S.SU.) OF THE CDCR AND IN THAT

6. CAPACITY WAS IN CHARGE OF THE SPECIAL OPERATIONS TASK FORCE AT PBSP ON FEBRUARY 2, 2007 AND

7. RESPONSIBLE FOR ALL SUBORDINATES UNDER HIM.

8. 7. DEFENDANT, R. PIMENTEL IS A CAPT. ASSIGNED TO THE DIRECTOR'S LEVEL OF APPEAL AND IN THAT

9. CAPACITY IS AN APPEALS EXAMINER ON BEHALF OF THE DIRECTOR.

10. 8. DEFENDANT, J. F. PEROSO IS A LIEUTENANT (LT.) IN THE CDCR AND ASSIGNED TO PBSP "C"

11. FACILITY AND IN THAT CAPACITY IS RESPONSIBLE FOR SUBORDINATES UNDER HIM.

12. 9. DEFENDANT, R.R. WESH IS A LT. IN THE CDCR AND IN THAT CAPACITY, UNDER INFORMATION AND

13. BELIEF, WAS RESPONSIBLE FOR SUBORDINATES UNDER HIM AND THE WELFARE OF PRISONERS DURING THE

14. FEBRUARY 2, 2007 SPECIAL OPERATION TASK FORCE, AND IS SEMI-RETIRED).

15. 10. DEFENDANT, O. HAWKES, UNDER INFORMATION AND BELIEF HAS HELD SEVERAL SUPERVISORY

16. POSITIONS AT PBSP, INCLUDING SUPERVISOR OF THE I.G.I. UNIT [2] AND IN THAT CAPACITY HIS PRIMARY JOB

17. CONCERN IS PRISON GANGS AND INSTITUTIONAL SECURITY.

18. 11. DEFENDANT, G. KELLY IS A CAPT. IN THE CDCR ASSIGNED TO PBSP "D" FACILITY AND IN THAT

19. CAPACITY, UNDER INFORMATION AND BELIEF OVERSEES THE DAILY OPERATIONS OF THAT FACILITY AND IS

20. RESPONSIBLE FOR SUBORDINATES UNDER HIM.

21. 12. DEFENDANT, C. HALL IS A CAPT. ASSIGNED TO THE DIRECTOR'S LEVEL OF APPEAL AND IN THAT

22. CAPACITY IS AN APPEALS EXAMINER ON BEHALF OF THE DIRECTOR.

23. 13. DEFENDANT, D. BARNEBURG IS A SARGENT (SGT.) ASSIGNED TO THE PBSP - I.G.I. UNIT AND

24. IN THAT CAPACITY, UNDER INFORMATION AND BELIEF, HIS PRIMARY JOB CONCERN IS PRISON GANGS AND

25. SECURITY. ALSO IS A MEMBER OR ASSOCIATE OF THE CLANDESTINE "GREEN WALL" CORRECTIONAL PRISON

26. GANG, AND PARTICIPATED IN THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.

27. 14. DEFENDANT, J. BEESON IS A SGT. ASSIGNED TO THE PBSP - IGI UNIT AND IN THAT CAPACITY,

28. 1. SPECIAL UNITS FROM VARIOUS PRISONS CONVERGED ON PBSP TO CONDUCT PROPERTY SEARCHES AND TO COLLECT INTELLIGENCE ON ALLEGED PRISON GANG MEMBERS AND ASSOCIATES IN UNITS 1-4 OF "D" FACILITY.
2. INSTITUTIONAL GANG INVESTIGATION UNIT.

1  UNDER INFORMATION AND BELIEF, HIS PRIMARY JOB CONCERN IS PRISON GANGS AND SECURITY.

2  ALSO IS A MEMBER OR ASSOCIATE OF THE CLANDESTINE "GREEN WALL" CORRECTIONAL PRISON GANG, AND

3  PARTICIPATED IN THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.

4      15. DEFENDANT, C. COUNTESS IS A CORRECTIONAL OFFICER (C/O) ASSIGNED TO PBSP-161 UNIT AND IN

5  THAT CAPACITY, UNDER INFORMATION AND BELIEF, HIS PRIMARY JOB CONCERN IS PRISON GANGS AND SECURITY.

6  ALSO IS A MEMBER OR ASSOCIATE OF THE CLANDESTINE "GREEN WALL" CORRECTIONAL PRISON GANG AND PARTICI-

7  PATED IN THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.

8      16. DEFENDANT, T. BUCHANAN IS A C/O ASSIGNED TO PBSP-161 UNIT AND IN THAT CAPACITY,

9  UNDER INFORMATION AND BELIEF, HIS PRIMARY JOB CONCERN IS PRISON GANGS AND SECURITY.    ALSO IS

10 A MEMBER OR ASSOCIATE OF THE CLANDESTINE "GREEN WALL" CORRECTIONAL PRISON GANG AND PARTIC-

11 IPATED IN THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.

12     17. DEFENDANT, J. PUENTE IS A C/O ASSIGNED TO PBSP-161 UNIT AND IN THAT CAPACITY, UNDER

13 INFORMATION AND BELIEF, HIS PRIMARY JOB CONCERN IS PRISON GANGS AND SECURITY.    ALSO IS A

14 MEMBER OR ASSOCIATE OF THE CLANDESTINE "GREEN WALL" CORRECTIONAL PRISON GANG AND PART-

15 ICIPATED IN THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.

16     18. DEFENDANT, J. REYES IS A C/O IN THE CDCR AND WAS ASSIGNED TO THE FEBRUARY 2, 2007

17 SPECIAL OPERATIONS TASK FORCE.    AND UNDER INFORMATION AND BELIEF IS A MEMBER OR ASSOCIATE

18 OF THE CLANDESTINE "GREEN WALL" CORRECTIONAL PRISON GANG.

19     19. DEFENDANT, TANAYO IS A C/O IN THE CDCR AND WAS ASSIGNED TO THE FEBRUARY 2, 2007

20 SPECIAL OPERATIONS TASK FORCE.    AND UNDER INFORMATION AND BELIEF IS A MEMBER OR ASSOC-

21 IATE OF THE CLANDESTINE "GREEN WALL" CORRECTIONAL PRISON GANG.

22     20. DEFENDANT, BISHOP IS A C/O IN THE CDCR AND UNDER INFORMATION AND BELIEF IS

23 ASSIGNED TO THE OCS AND IN THAT CAPACITY WAS PART OF THE FEBRUARY 2, 2007 SPECIAL

24 OPERATIONS TASK FORCE.    ALSO IS A MEMBER OR ASSOCIATE OF THE CLANDESTINE "GREEN WALL"

25 CORRECTIONAL PRISON GANG.

26     21. DEFENDANT, J. DIMMICK IS A C/O IN THE CDCR AND IN THAT CAPACITY IS ASSIGNED TO "D"

27 FACILITY UNIT TWO (2).    AND ON FEBRUARY 2, 2007 WAS PART OF THE SPECIAL OPERATIONS TASK

28 FORCE AND ASSIGNED TO THE "C" FACILITY VISITING ROOM DESK POSITION.

22. DEFENDANT, C. PARKER IS A C/O IN THE CDCR AND WAS ASSIGNED TO THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.    AND UNDER INFORMATION AND BELIEF IS A MEMBER OR ASSOCIATE OF THE CLANDESTINE "GREEN WALL" CORRECTIONAL PRISON GANG.

23. DEFENDANT, S. SODERLUND IS A C/O IN THE CDCR AND IN THAT CAPACITY IS EMPLOYED AT PBSP

24. DEFENDANT, JOHN DOE NO.1 IS A C/O IN THE CDCR AND PARTICIPATED IN THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.

25. DEFENDANT, JOHN DOE NO. 2 IS A C/O IN THE CDCR AND PARTICIPATED IN THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE

26. DEFENDANT, JOHN DOE NO. 3 IS A C/O IN THE CDCR AND PARTICIPATED IN THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.

27. DEFENDANT, JOHN DOE NO. 4 IS A C/O IN THE CDCR AND PARTICIPATED IN THE FEBRUARY 2, 2007 SPECIAL OPERATIONS TASK FORCE.

28. DEFENDANT, M. SAYRE IS THE CHIEF MEDICAL OFFICER (CMO) AT PBSP AND IN THAT CAPACITY IS LEGALLY RESPONSIBLE FOR THE MEDICAL CARE OF ALL ITS PRISONERS AND FOR THE ACTIONS OF ALL STAFF.

29. DEFENDANT, S. RISENHOOVER IS A FAMILY NURSE PRACTIONER (FNP) AND IS A PART OF PBSP MEDICAL STAFF.   AND IN THAT CAPACITY, UNDER INFORMATION AND BELIEF, OPERATES UNDER THE CMO's MEDICAL LICENSE AND IS RESPONSIBLE FOR PROVIDING PRIMARY MEDICAL ATTENTION AND CARE TO ALL PRISONERS HOUSED IN "D" FACILITY SHU.

30. DEFENDANT, J. FLOWERS IS A REGISTERED NURSE (RN) AND PART OF PBSP MEDICAL STAFF. AND IN THAT CAPACITY ASSISTS IN PROVIDING MEDICAL ATTENTION AND CARE TO ALL PRISONERS HOUSED IN "D" FACILITY SHU.

31. DEFENDANT, M. McLEAN IS A FNP ON THE PBSP MEDICAL STAFF AND IN THAT CAPACITY HAS THE POSITION OF A HEALTH CARE MANAGER (HCM)

32. DEFENDANT J. KNAVITZ IS A CCII AT PBSP AND IN THAT CAPACITY ONE OF HIS DUTIES IS TO, UNDER INFORMATION AND BELIEF, REVIEW MEDICAL APPEALS.

33. DEFENDANT C. GORDSPE IS A STAFF SERVICES ANALYST (SSA) AT PBSP AND IN THAT CAPACITY, UNDER INFORMATION AND BELIEF, ONE OF HER DUTIES IS TO REVIEW MEDICAL APPEALS.

## III. INTRODUCTION OF FACTS

34. THIS ACTION ARISES FROM DEFENDANTS EXCESSIVE USE OF FORCE UPON PLAINTIFF CAUSING PHYSICAL INJURY AND MENTAL SUFFERING IN RETALIATION FOR FILING GRIEVENCES ON DEFENDANTS FOR DENYING PLAINTIFF HIS MAIL.    AND FOR REFUSING TO TAKE ADDITIONAL PHOTOGRAPHS ON FEBRUARY 2, 2007.    ALSO ON MEDICAL STAFF FOR DENYING PLAINTIFF ADEQUATE MEDICAL ATTENTION AND TREATMENT FOR CHRONIC SINUS CONDITION AND CROHN'S DISEASE, WHEN:

(a) PRIOR TO FEBRUARY 2, 2007 PLAINTIFF FILED SEVERAL ADMINISTRATIVE APPEALS (602 APPEAL) ON DEFENDANTS FOR INTERFERING WITH HIS INCOMING/OUTGOING REGULAR AND LEGAL MAIL;

(b) ON FEBRUARY 2, 2007 DURING SPECIAL OPERATIONS CONDUCTED BY SPECIAL UNITS OF THE CDCR, DEFENDANT DEMANDED EXTRA PHOTOS OF PLAINTIFF FOR HIS "PERSONAL COLLECTION/USE," PLAINTIFF REFUSED.    ON THE PRETEXT OF ESCORTING PLAINTIFF BACK TO HIS CELL, DEFENDANTS ASSAULTED HIM WHILE UNDER MANACLE RESTRAINT FOR REFUSING TO SUBMIT TO PHOTOGRAPHS.

(c) PLAINTIFF WAS ISSUED A CDCR 115 RULES VIOLATION REPORT (RVR) IN RETALIATION FOR FILING A 602 APPEAL ON DEFENDANTS FOR EXCESSIVE USE OF FORCE.

(d) PLAINTIFF IS NOW PREOCCUPIED WITH FEAR OF WHEN AND HOW DEFENDANTS WILL "SET UP" PLAINTIFF FOR THE NEXT ATTACK.

35. DEFENDANTS ARE DENYING PLAINTIFF ADEQUATE MEDICAL ATTENTION AND TREATMENT FOR HIS CROHN'S DISEASE BY:

(a) DENYING REQUEST FOR SPECIAL DIET FOR CROHN'S DISEASE DUE TO HIS LACTOSE INTOLERANCE;

(b) CONTINUING TO PRESCRIBE MEDICATIONS THAT FAIL TO ALLIVIATE PAIN FROM CROHN'S FLARE-UPS;

(c) DISCONTINUING HELPFUL MEDICATIONS AND CUTTING DOWN DOSES OF MEDICATION HELPFUL TO PLAINTIFF'S PERSISTENT CROHN'S FLARE-UPS;

(d) FAILING TO COMPLETE A COLONOSCOPY TEST FOR AN ADEQUATE DIAGNOSES;

(e) LACK OF PROPER MEDICAL ATTENTION AFFECTING CHOLESTEROL LEVELS, POTENTIALLY INCREASING THE RISK OF A HEART ATTACK OR STROKE;

(f) FAILURE TO REMOVE POLYPS THAT CAN CREATE POTENTIAL FUTURE COMPLICATIONS.

36. DEFENDANTS ARE DENYING PLAINTIFF ADEQUATE MEDICAL ATTENTION AND TREATMENT FOR HIS CHRONIC SINUS CONDITION BY:

1   (a) FAILING TO SCRAPE OUT NASAL BACK HOLES TO RELIEVE PAIN AND INFECTION;

2   (b) FAILING TO PROVIDE A CONSULTATION WITH A NASAL SPECIALIST;

3   (c) CONTINUING TO PLACE PLAINTIFF ON REPEATED REGIMENS OF MEDICATIONS AND NASAL

4   SPRAYS AT THIRTY (30) DAY INCREMENTS INSTEAD OF ALLOWING TO BE EXAMINED BY A NASAL SPECIALIST.

5

6   ## IV. FACTUAL SUMMARY

7   37. BETWEEN 1997-2000 PLAINTIFF WAS DIAGNOSED: CROHNS DISEASE BY SAN QUENTIN MEDICAL

8   STAFF.  IN NOVEMBER 2001 PLAINTIFF WAS TRANSFERED TO PBSP, FROM JANUARY 2002 TO SEPTEMBER 2003

9   WHILE IN THE LOS ANGELES COUNTY JAIL ON RETRIAL, HE WAS EXAMINED AND PLACED ON A SPECIAL DIET

10  WHICH KEPT PLAINTIFF CROHNS FLARE-UP FREE.

11  38. PLAINTIFF HAS A TWENTY-SEVEN (27) YEAR DOCUMENTED MEDICAL HISTORY OF CRONIC NASAL

12  ALLERGIES WITH SINUS INFECTIONS.

13  39. IN 1998 THE CALIFORNIA SENATE CONDUCTED HEARINGS ON INTERNAL PROBLEMS IN THE CDCR, NAMELY,

14  STAFF CODE OF SILENCE.  IN 1999 THE CALIFORNIA OFFICE OF INSPECTOR GENERAL (OIG) REPORTED THE EXIST-

15  ENCE OF A CORRECTIONAL ORGANIZATION FORMED, CALLED THE "GREEN WALL".  IN JANUARY 2004 THE

16  THE CALIFORNIA SENATE SELECT COMMITTEE ON STATE CORRECTIONAL SYSTEM HEARD TESTIMONY FROM GUARDS

17  DETAILING THE FORMATION OF A CORRECTIONAL GANG-LIKE ORGANIZATION.

18  40. IN FEBRUARY 2006 PBSP CONDUCTED A SHU-WIDE HOUSING PROGRAM CHANGE BY SELE-

19  CTING ALLEGED PRISON GANG MEMBERS OR ASSOCIATES FROM "C" AND "D" FACILITIES AND REHOU-

20  SED IN UNITS 1-4 OF "D" FACILITY SHU, CREATING THE NOW COMMONLY REFERRED TO "GANG"

21  CORRIDOR.   THIS WAS DONE ABSENT ANY IDENTIFICATION VIA INTERDEPARTMENTAL

22  MEMORANDUM (MEMO) POSTED IN HOUSING PODS.

23  41. IN FEBRUARY 2006 NEW UNDERGROUND OPERATIONAL POLICIES WERE IMPLEMENTED FOR

24  THE MANAGEMENT OF THE "GANG" CORRIDOR, UNDER CONTROL OF IGI UNIT REGARDING MAIL, VISITING,

25  MEDICAL ATTENTION AND ESCORTS TO, AND IN GENERAL THE DAILY MOVEMENT IN "GANG" CORRIDOR.

26  42. ON FEBRUARY 2, 2007 WHILE UNDER MANACLE RESTRAINTS PLAINTIFF WAS ASSAULTED

27  BY GREEN WALL IGI DEFENDANTS AND SUFFERED INJURIES REQUIRING MEDICAL ATTENTION/TREATMENT.

28  43. ON FEBRUARY 5, 2007 PLAINTIFF FILED A 602 APPEAL CLAIMING SUBJECTION TO RETALIAT-

6.

1  ORY SUBJECTION TO EXCESSIVE USE OF FORCE CAUSING INJURY BY GREEN WALL 161 DEFENDANTS

2  FOR FILING 602 GRIEVANCES.

3  44. ON FEBRUARY 16, 2007 PLAINTIFF WAS ISSUED A COCR 116 RVR FOR ATTEMPTED BATTERY ON

4  STAFF ON FEBRUARY 2, 2007.

5

6  ## V. STATEMENT OF FACTS

7  45. SINCE SEPTEMBER 2003 PLAINTIFF HAS BEEN PERMANENTLY HOUSED AT PBSP, HIS REG-

8  ULAR AND LEGAL MAIL, INCOMING/OUTGOING HAS CONTINUOUSLY BEEN DELAYED, LOST OR DISAPP-

9  ROVED.   AND HIS LEGAL MAIL OPENED OUTSIDE OF HIS PRESENCE BY GREEN WALL EMBEDDED

10  161 UNIT STAFF [3]  AND PLAINTIFF HAS HAD TO FILE 602 APPEALS.   IN OCTOBER 2006 PLAINTIFF

11  FILED A 602 FOR EMPLOYEE MISCONDUCT (FALSIFYING INFORMATION) BY DEVON HAWKES AND ON

12  DECEMBER 4, 2006 [4]. FILED A SECOND EMPLOYEE MISCONDUCT 602 ON DEVON HAWKES FOR

13  FAILING TO RESPOND TO THE OCTOBER 2006 602 WITHIN ESTABLISHED TIME LIMITS.   ON DECEMBER

14  19, 2006 PLAINTIFF FILED A 602 (PBSP 07-00130) ON C. COUNTESS FOR DENYING HIS MAIL AND

15  AGAIN ON DECEMBER 27, 2006 (PBSP 07-00073) FOR DENYING HIS MAIL  SEE EXHIBIT B

16  46. ON FEBRUARY 2, 2007 UNDER INFORMATION AND BELIEF A COMBINED TASK FORCE OF

17  SPECIAL UNITS OF THE COCR CONVERGED ON PBSP-SHU "GANG" CORRIDOR AND CONDUCTED PROPERTY

18  SEARCHES, PHOTOGRAPHED AND VIDEO TAPED SELECTED PERSONNELS, INCLUDING PLAINTIFF.   J. TILTON

19  AS DIRECTOR OF THE COCR WAS AWARE OF THE CREATION OF THE PBSP "D" FACILITY SHU GANG CORRI-

20  DOR AND OF THE FEBRUARY 2, 2007 SPECIAL OPERATION TASK FORCE.   ROBERT A. HOREL AS THE

21  WARDEN OF PBSP APPROVED CREATION OF THE GANG CORRIDOR AND OF THE FEBRUARY 2, 2007 TASK FORCE.

22  C. SCAVETTA, CAPT. MARQUEZ, AND LT'S PEDROZO AND KEACH WERE AWARE OF THE PLANNED

23  FEBRUARY 2, 2007 TASK FORCE AND OVERSAW ITS OPERATION.

24  47. ON FEBRUARY 2, 2007 D. BARNEBURG AND %0 JOHN DOE 1. HANDCUFFED AND ESCORTED

25  PLAINTIFF FROM HIS ASSIGNED CELL (D2-105), AFTER CONDUCTING A PAT-DOWN BODY SEARCH AND

26  3. UNDER INFORMATION AND BELIEF IN OCTOBER 2007 A NEW MAIL POLICY WAS IMPLEMENTED,
    ALL INCOMING/OUTGOING MAIL FROM UNITS 1-4 OF GANG CORRIDOR IS TO BE SENT TO THE 161 UNIT.
27  PREVIOUSLY, ONLY SELECTED TAGGED PRISONERS MAIL WAS SENT TO 161 UNIT.
    4. THE INFORMAL RESPONSE BY HAWKES REFERENCES A COMPLETELY DIFFERENT 602
28  (PBSP 06-02263).  THE DECEMBER 2006 602 WAS DENIED A LOG NUMBER AND PROCESS, UNDER
    INFORMATION AND BELIEF THE OCTOBER 2006 602 WAS INTENTIONALLY LOST BY 161.   IN ADDITION,
    D. HAWKES IN 602 # PBSP06-02263 DENIED IT AT SECOND LEVEL  SEE 602 IN EXHIBIT B

1  METAL DETECTOR WAND, TO THE "C" FACILITY VISITING AREA.   AT THE ENTRANCE CORRIDOR TO THE VISITING
2  AREA, G. PARKER VIDEO TAPPED PLAINTIFF AND ESCORTING STAFF'S ENTRANCE, A %, JOHN DOE Z. ALSO
3  PHOTOGRAPHED PLAINTIFF ENTERING.   J. DIMMICK, POSITIONED AT VISITING AREA DESK ADVISED ESCORTING
4  STAFF THAT HOLDING CELL #13 WAS VACANT, PLAINTIFF WAS PLACED IN CELL #13, D. BARNEBURG AND
5  JOHN DOE 1. REMOVED THE HANDCUFFS, CONDUCTED A THOROUGH BODY SEARCH AND LEFT.

6     48. APPROXIMATELY NINETY (90) MINUTES LATER J. DIMMICK , J. REYES AND JOHN DOE 3. RETURNED,
7  NOTIFYING PRISONER RAUL GARCIA IN CELL #14 THAT HE WAS TO BE PHOTOGRAPHED.   GARCIA ASKED
8  "WHAT FOR", J. REYES RESPONDED "THATS THE WAY IT IS, ALL OF YOU GUYS ARE GOING TO BE PHOTOGRA-
9  HED." PLAINTIFF ASKED J. REYES "IS THIS AN ORDER OF ALL YOU GUYS (TASK FORCE) NAILING THIS UP AS
10 YOU GO ALONG, BECAUSE I WAS ALREADY PHOTOGRAPHED AND VIDEO TAPED WHEN ESCORTED IN"?
11 J. REYES STATED "THESE PHOTOGRAPHS ARE FOR MY PERSONAL COLLECTION", PLAINTIFF STATED "IN THAT
12 CASE, NO, LET ME SPEAK TO YOUR SUPERVISOR OR THE CAPTAIN."  THE THREE DEFENDANTS LEFT
13 WHEN PLAINTIFF AND OTHER PRISONERS REFUSED TO HAVE ADDITIONAL PHOTOGRAPHS TAKEN, SEE
14 DECLARATION OF PLAINTIFF IN EXHIBIT E.

15    49. J. REYES, PEREZ,   TAMAYO, AND G. PARKER BEGAN ADVISING PRISONERS IF THEY
16 AGREED TO BE PHOTOGRAPHED THEY WOULD BE RETURNED TO THEIR CELLS AND PROPERTY RETURNED TO THEM.
17 PRISONERS WHO REFUSED WOULD REMAIN IN THE HOLDING CELLS "ALL DAY" PRISONERS STILL REFUSED.
18 DEFENDANTS LEFT THE AREA, UNDER INFORMATION AND BELIEF, TO CONFER WITH SUPERIORS.
19 APPROXIMATELY FIVE (5) MINUTES LATER J. REYES RETURNED STATING "I'M GETTING YOUR PHOTOS ONE WAY OR
20 ANOTHER" AND WALKED BACK TO THE VISITING AREA DESK.   PLAINTIFF NOTICED NUMEROUS %s
21 ATTEMPTING TO COERCE PRISONERS INTO BEING PHOTOGRAPHED BUT ALL REFUSED.

22    50. APPROXIMATELY TEN (10) MINUTES LATER J. REYES, J. DIMMICK AND JOHN DOE 4. RETURNED TO
23 PLAINTIFF'S HOLDING CELL AND STATED "CUFF UP" PLAINTIFF STATED "I WAS ALREADY PHOTOGRAPHED AND I'M
24 NOT GIVING YOU MY PICTURE."   J. REYES STATED "WE'RE TAKING YOU HOME" (ASSIGNED HOUSING CELL),
25 PLAINTIFF ADVISED J. REYES OF HIS MEDICAL CHRONO FOR DOUBLE HANDCUFFS DUE TO SHOULDER INJURY.
26 J. REYES ASKED JOHN DOE 4. FOR HIS CUFFS, HANDCUFFED PLAINTIFF AND ESCORTED HIM OUT OF THE
27 HOLDING CELL AND OUT INTO THE ADJACENT ENTRANCE CORRIDOR.   PLAINTIFF NOTICED TWELVE TO
28 FIFTEEN %s LINED UP ON BOTH SIDES OF THE CORRIDOR WITH MORE ENTERING THE CORRIDOR.

8.

1    51. PLAINTIFF WAS ORDERED BY J. REYES TO "HOLD UP" IN THE CENTER OF THE %o LINED

2    CORRIDOR, LOOKING AT THE %o's. PLAINTIFF STATED "CHAIN THE GREEN WALL IS FULLY REPRESENTED".

3    J. BEESON TOOK HOLD OF PLAINTIFF'S LEFT ARM FORCIBLY TURNING HIM TOWARD THE RIGHT CORRIDOR

4    WALL. PLAINTIFF NOTICED TWO %o's WITH HAND-HELD VIDEO CAMERAS [5] FILMING HIM. C. PACKER WAS

5    HOLDING A DIGITAL CAMERA. PLAINTIFF AGAIN STATED "I'M NOT TAKING ANYMORE PICTURES". SUDDENLY,

6    HE WAS ATTACKED. D. BARNEBURG APPLIED A CHOKE HOLD SLAMMING PLAINTIFF TO THE GROUND.

7    J. BEESON, J. REYES, C. COUNTESS, T. BUCHANAN, J. PUERTES, BISHOP, AND   TAMAYO PARTICIP-

8    ATED IN THE ATTACK.   PULLING AND TWISTING PLAINTIFF'S ARMS AND LEGS, PLACING THEIR KNEES ON

9    HIS LEGS, STOMACH AND CHEST.   PLAINTIFF HEAD WAS SLAMMED DOWN ON THE CONCRETE FLOOR

10   BY C. COUNTESS, PLAINTIFF'S HEAD BOUNCED OFF THE FLOOR. HE LOOKED TOWARDS HIS LEGS WHEN C.

11   COUNTESS STRUCK HIM IN THE FACE CAUSING HIS HEAD TO AGAIN BOUNCE OFF THE FLOOR. SEE PLAIN-

12   TIFFS DECLARATION IN EXHIBIT E.

13   52. D. BARNEBURG FORCEFULLY LOWERED HIS KNEE ON PLAINTIFF'S HEAD CAUSING HIS NECK TO

14   MAKE POPPING SOUNDS, WHILE T. BUCHANAN JUMPED ON PLAINTIFF'S RIGHT KNEE WHICH WAS BENT

15   AND LAYING OVER HIS LEFT LEG, CAUSING A SHARP PAIN TO HIS KNEE AND LOWER BACK.

16   D. BARNEBURG REMOVED HIS KNEE OFF OF PLAINTIFF'S LEFT SIDE OF HIS HEAD AND WITH HIS HAND

17   FORCED HIS HEAD DOWN AGAINST THE FLOOR.   THIS WAS REPLACED BY JOHN DOE 4's KNEE, AGAIN

18   SMASHING PLAINTIFF'S HEAD AGAINST THE FLOOR, WHILE D. BARNEBURG BEGAN TO RIP OFF

19   PLAINTIFF'S T-SHIRT UNTIL THE FRONT WAS TORN DOWN TO THE SEAM.   D. BARNE BURG ORDERED

20   C. PACKER [6] TO "TAKE THE PHOTOS" AND ORDERED JOHN DOE 4. WHO'S KNEE WAS STILL SMASH-

21   ING DOWN ON PLAINTIFF'S HEAD TO "BACK OFF" IN ORDER TO PHOTOGRAPH PLAINTIFF.   PLAINTIFF

22   SUDDENLY FELT "POPPING" IN HIS NECK, LOWER BACK AS THE PRESSURE WAS RELEASED OFF HIS BODY.

23   UNDER INFORMATION AND BELIEF PLAINTIFF ASSERTS THE PHOTO GRAPHS AND VIDEO TAPES SHOW HIM GRIM-

24   ANCING IN PAIN AND IDENTITY OF THE ATTACKERS. SEE PLAINTIFF'S DECLARATION IN EXHIBIT E

25   53. LEG IRONS WERE PLACED ON PLAINTIFF, HE WAS LIFTED TO HIS FEET AND ATTEMPTED TO

26   STAND BUT HIS KNEES BUCKLED, J. BEESON AND D. BARNE BURG HELD PLAINTIFF UPRIGHT UNTIL

27   HE COULD STAND AND WALK ON HIS OWN.   ESCORTED TO HIS HOUSING UNIT PLAINTIFF WAS PLACED IN

28   A "DRY" HOLDING CELL IN THE UNIT ROTUNDA.   D. BARNEBURG ORDERED UNIT 2 HOUSING STAFF K.

5. UNDER INFORMATION AND BELIEF PLAINTIFF ASSERTS THE VIDEO CAMERA OPERATORS WERE PERSON-
NELL FROM THE COC'R GANG OPERATIONS (GANG OPS).
    6. PLAINTIFF IS NOT SURE IF C. PACKER USED A CAMERA FROM ONE OF THE PREVIOUSLY MENTIONED
JOHN DOE CAMERA OPERATORS OR PRODUCED A DIFFERENT CAMERA

                                          9

1  STATION TO CALL FOR A MEDICAL TECHNICAL ASSISTANT (M.T.A.) IN ORDER TO HAVE PLAINTIFF MEDICALLY

2  CLEARED BEFORE PLACING HIM BACK IN HIS ASSIGNED CELL.    M.T.A. C. RICHCREEK ARRIVED AND BEG-

3  AN HER EXAMINATION, SHE ASKED ABOUT THE TORN T-SHIRT STILL HANGING OFF OF PLAINTIFF, SHE ASKED

4  PLAINTIFF WHAT HAPPENED.    PLAINTIFF EXPLAINED HE HAD BEEN "JUMPED BY THE GREEN WALL"

5  WHILE HANDCUFFED, SLAMMED TO THE GROUND, JUMPED ON AND PUNCHED IN THE FACE BY C.

6  COUNTLESS.    AND STATED DURING THE ATTACK HE FELT A "POP" IN THE BACK OF HIS NECK AND

7  PAIN TO HIS LOWER BACK AND RIGHT KNEE.[7]

8    54. M.T.A. RICHCREEK STOPPED HER EXAMINATION AND ASKED D. BARONE-BUEG TO CALL "D" FACIL-

9  ITY CLINIC AND REQUEST A NECK BRACE AND BACK BOARD.    M.T.A. RICHCREEK ASKED PLAINTIFF IF

10  HE FELT ANY PAIN, PLAINTIFF RESPONDED HE WAS NUMB ALL THE WAY DOWN TO HIS LEFT HAND.    HE NEXT

11  STATED TO THE M.T.A. HE WOULD BE FILING AN EXCESSIVE USE OF FORCE ON THOSE WHO ATTACKED HIM,

12  THIS WAS OVERHEARD BY D. BARONE-BUEG AND J. BEESON.    J. FLOWERS (R.N.) AND M.T.A. NIHELIN

13  ARRIVED WITH NECK BRACE AND BACK BOARD, M.T.A. RICHCREEK PLACED THE NECK BRACE ON PLAINTIFF, THE

14  BACK BOARD WAS PLACED ON A ROLLING TABLE. PLAINTIFF LAID ON TOP OF IT AND TAKEN TO "D" FACILITY CLINIC.

15    55. PLAINTIFF WAS EXAMINED BY S. EISENHOOVER (F.N.P.), VITALS TAKEN, THEN ORDERED X-RAYS

16  AND CT SCANS.    PLAINTIFF WAS TAKEN TO PRISON INFIRMARY. THE ON-DUTY DR. WAS WAHIDULLAH,

17  AN OTHER DR. ARRIVED AND BEGAN TO GIVE PLAINTIFF A CURSORY EXAM, ORDERING DR. WAHIDULLAH

18  TO REMOVE THE BRACE.    DR. WAHIDULLAH REFUSED STATING "HE HAS A NECK INJURY WITH NUMBNESS,

19  REMOVING THE BRACE COULD PARALYZE HIM, HE NEEDS X-RAYS AND CT SCANS."    SUBSEQUENTLY

20  PLAINTIFF WAS TRANSPORTED TO SUTTER COAST HOSPITAL IN CRESCENT CITY AND EXAMINED BY DR. SANDY

21  SAUNDERS WHO ORDERED THE X-RAY AND CT SCANS.    REVIEWING THE RESULTS, PAIN MEDICATION

22  FOR NECK AND MUSCLE INJURY WAS ORDERED BY DR. SAUNDERS, PLAINTIFF WAS RETURNED TO P.B.S.P

23  AND TO HIS ASSIGNED CELL.

24    56. ON THE EVENING OF FEBRUARY 2, 2007 UNIT S/o A. GARCIA ASKED PLAINTIFF IF HE WANTED

25  TO BE VIDEO INTERVIEWED FOR HIS COMPLAINT OF EXCESSIVE USE OF FORCE.    PLAINTIFF AGREED AND

26  WAS ESCORTED BY LT. PEDROSO, A SARGENT AND TWO OTHER S/o, TO LT. PEDEROSO'S OFFICE.

27  LEERY OF ANOTHER ATTACK AND FEARING FOR HIS SAFETY PLAINTIFF ASKED ESCORTS IF THIS WAS

28  ANOTHER "GREEN WALL SET UP"? LT. PEDROSO RESPONDED "NO, THIS IS AN INTERVIEW THAT WILL

---
7. NO FEWER THAN SEVEN (7) INCIDENT REPORTS WERE MADE BY STAFF AND IN NONE OF THE REPORTS IS REFERENCED ANY INJURIES TO PLAINTIFF, NOT EVEN SO MUCH AS A SCRATCH IS REPORTED.

1  BE VIDEO TAPED." ONCE AT THE LT.'S OFFICE PLAINTIFF. THE VIDEO CAMERA WAS SET UP BY THE SGT.

2  THE INTERVIEW BEGAN NOTING CASE NUMBER, DATE, NAMES, AND RANK OF PRESENT STAFF FOLLOWED BY

3  ASKING PLAINTIFF TO EXPLAIN WHAT OCCURED EARLIER THAT DAY. SEE PLAINTIFF'S DECLARATION IN EXHIBIT E.

4       57. PLAINTIFF STATED HE WAS ATTACKED AFTER MAKING THE COMMENT "THE GREEN WALL IS FULLY

5  REPRESENTED" AND THAT THE UNDERLYING MOTIVE FOR THE ATTACK WAS IN RETALIATION FOR FILING 602

6  APPEALS ON GREEN WALL I.G.I. STAFF WHO HAD PARTICIPATED IN THE ATTACK.    UNDER INFORMA-

7  TION AND BELIEVE THE INCIDENT WAS VIDEO TAPED BY STAFF PRESENT.      PLAINTIFF STATED HE

8  RECEIVED LUMPS AND CUTS ON THE BACK AND SIDE OF HIS HEAD.    LT. PEDROSO STATED "THERE'S

9  NOTHING ABOUT HEAD WOUNDS IN THE MEDICAL REPORT," PLAINTIFF SAID THATS CAUSE AT THE TIME OF

10  EXAM HE WAS STRAPPED TO THE BACK BOARD AND HIS HEAD SECURED AND COULD NOT MOVE HIS

11  NECK.    LT. PEDROSO ORDERED THAT AN MTA BE CALLED IN ORDER TO DOCUMENT PLAINTIFF'S

12  WOUNDS.    THE MTA ARRIVED, ON RECORD EXAMINED PLAINTIFF, NOTING (3) LUMPS ON BACK OF

13  HIS HEAD AND LACERATIONS ON HEAD, KNEES AND HANDS, THE EXAM WAS DOCUMENTED ON

14  VIDEO AND MEDICAL FORMS.    UPON COMPLETION OF THE EXAM PLAINTIFF ASKED LT. PEDROSO IF

15  THE VIDEO WOULD DISAPPEAR TO PROTECT THE GREEN WALL AS DOES ALL OTHER EVIDENCE OF EXCESSIVE

16  FORCE, HE RESPONDED "NO, IT'LL BE ON TAPE WHEN WE NEED IT.", SEE PLAINTIFF'S DECLARATION EXHIBIT E.

17       58. ON FEBRUARY 5, 2007 PLAINTIFF FILED 602 RDSP 07-0089 CITING EXCESSIVE USE OF FORCE

18  UNDER COLOR OF AUTHORITY BY GREEN WALL I.G.I. STAFF IN RETALIATION FOR FILING GRIEVANCES.

19  IN THE 602 PLAINTIFF CITED CALIF. PUBLIC RECORDS ACT § 6252 et. al. AND INFORMATION PRACTICE

20  ACT § 1798 et. al. IN REQUESTING INFORMATION AS TO THE SPECIAL OPERATIONS COMPLETED ON

21  FEBRUARY 2, 2007.    APPEAL PROCESS WAS BYPASSED TO 2ND LEVEL AND REVIEW WAS COND-

22  UCTED BY LT. PEDROSO ON BEHALF OF WARDEN R. HOREL, WHO PARTIALLY GRANTED 602 IN

23  THAT NO RETALIATION WOULD BE TAKEN FOR FILING APPEAL.    HOWEVER, THE CLAIMS RAISED AND

24  REMAIN DER OF RELIEF REQUESTED WAS DENIED BY R. HOREL.    PLAINTIFF BELIEVES THAT THE

25  WARDEN SHOULD NOT HAVE ALLOWED LT. PEDROSO TO PARTICIPATE IN THE 602 PROCESS BECAUSE HE

26  WAS, UNDER INFORMATION AND BELIEF, ONE OF THE SUPERVISORS OF THE FEBRUARY 2, 2007

27  SPECIAL OPERATIONS.    AT 3RD LEVEL REVIEW THE REVIEWER WAS R. PIMENTEL WHO'S REV-

28  IEW DID NOT INCLUDE THE CALIF. PUBLIC RECORDS ACT OR THE INFORMATION PRACTICE ACT

1  REQUEST.  BASED ON R. PIMENTEL'S REVIEW DIRECTOR T. TILTON DENIED 602 ON JUNE 25,
2  2007. SEE 602 NO. PBSP-07-0089 IN EXHIBIT A.    ON FEBRUARY 8, 2007 UNIT STAFF C/O A.
3  GARCIA TOLD PLAINTIFF THAT LT. PEDROSO INQUIRED IF HE WOULD CONSENT TO BE RE-INTERVIEWED
4  BECAUSE THE FIRST TAPED INTERVIEW "MESSED UP." PLAINTIFF AGREED TO THE INTERVIEW.
5  THE INTERVIEW WAS HELD AT "D" FACILITY CONFERENCE ROOM, WHILE A SGT. SET UP TWO (2)
6  VIDEO CAMERAS. PLAINTIFF ASKED HOW THE FIRST VIDEO MESSED UP.   LT. PEDROSO STATED IT DIDN'T
7  ACTUALLY MESS UP BUT RATHER THE INTERVIEW WAS ON A "BAD DISK." THAT ONLY FUNCTIONS ON
8  CERTAIN PLAYERS AND THE COURTS NEED A RECORDING THATS PLAYABLE ON ALL TAPE PLAYERS.
9  PLAINTIFF STATED HE WASN'T SURPRISED THERE WAS A "PROBLEM" WITH FIRST TAPED INTERVIEW CAUSE
10  THE GREEN WALL HAS DEEP ROOTS AT P.B.SP. SEE PLAINTIFF'S DECLARATION IN EXHIBIT E.

11      59. THE INTERVIEW WAS BEGUN, LT. PEDROSO ASKED PLAINTIFF IF HE WAS IN GOOD HEALTH, PLAINTIFF
12  STATED BEING UNDER MEDICATION FOR THE NECK INJURY SUFFERED FROM THE ATTACK.   PLAINTIFF WAS
13  ASKED IF HE WISHED TO PROCEED, HE STATED, YES BECAUSE IF HE DIDN'T, THE INCIDENT WOULD BE SWEPT
14  UNDER THE RUG AS USUAL.   SUBSEQUENTLY, LT. PEDROSO ADVISED HIM HE WAS BEING CHARGED
15  WITH A CDCR 115 RVR FOR ATTEMPTED CATTERY ON A PEACE OFFICER[8]. PLAINTIFF ASKED HOW CAN
16  THAT BE WHEN HE WAS THE ONE ASSAULTED WHILE HANDCUFFED; THROWN TO THE GROUND, KNEED,
17  JUMPED ON AND PUNCHED IN THE FACE, SEE PLAINTIFF'S DECLARATION IN EXHIBIT E.

18      60. BETWEEN FEBRUARY - JULY 2007 PLAINTIFF SUBMITTED NUMEROUS SICK CALL REQUESTS[9] AND
19  TAKEN TO DOCTOR'S LINE[10] FOR INJURIES SUFFERED ON FEBRUARY 2, 2007.    IN THAT SPAN OF
20  TIME M. SAYLE, S. RISENHOOVER AND T. FLOWERS HAVE INDIVIDUALLY AND COLLECTIVELY DELAYED
21  PROCESSING SICK CALL REQUESTS AND DR. LINE VISITS AND IGNORING REASONS FOR THE REQ-
22  UESTS.     PLAINTIFF FILED TWO 602 APPEALS: NO. PBSP 07-00866 ON FEBRUARY 15, 2007
23  AND NO. PBSP 07-00717 ON MAY 15, 2007.   602 NO. 00866 WAS GRANTED PARTIALLY BY
24  T. FLOWERS AT INFORMAL LEVEL WHICH AMOUNTED TO DELAYING MEDICAL ATTENTION.   AND AT
25  FIRST LEVEL REVIEW BY S. RISENHOOVER WAS NOT IN COMPLIANCE WITH APPEAL PROCEDURES.
26  SHE STATES PARTIALLY GRANTED BUT DOESN'T INDICATE WHAT THAT CONSISTED OF, WHATS MORE

27      8. PLAINTIFF KNEW HE DIDN'T ATTEMPT TO ASSAULT ANYONE, BY LT. PEDROSO'S NOTICE PLAINTIFF REALIZED
    IT WAS A COERCION ATTEMPT TO HAVE HIM RESCIND THE 602 OF EXCESSIVE USE OF FORCE BY GREEN WALL I.6.1.
28      9. WHEN MEDICAL REQUESTS ARE MADE A 7362 FORM IS SUBMITTED, FOLLOWED BY AN INTERVIEW WITH A
    RN TO INQUIRE INTO THE NATURE OF MEDICAL PROBLEM WARRANTING A MEDICAL APPOINTMENT.
       10. CONSISTS OF MEDICAL ATTENTION BY FACILITY FNP AT FACILITY CLINIC ALSO CALLED
    DR. LINE

1. She notes on 602 form "See attached response" which consists of a six sentence paragraph
2. contained in 2nd level response, in summation advises plaintiff to place a rolled up
3. towel around his neck at night.    At 2nd level M. McLean investigated allegations and
4. J. Kravitz reviewed, plaintiff showed he suffered injury to his neck, back and knee,
5. medical staff acknowledged this.    From J. Kravitz and M. McLeans' summation "you are
6. receiving appropriate care and follow up for your injuries" It appears the 602 is being
7. denied, yet they state partially granted.    Question, what is being partially granted?
8. Plaintiff advanced the 602 to 3rd level (director's) review the reviewer was C. Hall
9. who conducted a substandard review amounting to rubber stamping the previous responses
10. on July 8, 2007 C. Hall denied 602 see 602: Resp 07-00866 in exhibit A.    In 602 no.
11. 00717 plaintiff appealed denial of physical therapy, at informal response J. Flowers denies
12. 602 on behalf of M. Sayre.    This response is does not comply with appeal procedures,
13. and basis for denial is questionable.    The x-rays and C.T. would not show the type of
14. injuries plaintiff suffered from and reason for physical therapy, and M. Sayre should
15. have responded at informal level.    At 2nd level review M. McLean investigated and
16. J. Kravitz reviewed and although it was acknowledged plaintiff may still be experiencing
17. soft tissue and muscular discomfort (physical therapy could alliviate) 2nd level followed
18. previous level responses and denied appeal.    602 was advanced to 3rd level, reviewed
19. by C. Hall who followed the findings of previous responses and denied physical ther-
20. apy and exam by specialist on September 29, 2007, see 602: Resp 07-00717 in exhibit A.

21.    61. On February 13, 2007 plaintiff contacted the California office of inspector general
22. (O.I.G.) requesting an investigation into the February 2, 2007 excessive use of force by mem-
23. bers or associates of the green wall embedded I.G.I. unit and on-going cover-ups, see
24. O.I.G. response in exhibit D.

25.    62. On February 14, 2007 J. Beeson attempted to conduct a 2nd level 602 interview
26. with plaintiff on disapproved mail.    Plaintiff refused and requested to be interviewed
27. by unbias staff because he had a pending complaint against J. Beeson as a participant in
28. the February 2, 2007 assault on plaintiff.    J. Beeson became angery and stated

"I'LL REJECT IT AND HAVE IT CANCELLED (602) AND SAY YOU REFUSED TO COOPERATE." PLAINTIFF REFUSED TO GIVE INTO THE THREATS, SUBSEQUENTLY, THE APPEAL WAS CANCELLED BECAUSE PLAINTIFF REFUSED TO COOPERATE SEE 602 NO. PBSP-D07-00130 IN EXHIBIT B.

63. ON FEBRUARY 21, 2007 PLAINTIFF APPEARED BEFORE I.C.C." AND PLAINTIFF REQUESTED ALL ISSUES RAISED TO BE NOTED ON THE CDCR 128-C CHRONO. PLAINTIFF STATED TO C. SCAVETTA HE WAS SUBJECTED TO EXCESSIVE USE OF FORCE CAUSING INJURY IN RETALIATION FOR FILING 602 APPEAL ON GREEN WALL EMBEDDED I.G.I. STAFF FOR INTERFERING WITH HIS MAIL AND EMPLOYEE MISCONDUCT COMPLAINTS. CAPT. G. KELLY STATED "THE DEPARTMENT HAS A PROCESS AND IT TAKES TIME"; PLAINTIFF ADDED HOW 602s ARE ROUTINELY REJECTED, ESPECIALLY WHEN CLAIMING OF STAFF MISCONDUCT AND OTHERS SIMPLY DISAPPEAR. CAPT. KELLY ENDED THE CONVERSATION AND ICC HEARING BY STATING THERE IS AN INVESTIGATION INTO THE INCIDENT. UPON RECEIVING A COPY OF THE CDCR 128-C CHRONO THERE WAS NO REFERENCE AS TO THE CONVERSATIONS, EXHIBIT D

64. ONCE RETURNED TO HIS ASSIGNED CELL D. BARNEBURG ATTEMPTED TO CONDUCT A 2ND LEVEL 602 INTERVIEW, PLAINTIFF REFUSED, REQUESTING TO BE INTERVIEWED BY AN UNBIAS STAFF BASED ON A PENDING COMPLAINT AGAINST HIM AS A PARTICIPANT IN THE FEBRUARY 2, 2007 EXCESSIVE USE OF FORCE ON PLAINTIFF. D. BARNEBURG STATED HE COULD "SET ALL THAT ASIDE AND GIVE HIM A FAIR SHAKE." PLAINTIFF RESPONDED HE DIDN'T BELIEVE HIM AND THE INTERVIEW WAS A INTIMIDATION TACTIC. THEN, D. BARNEBURG STATED "THEN I'LL JUST CANCEL THE 602," ON FEBRUARY 28, 2007 THE 602 WAS CANCELLED. SEE 602 NO. PBSP-D07-0073 IN EXHIBIT B.

65. ON FEBRUARY 16, 2007 PLAINTIFF RECEIVED A CDCR 115 RVR FOR ATTEMPTED BATTERY ON A PEACE OFFICER. PLAINTIFF REQUESTED A STAFF ASSISTANT[12] FOR THE PURPOSE OF TALKING TO AND OBTAINING DECLARATORY EVIDENCE FROM FELLOW PRISONERS THAT HE HIMSELF COULD NOT DO, AND REQUESTED PRISONERS AND STAFF AS WITNESSES AT HIS HEARING. PLAINTIFF POSTPONED THE DISCIPLINARY HEARING PENDING THE OUTCOME OF A REFERRAL FOR PROSECUTION. SEE CDCR 115 RVR IN EXHIBIT D

66. ON APRIL 10 2007 PLAINTIFF RECEIVED A PROSECUTION REJECTION NOTICE FROM C/O SODERLUND AND WAS ALLOWED TO REVIEW ONE PHOTO OF HIMSELF THAT WAS TAKEN ON

---

11. INSTITUTIONAL CLASSIFICATION COMMITTEE WHICH CONSISTED OF CHAIRPERSON C. SCAVETTA, CAPT. G. KELLY, CCII G. D'ERRICO, AND CCI W. BRENTS.
12. ON APRIL 13, 2007 PLAINTIFF RECEIVED A CDCR 128-B CHRONO STATING HIS REQUEST FOR A STAFF ASSISTANT WAS DENIED, CHRONO SIGNED BY C/O W. COLEMAN, SEE EXHIBIT D

1 FEBRUARY 2, 2007 BY % G. PARKER SHOWING PLAINTIFF ON THE GROUND GRIMINCING IN PAIN,
2 A HAND WITH A WEDDING BAND ON PLAINTIFFS LEFT SHOULDER AND A FOREARM, WITH A
3 TATTOO ABOVE HIS HEAD.    PLAINTIFF IS SHOWN HAVING RED MARKS ON HIS FACE (LACERA-
4 TIONS) AND RED SCRATCHES ACROSS THE UPPER LEFT SIDE OF CHEST.    PLAINTIFF INQUIRED
5 ABOUT OTHER PHOTOS AND VIDEOS TAKEN AT THE SCENE, % SOLER LUXIO RESPONDED "THIS IS
6 THE ONLY ONE I HAVE BUT I'LL ASK MY SUPERIORS", HE WAS TO RETURN WITH WHATEVER
7 OTHER PHOTOS THERE WERE, BUT HE NEVER RETURNED.    ON MAY 2, 2007 PLAINTIFF WAS
8 FOUND GUILTY OF THE RVR AND ON JUNE 18, 2007 FILED A 602. SEE CDCR 115 AND
9 602 NO. PBSP 07-01445 IN EXHIBIT D.

10    67. SINCE EARLY 2006 TO THE PRESENT PLAINTIFF HAS CONTINUOUSLY SOUGHT MEDICAL ATTEN-
11 TION/TREATMENT FOR HIS CHRONIC SINUS CONDITION.    PLAINTIFF HAS A 28 YEAR HISTORY
12 OF ALLERGIES AND PAST SINUS INFECTION.    IN NOVEMBER 2006 WHILE AT DR. LINE HE
13 REQUESTED TO BE SEEN BY A NASAL SPECIALIST, HE BELIEVED HE HAD A SINUS INFECTION.
14 S. RISENHOOVER DECISIONED PLAINTIFF MUST FIRST GO THROUGH A REGIMEN OF MEDICATIONS PRIOR
15 TO BEING RECOMMENDED TO SEE A SPECIALIST.    RETURNING TO DR. LINE IN DECEMBER 2006
16 S. RISENHOVER AGAIN PLACED PLAINTIFF THROUGH THE SAME REGIMEN, SEE CDCR 7230 DATED
17 JANUARY 31, 2007 IN EXHIBIT H.

18    68. ON JANUARY 7, 2007 PLAINTIFF COMPLETED THE REGIMEN AND STILL SUFFERED PAIN FROM
19 SINUS AND AGAIN AT DR. LINE S. RISENHOOVER PLACED PLAINTIFF ON THE SAME REGIMEN FOR
20 ANOTHER (30) DAYS.    THESE CONSISTENT (30) DAY REGIMENS WERE NOT ALLIVIATING THE PAIN
21 COMING FROM SINUS INFECTION.    ON JANUARY 10, 2007 PLAINTIFF FILED A 602 APPEAL ON S.
22 RISENHOOVER FOR INADEQUATE MEDICAL TREATMENT AND DENIAL OF REPEATED REQUESTS TO
23 SEE A SPECIALIST.    ON JANUARY 16, 2007 T. FLOWERS DENIED THE 602 AT INFORMAL LEVEL,
24 HOWEVER, THE 602 WAS DIRECTED AT S. RISENHOOVER, T. FLOWERS ADDRESSING 602 AT INFOR-
25 MAL WAS NOT WITHIN CCR15 § 3084.5 (a).(a)(1) OF APPEAL PROCEDURES.    AT FIRST
26 LEVEL REVIEW ON MARCH 16, 2007 S. RISENHOOVER AND M. SAYRE PARTIALLY GRANTED 602.
27 BUT NO REFERENCE IS MADE AS TO WHAT WAS PARTIALLY GRANTED.    IN ADDITION BECAUSE
28 THE 602 WAS APPEALING S. RISENHOOVER SHE SHOULD NOT HAVE CONDUCTED THE INTERVIEW

1. PER CCR.15 § 3084.5 (e).   ON APRIL 2, 2007 THE 602 WAS PARTIALLY GRANTED AT 2ND
2. LEVEL BY M. McLEAN AND J. KLAVITZ   REFERENCING IF SYMPTOMS PERSIST THEN A RECOM-
3. MENDATION TO SEE A SPECIALIST WOULD BE CONSIDERED.   AT THIS LEVEL IS REFERENCED A
4. STATEMENT PLAINTIFF NEVER MADE TO S. RISENHOOVER THAT "THE INFECTION WAS GONE".
5. TO DATE PLAINTIFF CONTINUES TO SUFFER PAIN CAUSED BY A NASAL INFECTION.   AT 3RD
6. LEVEL DIRECTORS REVIEW CONDUCTED BY C. HALL, HIS REVIEW AMOUNTED TO NOTHING MORE
7. THAN RUBBER STAMPING THE PREVIOUS REVIEWS.   AND CONCLUDING THAT THE SINUS CON-
8. DITION WAS RESOLVED AND ON THAT BASIS DENIED 602. SEE CDCR 7230 DOCUMENTS AND
9. 602 NO. PBSP07-00203 IN EXHIBITS A AND C.
10. 69. ADDITIONALLY, AT THE JANUARY 23, 2007 2ND LEVEL INTERVIEW PLAINTIFF ADVISED
11. S. RISENHOOVER THAT IN 2000 WHILE AT SAN QUENTIN HE HAD UNDERGONE CORRECTIVE NOSE
12. SURGERY FOR A BROKEN NOSE, BY DR. WINTHROP H. HALL WHO AT THE TIME SCRAPED PLAIN-
13. TIFF'S SINUS CAVITY DUE TO ROCK HOLES BEING INFECTED.   AND DR. HALL HAD ADVISED HIM
14. SOMETIME IN THE FUTURE HE WOULD NEED MORE SCRAPPINGS. SEE FEBRUARY 29, 2000 OPER-
15. ATIVE REPORT IN EXHIBIT H.   IT SHOULD BE NOTED 2ND LEVEL RESPONSE MAKES NO
16. MENTION OF THE ADVISEMENT.   ON MARCH 14, 2007 AT DR. LINE FOR A FOLLOW-UP ON PLAIN-
17. TIFF'S NECK INJURY AND SINUS INFECTION, S. RISENHOOVER STATED THE ANTIBIOTICS SHOULD HAVE DONE
18. THE JOB. SEE PLAINTIFF'S DECLARATION AND MARCH 14, 2007 CDCR 7230 IN EXHIBITS E AND H.
19. 70. ON APRIL 24, 2007 AT DR. LINE FOR SINUS INFECTION, AGAIN S. RISENHOOVER PRESCRIBED
20. THE SAME MEDICATIONS.   PLAINTIFF REQUESTED TO SEE A SPECIALIST, THE SINUS PRESSURE WAS
21. CAUSING PAIN TO HIS UPPER TEETH, AGAIN S. RISENHOOVER DENIED REQUEST.   ON OR ABOUT
22. MAY 1, 2007 PLAINTIFF SPOKE WITH J. FLOWERS ABOUT THE PAIN FROM SINUS INFECTION, AND NECK
23. INJURY, HE WAS PLACED ON DR. LINE SCHEDULE.   AT THE MAY 29, 2007 DR. LINE FOR CHRONIC
24. CARE, AGAIN S. RISENHOOVER DENIED PLAINTIFF'S REQUEST TO SEE A SPECIALIST. SEE PLAINTIFF'S
25. DECLARATION AND MAY 29, 2007 CDCR 7230 IN EXHIBITS E AND H.   THE CONSTANT DENIALS TO
26. SEE A SPECIALIST AND CONTINUING TO PRESCRIBE THE SAME REGIMENS OF MEDICATIONS CAUSED
27. PLAINTIFF TO WORRY AND FEAR OF FUTURE DENIALS REGARDING HIS MEDICAL CONDITION, SEE
28. PLAINTIFF'S DECLARATION IN EXHIBIT E.

71. ON JUNE 20, 2007 PLAINTIFF SUBMITTED A CDCR 7362 COMPLAINING OF AN EARACHE FROM THE SINUS INFECTION.    ON JUNE 22, 2007 J. FLOWERS INTERVIEWED HIM PRIOR TO DR. LINE, AT THE JUNE 26, 2007 DR. LINE PLAINTIFF COMPLAINED OF PAIN TO UPPER TEETH AND EARACHE CAUSED BY PRESSURE FROM SINUS INFECTION.    EXPLAINED TO S. RISENHOOVER OF HIS SINUS SCRAPED WHILE AT SAN QUENTIN, AND AGAIN REQUESTED TO SEE A SPECIALIST, AGAIN HE WAS DENIED AND INSTEAD PRESCRIBED THE SAME MEDICATION.    THESE DENIALS CONTINUE TO CAUSE PLAINTIFF TO FEAR ABOUT HOW MUCH MORE PAIN HE MUST ENDURE, SEE PLAINTIFF'S DECLARATION AND JUNE 26, 2007 CDCR 7230 IN EXHIBITS E AND H.    ON JULY 12, 2007 PLAINTIFF REQUESTED UNIT CONTROL BOOTH C/O CLEMEN CALL MEDICAL DUE TO SINUS PAIN AND PRESSURE ON LEFT EYE [13].    AT A JULY 23, 2007 DR. LINE AGAIN A REQUEST TO SEE A SPECIALIST WAS DENIED BY S. RISENHOOVER WHO ONLY PRESCRIBED NASAL SPRAYS.    THIS DENIAL AGAIN CAUSED PLAINTIFF TO WORRY ABOUT HIS MEDICAL PROBLEMS AND HOW LONG HE MUST ENDURE SUFFERING BEFORE GETTING PROPER CORRECTIVE TREATMENT.    AGAIN AT AN AUGUST 24, 2007 MEDICAL CHRONIC CARE VISIT AND AT NOVEMBER 13 AND 26, 2007 VISITS REQUESTS TO SEE A SPECIALIST WERE DENIED BY S. RISENHOOVER, SEE PLAINTIFF'S DECLARATION AND CDCR 7230s DATED JULY 23, 2007; AUGUST 24, 2007; AND NOVEMBER 13 AND 26, 2007 IN EXHIBITS E AND H

72. BETWEEN 1997~2000 PLAINTIFF WAS DIAGNOSED AS HAVING CROHNS DISEASE. ON THANKSGIVING NIGHT OF 1997 PLAINTIFF EXPERIENCED LOWER ABDOMINAL PAIN AND TAKEN TO SAN QUENTI INFIRMARY AND HELD OVERNIGHT FOR OBSERVATION.    PLAINTIFF CONTINUED TO HAVE ABDOMINAL PAINS ON A WEEKLY BASIS. [14] IN MARCH OF 1998 HE WAS TAKEN TO SICK CALL FOR ABDOMINAL PAIN AND FOUND TO HAVE A TEMPERATURE OF 102°, TAKEN TO PRISON HOSPITAL FOR X-RAYS AND BLOOD TESTS, DURING THE TESTS PLAINTIFF FAINTED.    AWAKENING AT THE EMERGENCY CLINIC STAFF WERE DISCUSSING HE HAD A TEMPERATURE OF 105.° HE WAS ADMITTED TO THE PRISON HOSPITAL FOR OBSERVATION AND TESTS AND RELEASED FIVE (5) DAYS LATER HE CONTINUED TO HAVE ABDOMINAL PAINS AND PRESCRIBED MEDICATIONS FOR PAIN, SEE MEDICAL DOCUMENTS IN EXHIBIT G.

73. IN NOVEMBER 2001 PLAINTIFF WAS TRANSFERRED TO P.B.S.P. AND ON JANUARY 2, 2002

13. WHEN CLINIC DIDN'T RESPOND HOUSING C/O J. DIMMICK WENT TO THE CLINIC NOTIFYING PERSONAL OF PLAINTIFFS PROBLEM AND WAS TOLD HE WAS ALREADY ON A SCHEDULE FOR DR. LINE.
14. THE DR. TOLD PLAINTIFF PRISON STAFF BELIEVED HE WAS FAKING THE ILLNESS IN ORDER TO GET OUT OF THE ADJUSTMENT CENTER WHERE HE WAS HOUSED UNDER DEATH SENTENCE.

1 HE WAS TRANSFERED TO THE LOS ANGELES COUNTY JAIL FOR RETRIAL.    WHILE THERE HE WAS

2 EXAMINED BY A GASTROENTEROLOGIST AND PLACED ON A SPECIAL DIET TO FIT HIS MEDICAL NEEDS

3 ON MARCH 16, 2002.    AND IN THE (18-20) MONTHS ON THE DIET HE EXPERIENCED ONE MINOR

4 CROHNS FLARE-UP, SEE AUGUST 22, 2003 L.A. COUNTY MEDICAL PRINT OUT AND PLAINTIFF'S DECLARA-

5 TION IN EXHIBITS G AND E.

6    74. ON SEPTEMBER 11, 2003 PLAINTIFF RETURNED TO PBSP-SHU ALONG WITH COUNTY JAIL

7 MEDICAL FILE IN ORDER TO NOTIFY PBSP MEDICAL STAFF OF AND RECEIVE THE SAME TREATMENT

8 FOR HIS CROHNS.    ON OCTOBER 20, 2003 PLAINTIFF FILED A 602 REQUESTING A SPECIAL DIET,

9 AND AN INFORMAL RESPONSE WAS DENIED BY NURSE P. BROWS.    AT FIRST LEVEL, DIETICIAN

10 J. HARTMAN REVIEWED AND PARTIALLY GRANTED 602, HOWEVER, WHAT WAS PARTIALLY GRANTED

11 AS TO THE DIET IS UNCLEAR, NOTHING WAS CHANGED PLAINTIFF WAS NOT PLACED ON ANY SORT

12 OF DIET.    AND ALTHOUGH THIS 602 CITES A VIOLATION OF THE AMERICAN DISABILITY ACT, THAT

13 WAS NEVER ADDRESSED.    AT SECOND LEVEL DR. W. WINSLOW AND A. K. THACKER

14 INVESTIGATED AND REVIEWED CLAIM, DENYING 602 ON BASIS THAT THERE IS NO

15 SPECIAL DIET FOR CROHN'S DISEASE.    AT DIRECTORS LEVEL THE REVIEW CONSISTED OF

16 NOTHING MORE THAN RUBBER STAMPING PREVIOUS LEVELS DECISIONS 602 WAS DENIED

17 ON APRIL 21, 2004 SEE 602 NO. PBSP 03-02882 IN EXHIBIT C.

18    75. ON OR ABOUT NOVEMBER 21, 2005 GASTROENTEROLOGIST DR. SOGGE PRESCRIBED

19 A DIARY-FREE DIET AND SCHEDULED HIM FOR A COLONOSCOPY FOR EARLY 2006.    AND ON

20 DECEMBER 19, 2005 S. RISENHOOVER REAFFIRMED PLAINTIFF'S NEED FOR DIARY-FREE

21 DIET PRIOR TO HAVING A COLONOSCOPY.    THE DIET WAS NEVER PROVIDED TO PLAINTIFF AND

22 ON JANUARY 11, 2006 PLAINTIFF FILED A 602 AND WAS REJECTED ON MARCH 15 2006 AS

23 A DUPLICATE SEE 602 NO. PBSP D06-00211 IN EXHIBIT C.

24    76. ON MAY 3, 2006 PLAINTIFF FILED A 602 FOR RETALIATION AND INDIFFERENCE TO REQ-

25 UESTS FOR MEDICAL TREATMENT.    ON MAY 9, 2006 PLAINTIFF WAS OUT TO COURT FOR (28) DAYS,

26 UPON HIS RETURN TO PBSP TIME LIMITATIONS FOR THE 602 HAD EXPIRED. SEE 602 NO. BSP

27 06-01026 IN EXHIBIT C.    ON OR ABOUT SEPTEMBER 13, 2006 WHILE AT DR. LING FOR

28 A KNEE INJURY PLAINTIFF COMPLAINED TO S. RISENHOOVER OF ABDOMINAL PAINS HE

18.

1  BELIEVED WERE CROHNS FLARE-UPS.   SHE RESPONDED "YOUR NOT HERE FOR THAT, SUBMIT

2  ANOTHER SICK CALL SLIP".   THE NEXT MORNING WHILE WASHING UP PLAINTIFF FAINTED,

3  HE TRIED CALLING OUT TO HIS NIEGHBOR D'ANGER MARTINEZ.   UPON REGAING CONSCIO-

4  USNESS HE STRUGGLED TO THE SINK AREA TO THROW COLD WATER ON HIMSELF.   AT THAT

5  TIME PRISONER MARTINEZ CAME OUT OF HIS CELL TO USE HIS MEDICATION AND NOTICED

6  PLAINTIFF HOLDING HIMSELF UP AGAINST HIS CELL DOOR.   MARTINEZ ASKED HIM

7  IF HE WAS ALRIGHT, PLAINTIFF ASKED HIM TO NOTIFY FLOOR STAFF THAT HE NEEDED MEDICAL

8  ATTENTION.   SUBSEQUENTLY, CONTROL BOOTH STAFF WAS NOTIFIED, FOLLOWED BY C/O's

9  K. NEELY AND D. THOM SPEAKING WITH MARTINEZ WHO EXPLAINED PLAINTIFF NEEDED

10  MEDICAL ATTENTION, SEE DECLARATIONS OF D. MARTINEZ AND PLAINTIFF IN EXHIBIT E.

11       77. C/O's NEELY AND THOM HAD CONTROL BOOTH OPEN PLAINTIFF's CELL, HE WOBBLED OVER TO

12  THE POD DOOR AND EXPLAINED TO STAFF WHAT HAPPENED, C/O's RESPONDED THEY WOULD NOT-

13  IFY THE CLINIC AND ORDERED PLAINTIFF BACK TO HIS CELL.   ABOUT (5) MINUTES LATER C/O's

14  NEELY, THOM AND R. N. J. FLOWERS CAME TO PLAINTIFF's CELL, D. FLOWERS HAD PLAINTIFF

15  HAND CUFFED IN ORDER TO TAKE HIS VITALS.   D. FLOWERS STATED PLAINTIFF NEEDED TO GO

16  TO THE CLINIC, HE WAS PLACED IN A WHEEL CHAIR AND ESCORTED TO "D" FACILITY CLINIC UNTIL

17  HIS VITALS STABALIZED.   THAT WAS THE EXTENT OF MEDICAL ATTENTION, HOWEVER AS A

18  RESULT OF THE FAINTING HE WAS PLACED ON "FAST TRACK" TO SEE THE GASTROENTEROLOGIST,

19  SEE PLAINTIFF's DECLARATION AND SEPTEMBER 14, 2006 CDCR 7230 IN EXHIBITS E AND G.

20       78. ON OR ABOUT OCTOBER 6, 2006 PLAINTIFF UNDERWENT A COLONOSCOPY BY DR. MART-

21  INELLI AT SUTTER COAST HOSPITAL.   ON NOVEMBER 13, 2006 PLAINTIFF HAD A INTERVIEW WITH

22  DR. MARTINELLI TO DISCUSS TEST RESULTS.   AT WHICH TIME PLAINTIFF EXPLAINED OF HAVING

23  BAD REACTIONS FROM EATING DAIRY PRODUCTS, EGGS, SPICEY AND GREASY FOODS.

24  DR. MARTINELLI STATED THAT "THEY (RESP MEDICAL STAFF AND ADMINISTRATION) FROWN ON ME

25  ORDERING SPECIAL DIETS".   AND ALSO STATED TO PLAINTIFF THE REVIEW COULD NOT BE COMPL-

26  ETED BECAUSE THE COLONOSCOPY REPORT WAS INCOMPLETE, ONE OF THE TWO-PAGE REPORT

27  WAS MISSING.   PLAINTIFF HAS ATTEMPTED TO OBTAIN THE TWO PAGE REPORT NOT UNTIL JANUARY

28  WAS HE GIVEN AN OLSON MEDICAL REVIEW, BUT DID NOT OBTAIN THE REPORT.

79. ON DECEMBER 13,2006 PLAINTIFF FILED A 602 IN RELEVANT PART. ON NOVEMBER 13,2006 HE WAS SEEN BY DR. MARTINELLI (TO DISCUSS RESULTS OF COLONOSCOPY) THIS CONSOLATION WAS HELD WITHOUT THE BENIFIT OF A COMPLETE COLONOSCOPY REPORT.    AT INFORMAL LEVEL J. FLOWERS DENIED THE 602 BASED ON DR. MARTINELLI'S COMMENTS ABSENT THE BENIFIT OF THE COMPLETE REPORT.    AT FIRST LEVEL REVIEW APPEAL PROCEDURES C.C.R.I.S. SECTION 3084.5 (e) WERE VIOLATED BY S. RISENHOOVER WHEN SHE PARTICIPATED IN THE REVIEW ON THE BASIS THAT SHE WAS PART OF THE APPEAL COMPLAINT.    AT SECOND LEVEL J. KRAVITZ AND M. McLEAN INVESTIGATED AND REVIEWED THE CLAIM WHO CONCLUDED AS TO THE CROHN'S DISEASE, ITS NORMAL TO HAVE OCCASSIONAL DISCOMFORT AND NOTHING IS IN THE RECORD TO SUBSTANTIATE THE CLAIM OF SUBSTANDARD CARE.    PLAINTIFF HAS CONSISTENTLY COMPLAINED OF THE ONGOING PAIN FROM CROHN'S FLARE-UPS TRIGGERED BY CERTAIN FOODS.    PLAINTIFF HAS CONSISTENTLY GONE THROUGH THE SAME REGIMEN OF MEDICATIONS RESULTING IN NO CHANGE, AND MAKE HIM SICK.    J. KRAVITZ AND M. McLEAN PARTIALLY GRANTED ALTHOUGH DO NOT REFERENCE WHAT IS PARTIALLY GRANTED.    AT THIRD LEVEL REVIEW BY C. HALL HE DID NOT CONSIDER THE CONSISTENT REGIMENS OF SAME MEDICATIONS THAT NEITHER ALLIVIATE FLARE-UPS OR PAIN; THE INCOMPLETE COLONOSCOPY REPORT OR S. RISENHOOVER'S PARTICIPATION IN THE APPEAL PROCESS. APPEAL WAS EXHAUSTED ON JULY 3,2007 SEE 602 APPEAL NO. RJSP 07-00131 IN EXHIBIT C.

80. PLAINTIFF FILED TWO (2) 602 APPEALS ON I.G.I. STAFF, (WHO UNDER INFORMATION AND BELIEF ARE A PART OF THE GREEN WALL CORRECTIONAL PRISON GANG) REGARDING HIS MAIL.    THE FIRST FILED ON MAY 31, 2007 (RJSP 07-01271) CLAIMING RETALIATION AND EMPLOYEE MISCONDUCT ON I.G.I. STAFF FOR STEALING AND/OR WITHHOLDING HIS MAIL FOR FILING GRIEVANCE CLAIMING SUBJECTION TO EXCESSIVE USE OF FORCE. THE SECOND FILED ON JUNE 1,2007 (RJSP 07-01299) CLAIMING GENERATING AND PLACING FALSE INFORMATION IN PRISON FILE VIOLATIVE OF CALIFORNIA INFORMATION PRACTICE ACT BY J. PUENTE IN RETALIATION FOR FILING GRIEVANCE OF EXCESSIVE USE OF FORCE BY NUMEROUS GREEN WALL ENDORSED I.G.I. UNIT STAFF.    ON MAY 15, 2007 J. PUENTE STOPPED A PUBLICATION SENT TO PLAINTIFF WHICH WAS A PRE-BLOG FROM

20.

1  A CDCR APPROVED VENDOR, AND ISSUED PLAINTIFF A CDCR 128 B CHRONO[15.] WHEN PRISON

2  REGULATIONS AND OPERATIONAL PROCEDERS (CCR15 § 3147 (a)(5)(A): OP 205 (5))

3  MANDATE ISSUING A CDCR 1819 FORM WHEN MAIL IS DISAPPROVED.  IN THE 128-B

4  J. PUENTE REFERENCES "RETAINED BY INVESTIGATIVE SERVICES UNIT FOR INVESTIGATION /

5  POTENTIAL DISCIPLINARY OR COURT PROCEEDINGS".  PLAINTIFF ASSERTS THAT J. PUENTE

6  AS PART OF THE GREEN WALL EMBEDDED I.G.I. UNIT CONDUCT A POLICY OF ISSUING CDCR

7  128-B INSTEAD OF CDCR 1819 FORMS.  IN ORDER TO HAVE INFORMATION (OFTEN FALSLY

8  CREATED) PLACED IN PRISON FILE THAT SUPERFICIALLY WILL APPEAR TO SUPPORT THE

9  I.G.I. UNITS AGENDA THAT THEIR POLICIES ARE FOR PRISON SAFETY AND SECURITY.

10  BOTH 602 APPEALS WERE BYPASSED TO 2ND LEVEL REVIEW, COMBINED UNDER ONE

11  REVIEW AND BOTH DENIED BY LT. W. ANTHONY AND CAPT. K. BRANDON.   SUBSE-

12  QUENTLY BOTH 602s WERE SUBMITTED TO DIRECTOR'S REVIEW, THE REVIEWER WAS R.

13  PIMENTEL.  WHO ELECTED TO ADDRESS ONLY 602 NO. 07-01299 MAKING REFERENCE

14  TO THE PUBLICATION AND ISSUANCE OF CDCR 128-B AND DOES NOT ADDRESS THE I.P.A.

15  RETALIATION, EMPLOYEE MISCONDUCT OR FAILURE TO FOLLOW REGULATIONS AS TO MAIL.

16  APPEAL WAS DENIED ON DECEMBER 8, 2007. SEE 602 NO. RBSP 07-01299 IN EXHIBIT B.

17    81. ON JULY 28, 2007 PLAINTIFF'S CORRESPONDANT FILED TWO CITIZENS COMPLAINTS

18  ON J. PUENTE, C. CONTRERS, LT. W. ANTHONY AND CAPT. K. McGUYER FOR ISSUING THE

19  CDCR 128 B WHEREBY SHE WAS SENT A COPY.  THEIR ISSUANCE BEING TANTAMOUNT

20  TO ALLEGING THAT SHE IS INVOLVED IN CRIMINAL ACTIVITIES LT. R. RIVE WAS ASSIGNED

21  TO THE COMPLAINT ON SEPTEMBER 28, 2007.  AND THE COMPLAINT WAS GRANTED AS

22  TO CORRESPONDANT AND THE CARDS RETURNED TO HER.  HOWEVER, THAT THE CDCR

23  128 B WOULD NOT BE REMOVED FROM PLAINTIFF'S FILE AS IT IS PERMANENT RECORD IN

24  HIS FILE SEE SEPTEMBER 28, 2007 CITIZENS COMPLAINT RESPONSE IN EXHIBIT D

25    82. ON NOVEMBER 19, 2007 PLAINTIFF FILED A 602 DIRECTED AT S. RISENHOOVER

26  FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS AND DISCRIMINATING FOR BEING

27  _____
   15. NOT REFERENCED ARE CARDS THAT WERE SENT WITH THE CATALOG.  UNDER INFORMATION AND

28  THE CDCR 128-B ARE ISSUED AND USED AS A TOOL BY THE I.G.I. TO GENERATE FALSE DOCUMENTATION
   TO INDICATE GANG ACTIVITY.  AND BECOMING FABRICATED DOCUMENTIVE EVIDENCE THAT CAN BE
   AND IS RELIED UPON AT ANY FUTURE TIME AS NEEDED.

HOUSED IN THE GANG CORRIDOR, SPECIFICALLY SINUS INFECTION AND CROHN'S DISEASE. PLAINTIFF REQUESTED TO BE TREATED FOR SEVER SINUS PAIN AND HAVE SINUS CLEARED OF CYST. AND MEDICAL STAFF CEASE ACTING DELIBERATELY INDIFFERENT TO MEDICAL NEEDS AND DISCRIMINATORILY FOR HOUSING[15]. AT INFORMAL LEVEL J. FLOWERS RESPONDED TO APPEAL WHEN APPEAL PROCEDURE MANDATED THAT S. RISENHOOVER RESPOND. AT FIRST LEVEL C. GOROSCOPE CONDUCTED THE REVIEW ALONG WITH M. SAYRE; THE SINUS CONDITION WAS PARTIALLY GRANTED BUT DENIED THE DELIBERATE INDIFFERENCE AND DISCRIMINATION CLAIM. HOWEVER, TO DATE OTHER THAN THE SAME MEDICATIONS, NOTHING HAS BEEN DONE FOR HIS SINUS INFECTION OR CROHN'S DISEASE. AT SECOND LEVEL M. McLEAN AND J. KRAVITZ CCII REVIEWED THE APPEAL AND PARTIALLY GRANT AS TO THE SINUS INFECTION AND DENY THE MEDICAL DELIBERATE INDIFFERENCE AND DISCRIMINATION CLAIM. YET TO DATE OTHER THAN PRESCRIBING SAME MEDICATIONS HIS SINUS INFECTION PERSISTS. AT THIRD LEVEL, REVIEW AMOUNTED TO NOTHING MORE THAN RECAPPING THE LOWER LEVEL REVIEWS. PLAINTIFF CONTINUES TO SUFFER PAIN CAUSED BY THE SINUS INFECTION SEE 602 NO. PBSP 07-11548 IN EXHIBIT C.

83. ON MARCH 4, 2008 PLAINTIFF FILED A 602 CLAIMING INADEQUATE MEDICAL CARE IN RETALIATION FOR FILING A § 1983 CIVIL RIGHT ACTION, IN PART FOR INADEQUATE MEDICAL ATTENTION AND TREATMENT. AT INFORMAL LEVEL J. FLOWERS PARTIALLY GRANTED APPEAL STATING "YOU ARE GETTING ADEQUATE MEDICAL CARE." AT FIRST LEVEL S. RISENHOOVER GRANTED APPEAL AND ESSENTIALLY ACKNOWLEDGED THAT PLAINTIFF HAD BEEN MADE TO SUFFER. BELIEVING THAT WITH THE GRANTING OF APPEAL HIS MEDICAL PROBLEMS WERE FINALLY TO BE CORRECTED PLAINTIFF SAW NO NEED TO CONTINUE THE APPEAL, SEE 602 NO. 1A-18-2008-1190 IN EXHIBIT C.

84. ON FEBRUARY 27, 2008 PLAINTIFF WENT TO DR. LING FOR HIS RIGHT KNEE WHILE EXPLAINED TO S. RISENHOOVER THERE WAS BLOOD IN HIS STOOL HER RESPONSE WAS "YOUR NOT HERE FOR THAT, PUT A SICK CALL SLIP IN." ON MARCH 3, 2008 PLAINTIFF EXPLAINED TO LVN KARENIAPOLIS THAT HIS CROHN'S MEDICATION HAD NOT BEEN REFILLED IN

15. UNDER INFORMATION AND BELIEF AT THE DIRECTION OF THE GREEN WALL EMBEDDED I.G.I. UNIT MEDICAL STAFF IS ENCOURAGED TO DELAY OR DENY MEDICAL ATTENTION AND TREATMENT TO PRISONERS HOUSED IN THE GANG CORRIDOR. IN AN EFFORT TO BREAK THEIR WILL AND COERCE THEM INTO DEBRIEFING.

1. TEN DAYS AND THE PHARMACY WOULD NOT ACT UPON REQUESTS FOR REFILL VIA CDCR 7362
2. FORMS.   PLAINTIFF HAD SUBMITTED (3) REQUESTS, ONE WAS RETURNED STATING THAT J.
3. FLOWERS WOULD BE NOTIFIED.   ON MARCH 4, 2008 PLAINTIFF NOTIFIED HOUSING STAFF
4. J. DIMMICK OF HAVING BLOODY STOOLS DUE TO NO MEDICATIONS.   ON MARCH 5, 2008 SENT
5. A CDCR 7362 FORM DUE TO CROHNS FLARE-UP AND NEEDING MEDICATIONS.
6. ON MARCH 6, 2008 J. FLOWERS AND UNKLOWN MEDICAL STAFF CAME TO HOUSING POD DOOR
7. FOR THE CDCR 7362 SUBMITTED ON MARCHS 7H.   J. FLOWERS WOULD SCHEDULE FOR
8. DR. LINE.   ON MARCH 7, 2008 SUFFERED ANOTHER CROHN'S FLARE-UP WENT TO
9. SEE J. FLOWERS AT DR. LINE HE TOOK UTALS, PLAINTIFF EXPLAINED THE CROHN'S
10. FLARE-UP WAS CAUSED BY LACK OF MEDICATIONS, HE WAS SENT BACK TO HIS CELL.
11. ON MARCH 10, 2008 SAW S. RISENHOOVER AT DR. LINE, PLAINTIFF EXPLAINED THAT THE
12. CROHNS FLARE-UP WAS CAUSED BY MEDICAL STAFF AND PHARACYS' INCOMPETENCE BY
13. STOPPING HIS MEDICATIONS AND J. FLOWERS NOT BOTHERING TO CHECK.   ON MARCH 30,
14. 2008 SUBMITTED ANOTHER CDCR 7362 FOR SINUS INFECTION.   AND ON APRIL 1, 2008
15. J. FLOWERS RESPONDED AT HOUSING POD DOOR STATING IT WOULD BE AWHILE MAYBE TWO
16. WEEKS BEFORE S. RISENHOOVER COULD SEE HIM FOR THE SINUS INFECTION BECAUSE SHE
17. OVERSEEING BOTH SHU FACILITIES BECAUSE A DOCTOR HAD QUIT.   PLAINTIFF EXPLAINED
18. TO J. FLOWERS HE HAD A FEVER, BLOODY MUCUS AND PUSS AS WELL AS PAIN FROM
19. SINUS PRESSURE, J. FLOWERS DID NOTHING.   LATER THE SAME DAY THE FEVER
20. CAUSED PLAINTIFF TO AGAIN CALL FOR MEDICAL ATTENTION.   THIRD WATCH LVN
21. MACALLISTER TOOK PLAINTIFFS TEMPETURE WHICH WAS AT 101.3 DEGREES AND
22. PROVIDED PLAINTIFF WITH ANTIBIOTICS. SEE PLAINTIFFS DECLARATION IN EXHIBIT E.
23. 85. ON MAY 27, 2008 PLAINTIFF WENT TO DR. LINE FOR HIS SINUS INFECTION, HOWEVER,
24. WAS REFUSED MEDICAL ATTENTION BECAUSE HE WAS UNABLE TO "STRADDLE" THE SECURITY
25. STOOL WHILE MY ANKLES WERE CHAINED BECAUSE OF MY KNEE INJURY.   MEDICAL ESCORT
26. C/O WILLIAMS ORDERED PLAINTIFF TO SIT OR LEAVE, HE EXPLAINED DUE TO HIS KNEE INJURY
27. THE KNEE WILL POP IF HE COULD NOT EXTEND HIS LEG.   S. RISENHOOVER INTERJECTED THAT
28. PLAINTIFF COULD LAY ON THE EXAMINATION TABLE C/O WILLIAMS DID NOT RESPOND TO HER

1 AND ORDERED PLAINTIFF TO LEAVE, THE MEDICAL VISIT WAS TERMINATED.    SUBSEQUENTLY, S. RISEN-

2 HOOVER PLACED IN PLAINTIFF'S MEDICAL FILE THAT HE REFUSED MEDICAL TREATMENT [16].

3     86. ON JUNE 24, 2008 PLAINTIFF HAD AN ALLERGIC REACTION AND COULD NOT BREATH, A LVN

4 CAME, TOOK HIS VITALS AND STATED T. FLOWERS WOULD BE BACK TO SEE HIM.    ON JUNE 25, 2008

5 T. FLOWERS SAW PLAINTIFF AND STATED HE WOULD SEE S. RISENHOOVER SOON AS POSSIBLE.

6 ON JULY 2, 2008 WHILE AT DR. LINE FOR SINUS INFECTION AND ALLERGIES HAD A BLOOD TEST TAKEN,

7 S. RISENHOOVER ORDERED ANTIBIOTICS FOR INFECTION RENEWED NASAL SPRAYS AND CROHNS MEDICATION,

8 AND WOULD CALL BACK PLAINTIFF IN TWO WEEKS FOR A FOLLOW-UP.    ON JULY 14, 2008 PLAINTIFF

9 RECEIVED NOTICE OF BLOOD TEST RESULTS NOT WITHIN NORMAL LIMITS AND WOULD BE DISCUSSED

10 AT NEXT SCHEDULED VISIT. SEE LAB TEST RESULTS IN EXHIBIT D.

11     87. ON DECEMBER 5, 2007 PLAINTIFF FILED A CLAIM WITH THE CALIFORNIA VICTIMS

12 COMPENSATION AND GOVERNMENT CLAIMS BOARD.    AND ON DECEMBER 21, 2008 THE

13 CLAIM WAS DENIED, SEE CLAIM DENIAL IN EXHIBIT D.

14

15         III.  FACTS PERTAINING TO DEFENDANTS INTENT

16     88. DEFENDANTS HAVE INTENTIONALLY ATTACKED PLAINTIFF WHILE HANDCUFFED BY USE OF

17 FORCE CAUSING BODILY INJURY AND MENTAL SUFFERING.

18     89. THE ASSAULT WAS IN RETALIATION FOR PLAINTIFF FILING GRIEVANCES OF EMPLOYEE MIS-

19 CONDUCT FOR DISALLOWING MAIL UNDER THE PRETENSE THAT ON FEBRUARY 2, 2007 PLAINTIFF

20 REFUSED TO TAKE ADDITIONAL PHOTOS FOR A DEFENDANTS PERSONAL USE.

21     90. DIRECT EVIDENCE OF DEFENDANTS INTENT OF EXCESSIVE USE OF FORCE ARE NUMEROUS

22 FILING OF GRIEVANCES BY PLAINTIFF ON I.G.I. STAFF PRIOR TO FEBRUARY 2, 2007.

23     91. DIRECT EVIDENCE OF DEFENDANTS INTENT IS, SUBSEQUENT TO PLAINTIFF FILING EXCESSIVE USE

24 OF FORCE GRIEVANCE, DEFENDANTS ISSUED A R.V.R. SEE EXHIBIT D.

25     92. DEFENDANTS HAVE BEEN DELIBERATE AND INDIFFERENT TO PLAINTIFFS RIGHT TO BE SAFE

26 FROM UNWARRANTED HARM.    EVIDENCE OF DEFENDANTS STATE OF MIND IS FOUND IN THE CHAIN

27 OF EVENTS PRIOR TO FEBRUARY 2, 2007 AND AFTER.

28     93. CIRCUMSTANTIAL EVIDENCE OF DEFENDANTS STATE OF MIND IS PROVIDED BY DEFENDANTS

16. PLAINTIFF FILED A 602 ON THIS DENIAL OF MEDICAL ATTENTION REFERENCING S. RISENHOOVER'S
STATEMENT, HOWEVER, AT TIME OF THIS AMENDED COMPLAINT THE 602 IS IN PROCESS.

1   SYSTEMATIC DENIAL OF OR OUTRIGHT CANCELLATION OF GRIEVANCES FILED.

2   94. DEFENDANTS, IN RETALIATION HAVE INTENTIONALLY FOUND PLAINTIFF GUILTY OF THE
3   RULES INFRACTION ABSENT PROVIDING HIM WITH A FAIR HEARING.

4   95. DIRECT EVIDENCE OF DEFENDANTS' INTENT IS THE TIMING OF FILING THE R.V.R.

5   96. EVIDENCE OF DEFENDANTS STATE OF MIND IS PROVIDED BY NOT AFFORDING PLAINTIFF
6   A STAFF ASSISTANT OR THE PRESENCE OF REQUESTED WITNESSES AT DISCIPLINARY HEARING.

7   97. DEFENDANTS HAVE INTENTIONALLY CHOSEN NOT TO PROVIDE PLAINTIFF WITH THE ADEQUATE
8   MEDICAL ATTENTION AND TREATMENT ENTITLED HIM REGARDING HIS CROHNS DISEASE.

9   98. DIRECT EVIDENCE OF DEFENDANTS' INTENT TO NOT PROVIDE ADEQUATE MEDICAL
10  TREATMENT IS THE REPETITIOUS REGIMENS OF SAME MEDICATIONS AND IGNORING EVIDENCE OF
11  HIS FACTUAL NEED FOR CURATIVE MEDICAL TREATMENT

12  99. DEFENDANTS HAVE BEEN DELIBERATE AND INDIFFERENT TO PLAINTIFF'S NEED FOR PROPER
13  TREATMENT. EVIDENCE OF DEFENDANTS' STATE OF MIND IS THEIR FAILURE TO GO BEYOND MINIMUM
14  PERFUNCTORY MEDICAL ATTENTION AND TREATMENT AND ABSENCE OF ANY JUSTIFIABLE REASON NOT
15  TO TREAT PLAINTIFF ADEQUATELY.

16  100. CIRCUMSTANTIAL EVIDENCE OF DEFENDANTS' STATE OF MIND IS BY DEFENDANTS' SYSTEMATIC
17  DENIAL OF FAIR GRIEVANCE REVIEWS, SEE 602 APPEALS IN EXHIBIT C.

18  101. DEFENDANTS INTENTIONALLY CHOOSE NOT TO PROVIDE PLAINTIFF WITH ADEQUATE MEDICAL
19  ATTENTION AND TREATMENT REGARDING HIS CRONIC SINUS CONDITION.

20  102. DIRECT EVIDENCE OF DEFENDANTS' INTENT NOT TO PROVIDE ADEQUATE MEDICAL
21  TREATMENT IS THE REPETITION OF SAME REGIMEN OF NASAL TREATMENT AND DENYING NASAL SCRAPES.

22  103. DEFENDANTS HAVE BEEN DELIBERATE AND INDIFFERENT TO PLAINTIFFS' NEED FOR PROPER
23  CORRECTIVE TREATMENT. EVIDENCE OF DEFENDANTS' STATE OF MIND IS THEIR FAILURE TO GO BEYOND
24  THE MINIMUM PERFUNCTORY MEDICAL ATTENTION AND THE ABSENCE OF ANY JUSTIFIABLE REASON
25  NOT TO ADEQUATELY TREAT PLAINTIFF

26  104. CIRCUMSTANTIAL EVIDENCE OF DEFENDANTS STATE OF MIND IS PROVIDED BY DEFENDANTS
27  SYSTEMATIC DENIAL OF FAIR GRIEVANCE REVIEWS. SEE 602s IN EXHIBIT C.

28  //

## VII. EXHAUSTION OF ADMINISTRATIVE REMEDIES

105. PLAINTIFF HAS EXHAUSTED ADMINISTRATIVE REMEDIES AS FOLLOWS :

A) INMATE CDCR 602 LOG NO. PBSP-07-00389, RE: RETALIATORY EXCESSIVE USE OF FORCE CAUSING BODILY INJURY BY GREEN WALL I.G.I. STAFF, EXHAUSTED JUNE 25,2007, SEE EXHIBIT A

(B) INMATE CDCR 602 LOG NO PBSP-07-00866, RE'S DENIAL OF MEDICAL TREATMENT RESULTING FROM EXCESSIVE USE OF FORCE, EXHAUSTED JULY 8, 2007, SEE EXHIBIT A.

C) INMATE CDCR 602 LOG NO. PBSP-07-00717, RE: DENIAL OF MEDICAL CARE EXHAUSTED SEPTEMBER 29, 2007, SEE EXHIBIT A

(D) INMATE CDCR 602 LOG NOs PBSP-07-01299 (PBSP-07-01271 ATTACHED), RE: RETALIATORY ACTS, DENYING MAIL, EMPLOYEE MISCONDUCT, EXHAUSTED DECEMBER 8, 2007, SEE EXHIBIT B

E) INMATE CDCR 602 LOG NO PBSP-07-00073, RE: DENIAL OF INCOMING MAIL BY I.G.I., ARBITRARILY CANCELLED FEBRUARY 28, 2007, SEE EXHIBIT B

F) INMATE CDCR 602 LOG NO. PBSP-07-00130, RE: DENIAL OF INCOMING MAIL BY I.G.I. ARBITRARILY CANCELLED FEBRUARY 21, 2007, SEE EXHIBIT B

G) INMATE CDCR 602 LOG NO. PBSP-06-02663, RE: I.G.I. NEGLIGENT MISHANDLING OF MAIL, EXHAUSTED MARCH 21, 2007, SEE EXHIBIT B

H) INMATE CDCR 602 LOG NO. PBSP-06-02070, RE: MAIL DENIAL BY I.G.I. EXHAUSTED FEBRUARY 2, 2007, SEE EXHIBIT B

I) INMATE CDCR 602 LOG NO. PBSP-06-02263, RE: DENIAL OF INCOMING MAIL BY I.G.I. EXHAUSTED FEBRUARY 20, 2007. SEE EXHIBIT B

J) INMATE CDCR 602 LOG NO. PBSP-07-00131, RE: DENIAL OF MEDICAL ATTENTION AND TREATMENT, EXHAUSTED JULY 3, 2007, SEE EXHIBIT C

K) INMATE CDCR 602 LOG NO. PBSP-06-01026, RE: MEDICATIONS FOR CROHN'S DISEASE GRANTED AT FIRST LEVEL JUNE 29, 2006 SEE EXHIBIT C

L) INMATE CDCR 602 LOG NO. PBSP-07-203 RE: DENIAL OF ADEQUATE MEDICAL ATTENTION AND TREATMENT, EXHAUSTED JUNE 27, 2007, SEE EXHIBIT C

M) INMATE CDCR 602 LOG NO. PBSP-06-00211, RE: DENIED MEDICAL CLAIM AS A DUPLICATE JANUARY 30, 2006, SEE EXHIBIT C

N) INMATE CDCR 602 LOG NO. PBSP-04-03262, RE: DENIAL OF SPECIAL

1  DIET FOR CROHN'S DISEASE, EXHAUSTED AUGUST 9, 2005, SEE EXHIBIT C.

2  Q.) INMATE CDCR 602 LOG NO. PBSP 03-02882, RE: DENIAL OF SPECIAL DIET FOR

3  CROHN'S DISEASE, EXHAUSTED APRIL 21, 2004, EXHIBIT C

4  P.) INMATE CDCR 602 LOG NO. PBSP 07-11548, RE: DENIAL OF MEDICAL ATTEN-

5  TION FOR SINUS INFECTION, EXHAUSTED APRIL 30, 2008, SEE EXHIBIT C.

6  Q.) INMATE CDCR 602 LOG NO. PBSP-1A-18-2008-11910, RE: DENIAL OF MEDICAL

7  ATTENTION IN RETALIATION FOR FILING FEDERAL CIVIL COMPLAINT, GRANTED APRIL 29,

8  2008, SEE EXHIBIT C

9  R.) CALIFORNIA VICTIMS COMPENSATION AND GOVERNMENT CLAIMS BOARD CLAIM DENIED

10  ON FEBRUARY 29, 2008, SEE EXHIBIT D

11  S.) CDCR 7221 FORMS : PHYSICIANS ORDERS, SEE EXHIBITS F, G, H

12  T.) CDCR 7230 FORMS : PHYSICIAN PROGRESS NOTES, SEE EXHIBITS F, G, H

13  U.) CDCR 7263 FORMS : REQUESTS FOR MEDICAL ATTENTION, SEE EXHIBITS F, G, H

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

# VII   LEGAL CLAIMS
## FIRST CAUSE OF ACTION

(FIRST AND EIGHTH AMENDMENTS ~ SUBJECTION TO RETALIATORY EXCESSIVE USE OF FORCE CAUSING BODILY INJURY FOR PETITIONING THE GOVERNMENT FOR REDRESS OF GRIEVANCES)

106. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 105

107. DEFENDANTS, IN RETALIATION FOR FILING GRIEVANCES AGAINST THEM, WANTONLY APPLIED EXCESSIVE USE OF FORCE UPON PLAINTIFF WHILE HANDCUFFED, CAUSING BODILY INJURY.

108. DEFENDANTS WANTONLY SUBJECTED PLAINTIFF TO EXCESSIVE USE OF FORCE CAUSING PLAINTIFF TO NOW SUFFER MENTAL FEAR AND ANGUISH OF FUTURE ASSAULTS BY GREEN WALL I.G.I. DEFENDANTS.

109. DEFENDANTS WERE DELIBERATE AND INDIFFERENT TO PLAINTIFFS' CONSTITUTIONAL RIGHT TO FILE GRIEVANCES AND BE FREE FROM UNNECESSARY PHYSICAL HARM VIOLATIVE OF FIRST AND EIGHTH AMENDMENT.


## SECOND CAUSE OF ACTION

(EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT ~ DELIBERATE INDIFFERENCE TO INADE-QUATE MEDICAL TREATMENT)

110. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 105

111. DEFENDANTS PROVIDED PLAINTIFF WITH INADEQUATE MEDICAL TREATMENT SUBSEQUENT TO MEDICAL DIAGNOSIS THAT PLAINTIFF SUFFERS FROM CROHNS DISEASE.

112. DEFENDANTS PROVIDED PLAINTIFF WITH INADEQUATE MEDICAL TREATMENT WHEN DENYING A SPECIAL DIET TO ALLEVIATE PAIN SUFFERED AS A RESULT OF THE CROHNS DISEASE.

113. DEFENDANTS HAVE CONTINUOUSLY RESPONDED PERFUNCTORY TO PLAINTIFFS' CONSISTENT REQUESTS FOR PROPER MEDICAL TREATMENT FOR HIS CROHNS DISEASE.

114. DEFENDANTS HAVE CONTINUOUSLY PROVIDED PLAINTIFF WITH INADEQUATE MEDICAL TREATMENT BY PRESCRIBING GENERALIZED MEDICATIONS FOR HIS CROHNS DISEASE AND REDUCING THE AMOUNT OF MEDICATION FOR THE CROHNS DISEASE.

115. DEFENDANTS HAVE CONTINUED TO BE DELIBERATE AND INDIFFERENT TO PLAINTIFFS MEDICAL NEEDS WHEN FAILING TO PROVIDE PROPER MEDICAL TREATMENT FOR HIS CROHNS DISEASE.

116. Defendants have at all times been fully aware of the continuous suffering plaintiff has had to and continues to endure and should have been aware of other specialized treatment available for Chron's disease sufferers.

117. Defendants have denied plaintiff the adequate medical treatment entitled to him in violation of the eighth amendment right to be free from cruel and unusual punishment.

118. Defendants provided plaintiff with inadequate medical treatment subsequent to the medical diagnosis that plaintiff suffers from chronic sinus condition.

119. Defendants have provided plaintiff with inadequate medical treatment when denying plaintiff's consistent requests to see a specialist for his chronic sinus condition.

120. Defendants have continuously responded perfunctory to plaintiff's consistent requests for proper medical treatment for his chronic sinus condition.

121. Defendants have continuously provided plaintiff with inadequate medical treatment consisting of repetitive regimens of nasal sprays.

122. Defendants have provided plaintiff with inadequate medical attention when refusing plaintiff's requests for x-ray of nasal cavity.

123. Defendants have continued to be deliberate and indifferent to plaintiff's medical needs when failing to provide proper medical treatment for his chronic sinus condition.

124. Defendants have at all times been aware of the continuous suffering plaintiff has had to endure and should have been aware of other procedures and treatments at their disposal to alliviate plaintiff's suffering.

125. Defendants provided plaintiff with inadequate medical attention for injuries occuring when subjected to excessive use of force by green wall I.G.I. defendants.

126. Defendants provided plaintiff with inadequate medical treatment when denying plaintiff physical therapy for injuries occuring when subjected to excessive use of force by green wall I.G.I. defendants

127. Defendants were deliberate and indifferent to plaintiff's physical suffering and medical needs from injuries occuring when subjected to excessive use of force by green wall I.G.I. defendants in violation of the eighth amendment.

## THIRD CAUSE OF ACTION

(FIRST AND FOURTEENTH AMENDMENTS ~ RIGHT TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES, RIGHT TO COMMUNICATE WITH SOCIETY AND RIGHT TO EQUAL PROTECTION)

128. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 105.

129. DEFENDANTS HAVE DENIED PLAINTIFF CONTACT WITH THE GENERAL COMMUNITY NAMELY, BY DENYING MAIL CORRESPONDENCE.

- 130. DEFENDANTS HAVE DENIED PLAINTIFF MAIL CORRESPONDENCE ABSENT ANY EVIDENCE OF MISCONDUCT, NAMELY VIOLATION OF PRISON RULES.

131. DEFENDANTS HAVE DENIED PLAINTIFF AN OPPORTUNITY FOR ANY MEANINGFUL CHALLENGE TO DENIAL OF MAIL CORRESPONDENCE BY CANCELLING 602 FILED.   LIKE ANY OTHER SIMILARLY SITUATED PRISONER PLAINTIFF IS ENTITLED TO FILE GRIEVANCE ABSENT ANY BASIS FOR DISALLOWING FILING OF GRIEVANCE.   THESE ACTS BY DEFENDANTS ARE VIOLATIVE OF PLAINTIFF'S CONSTITUTIONALLY PROTECTED RIGHTS UNDER THE FIRST AND FOURTEENTH AMENDMENTS.

## FOURTH CAUSE OF ACTION

(FIRST, FIFTH AND FOURTEENTH AMENDMENTS ~ DENIAL OF LIBERTY INTEREST ABSENT THE DUE PROCESS OF LAW)

132. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 105.

133. DEFENDANTS DENYING PLAINTIFF COMMUNICATION WITH SOCIETY VIA MAIL CORRESPONDENCE FOR AN ASSERTED WRONG DOING FAILED TO ISSUE A RULES VIOLATION REPORT, (R.V.R.)

134. DEFENDANTS FAILURE TO ISSUE PLAINTIFF A R.V.R. FOR AN ASSERTED WRONG DOING DENIED PLAINTIFF AN OPPORTUNITY TO CHALLENGE THE DENIAL OF HIS LIBERTY INTEREST RIGHT TO COMMUNICATE WITH SOCIETY VIA MAIL CORRESPONDENCE.

135. DEFENDANTS ACTS ARE NOT REASONABLY RELATED TO A LEGITIMATE PENOLOGICAL INTEREST AND DENY PLAINTIFF HIS FIRST AMENDMENT RIGHT TO COMMUNICATE AND FILE GRIEVANCES. VIOLATIVE OF HIS LIBERTY INTERESTS ABSENT DUE PROCESS UNDER THE FIRST, FIFTH AND FOURTEENTH AMENDMENTS.

FIFTH CAUSE OF ACTION

(CALIFORNIA CONSTITUTION CRUEL OR UNUSUAL PUNISHMENT — SUBJECTION TO RETALIATORY EXCESSIVE USE OF FORCE CAUSING BODILY INJURY)

136. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 105

137. DEFENDANTS IN RETALIATION FOR FILING 602 APPEALS AGAINST THEM WANTONLY SUBJECTED PLAINTIFF TO EXCESSIVE USE OF FORCE WHILE UNDER MANACLE RESTRAINTS CAUSING BODILY INJURY.

- 138. DEFENDANTS WANTONLY SUBJECTED PLAINTIFF TO EXCESSIVE USE OF FORCE CAUSING PLAINTIFF TO NOW SUFFER MENTAL ANGUISH AND FEAR OF FUTURE ATTACKS BY GREEN WALL 1.6.1. DEFENDANTS.

139. DEFENDANTS WERE DELIBERATE AND INDIFFERENT TO PLAINTIFFS' RIGHT TO BE FREE FROM RETALIATORY ACTIONS AND UNNECESSARY HARM VIOLATIVE OF CALIFORNIA CODE OF REGULATIONS TITLE 15 (CCR 15) SECTIONS 3084.1, 3268(a)(3) AND ARTICLE ONE SECTION SEVENTEEN OF STATE CONSTITUTION.

SIXTH CAUSE OF ACTION

(CALIFORNIA CONSTITUTION CRUEL OR UNUSUAL PUNISHMENT ~ DELIBERATE INDIFFERENCE TO INADE-QUATE MEDICAL TREATMENT)

140. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 105

141. DEFENDANTS HAVE SUBJECTED PLAINTIFF TO CRUEL OR UNUSUAL PUNISHMENT WHEN INTENTIONALLY DENYING HIM ADEQUATE MEDICAL TREATMENT SPECIFICALLY FOR HIS CROHNS DISEASE, CHRONIC SINUS CONDITION AND INJURIES SUFFERED WHEN SUBJECTED TO EXCESSIVE USE OF FORCE BY THE GREEN WALL 1.6.1. DEFENDANTS.

142. DEFENDANTS HAVE BEEN WANTONLY DELIBERATE AND INDIFFERENT TO PLAINTIFFS MEDICAL NEEDS ENTITLED TO HIM UNDER CCR 15 §§ 3350(a)(b); 3350.1(a).

143. DEFENDANTS ACTS HAVE DENIED PLAINTIFF HIS RIGHT TO BE FREE FROM CRUEL OR UNUSUAL PUNISHMENT AS GUARANTEED BY ARTICLE 1 SECTION 17 OF STATE CONSTITUTION.

//
//
//

31.

SEVENTH CAUSE OF ACTION

(CALIFORNIA CONSTITUTION INALIENABLE RIGHTS ~ RIGHT TO COMMUNICATE)

144. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 105

145. DEFENDANTS HAVE DENIED PLAINTIFF THE RIGHT TO COMMUNICATE WITH THE GENERAL COMMUNITY WHEN DENYING MAIL CORRESPONDENCE ABSENT ANY MISCONDUCT BY PLAINTIFF OR CORRESPONDENT.

146. THESE ACTS BY DEFENDANTS IS CONTRARY TO CCR 15 §§ 3130, 3133 AND STATE PENAL CODE SECTIONS 2600, 2601 AND VIOLATIVE OF ARTICLE 1 SECTION 1 OF THE STATE CONSTITUTION.

EIGHTH CAUSE OF ACTION

(CALIFORNIA CONSTITUTION RIGHT TO PETITION THE GOVERNMENT FOR REDRESS)

147. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 105

148. DEFENDANTS HAVE DENIED PLAINTIFF THE RIGHT TO FILE AND HAVE ADDRESSED ADMINISTRATIVE GRIEVANCES (602s) BY THE CANCELLING OF 602s.

149. THESE ACTIONS BY DEFENDANTS ARE CONTRARY TO CCR 15 §§ 3177, 3084.1 AND VIOLATIVE OF ARTICLE 1 SECTION 3 OF THE STATE CONSTITUTION.

NINTH CAUSE OF ACTION

(CALIFORNIA CONSTITUTION ~ STATE CREATED LIBERTY INTEREST)

150. PLAINTIFF INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN PARAGRAPHS 1 THROUGH 105

151. DEFENDANTS HAVE DENIED PLAINTIFF HIS STATE CREATED LIBERTY INTEREST RIGHT TO COMMUNICATE WITH THE GENERAL COMMUNITY AND BE AFFORDED THE OPPORTUNITY TO FILE GRIEVANCES.

152. THESE ACTS BY DEFENDANTS HAVE DEPRIVED PLAINTIFF HIS LIBERTY INTEREST ABSENT DUE PROCESS IN VIOLATION OF ARTICLE 1 SECTION 1,3,7 AND 16 OF STATE CONSTITUTION.

//
//
//

## TENTH CAUSE OF ACTION

### (CALIFORNIA CONSTITUTION ~ EQUAL PROTECTION)

153. Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 105.

154 Defendants have denied plaintiff communication with the general community on the basis of an asserted misconduct deemed by defendants as prison gang activity pursuant to CCR 15 §§ 3000 "GANGS", 3023 "GANG ACTIVITY"

- 155.: Defendants denial is absent any issuance of a R.V.R. to support their denial pursuant to CCR 15 §§ 3312, 3315.

156. Absent issuance of a R.V.R. defendants have not afforded plaintiff the opportunity to present any meaningful challenge to the asserted misconduct.

157. Defendants have denied plaintiff the opportunity to file a grievance for the denial of mail.

158. Defendants' acts have denied plaintiff his right to equal protection and due process in violation of Article 1 Section 7 and 15 of the state constitution.

## IX CAUSATION

As a direct and proximate result of the aforementioned acts and omissions on the part of defendants.   Plaintiff has suffered and continues to suffer general and specific damages in an amount to be proven at trial.   Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein.   Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless the court grants :

## X. PRAYER FOR RELIEF

Wherefore, plaintiff respectfully prays for the following relief :

1.) A declaratory judgement that the defendants acts and practices described herein violate plaintiff's federal and state rights as stated herein.

2.) A preliminary and permanent injunction which prohibits and requires

1  THAT DEFENDANTS, THEIR AGENTS, EMPLOYEES/AND SUCCESSORS: I.) NOT HARASS, RETALIATE

2  OR CONDUCT REPRISALS FOR PLAINTIFFS COURT LITIGATION; II.) CEASE FROM DENYING PLAINTIFF

3  ADEQUATE CORRECTIVE MEDICAL TREATMENT; III.) CEASE DENYING COMMUNICATION VIA U.S.

4  MAIL ON AN ASSERTED PRETEXT OF PENILOLOGICAL SECURITY INTEREST ABSENT CREDIBLE PROOF;

5  IV.) CEASE ALLOWING THE CLANDESTINE GREEN WALL PRISON GANG TO OPERATE UNCHECKED IN ABUSING

6  THEIR AUTHORITY; V.) CEASE ALIENATION OF PLAINTIFF AND SIMILARILY SITUATED PRISONERS FROM

7  THE REST OF S.H.U. AND SUBJECTING TO MORE RESTRICTIVE PROGRAM CHANGES

8      3. COMPENSATORY DAMAGES OF $20.00 A DAY FOR DENIAL OF PLAINTIFFS CONSTITUTIONAL

9  RIGHTS FROM JANUARY 2000 TO THE PRESENT.

10     4. COMPENSATORY DAMAGES FOR PLAINTIFFS MENTAL ANGUISH AND SUFFERING AS A RESULT OF

11 BOTH INADEQUATE AND CORRECTIVE MEDICAL TREATMENT AND FOR SUBJECTION INJURIES AND MENTAL

12 ANGUISH AND SUFFERING FROM EXCESSIVE USE OF FORCE.

13     5. PUNITIVE DAMAGES OF $20,000.00 FROM EACH DEFENDANT FOUND TO HAVE DENIED PLAINTIFF

14 HIS CONSTITUTIONAL RIGHTS.

15     6. PLAINTIFF'S COSTS FOR THE SUIT.

16     7. FOR COSTS AND REASONABLE ATTORNEY FEES PURSUANT TO 42 U.S.C. § 1983 AND ANY OTHER

17 GROUNDS AUTHORIZED BY LAW

18     8. APPOINTMENT OF COUNSEL TO REPRESENT PLAINTIFF WHO IS NOT SCHOOLED IN THE SCIENCE OF LAW.

19     9. TRIAL BY JURY AS TO INADEQUATE AND CORRECTIVE MEDICAL TREATMENT AND SUBJECTION TO

20 INJURIES DUE TO EXCESSIVE USE OF FORCE AND DENIAL OF FEDERAL AND STATE CONSTITUTIONAL LIBERTY INTERESTS.

21

22              XI.   VERIFICATION

23     I, ALFREDO A. SANDOVAL DO STATE AND DECLARE THAT I HAVE READ THE AFOREMENTIONED AND

24 DO STATE THAT THE CONTENTS THEREIN ARE TRUE AND CORRECT.   AND THAT I DO STATE UNDER

25 THE PENALTY OF PERJURY AND THE LAWS OF THE UNITED STATES OF AMERICA.    EXECUTED THIS DAY

26 AT PELICAN BAY STATE PRISON, CRESCENT CITY, CALIFORNIA.

27 DATED _July 24, 2008_          2008 /s/ _Alfred Sandoval_

28                                    PLAINTIFF / DECLARANT

## PROOF OF SERVICE BY MAIL

(C.C.P. Section 101(a) # 2015.5, 28 U.S.C. 1746)

I, _ALFRED SANDOVAL_ , am a resident of Pelican Bay State Prison, in the County of Del Norte, State of California. I am over eighteen (18) years of age and am a party to the below named action.

My Address is:  P.O. Box 7500, Crescent City, CA 95531.

On the __24__ day of __July__ , in the year of 20_08_, I served the following documents: (set forth the exact title of documents served)

__FIRST AMENDED COMPLAINT__

on the party(s) listed below by placing a true copy(s) of said document, enclosed in a sealed envelope(s) with postage thereon fully paid, in the United States mail, in a deposit box so provided at Pelican Bay State Prison, Crescent City, CA 95531 and addressed as follows:

NORTHER DISTRICT COURT

450 GOLDEN GATE AVE

SAN FRANCISCO, CA.

94102

I declare under penalty of perjury that the foregoing is true and correct.

Dated this __24__ day of __July__ , 20 _08_.

Signed: _Alfred Sandoval_
(Declarant Signature)

Rev. 12/06